# EXHIBIT D

# CAIN, HIBBARD, MYERS & COOK

A PROFESSIONAL CORPORATION
COUNSELORS AT LAW
66 WEST STREET
PITTSFIELD, MASSACHUSETTS 01201-5764
FAX (413) 443-7694
(413) 443-4771

LEONARD H. COHEN
C. JEFFREY COOK*
BRIAN J. QUINN*
F. SYDNEY SMITHERS, IV
JOHN F. ROGERS†
MICHAEL E. MacDONALD
JOHN A. AGOSTINI
WILLIAM B. ROBERTS††
WILLIAM A. ROTA*
DIANE M. DeGIACOMO‡
STEVEN TAYLOR SMITH*

FREDERICK M. MYERS
SENIOR COUNSEL

LINCOLN S. CAIN (1903-1996)
STEPHEN B. HIBBARD (1907-1987)

OF COUNSEL
DAVID O. BURBANK
WILLIAM F. MUFATTI
THOMAS D. McCANN*†
LEE D. FLOURNOY

NANCY A. LYON
JENNIFER L. GERRARD
BENJAMIN SMITH‡‡
KEVIN M. KINNE
LORI H. LEVINSON*
BHAMATI VISWANATHAN**
ANNE W. HOGELAND

*ALSO ADMITTED NY
**ONLY ADMITTED NY
†ALSO ADMITTED DC
††ALSO ADMITTED VA AND NH
‡ALSO ADMITTED WA
‡‡ALSO ADMITTED FL

**ATTORNEY-CLIENT PRIVILEGE**

October 8, 1996

Data Flute CNC
20 Taconic Park Drive
Pittsfield, MA 01201

PLAINTIFF'S
EXHIBIT
19
Calamita 8/18

Re:  U.S. Patent 5,049,009

Gentlemen:

We have been asked for our opinion regarding the validity of U.S. Patent 5,049,009 (hereafter the '009 Patent) and whether or not a tool you propose to manufacture would infringe one or more of the claims of the above patent.

The '009 Patent issued September 17, 1991. Under the current law, which came into effect June 1995, the '009 Patent will expire August 21, 2010 (filed August 21, 1990).

The '009 Patent is an improvement patent, i.e., the claims cover an improved rotary cutting end mill. In Claim 1, the improvement comprises:

> "... a first relief surface of said peripheral relief wall having an arcuate land segment and a linear land segment along a substantial portion of said cutting edge, said arcuate land being substantially parallel to said cutting path, located immediately adjacent to said helical cutting edge and terminating at a point along said first relief surface, said linear land segment connecting said arcuate land segment and said second relief surface and defining a surface tapered inward from said cutting path."

DT-09825

CAIN, HIBBARD, MYERS & COOK

Data Flute CNC
October 8, 1996
Page 2

The critical features of Claim 1 are the arcuate land "being substantially parallel to the cutting path" and a "linear land segment connecting" the arcuate segment and the second relief surface and defining a surface tapered inward. (Please note Claim 1 of the attached '009 Patent Exhibit A.) Also, there is no limitation in the Claim with respect to the material composition of the end mill and would therefore read on steel, carbide, etc.

In Claim 2, which is dependent on Claim 1 and encompasses claim 1, the arcuate land segment is about 0.003 to about 0.005 inches. Also, claim 2 has no material limitation.

The critical feature in Claims 3 and 4, which are dependent on Claim 1, is wherein the metal is limited to tungsten alloy (Claim 3) and, specifically, to tungsten carbide (Claim 4). Since these claims are dependent on claim 1, they encompass all the features of claim 1 with the material limitations as recited therein.

In claim 5, the critical feature is wherein the terminal end of the rotary end mill defines two or more end cutting edges tapered inwardly to define a concave angle ranging from "about 177° to about 179.5°". There is also no limitation in the Claim 5 as to the material composition of the end mill.

Claim 6, which is dependent on Claim 5, is directed to the arcuate land segment being about 0.003 to about 0.005 inches wide, and again encompasses all of claim 5 with no material limitation.

Claims 7 and 8, which are dependent on Claim 5, are directed to the rotary cutting end mill being either a tungsten alloy (Claim 7) or tungsten carbide (Claim 8), and again, in addition, encompasses all of claim 5.

DT-09826

WFM / 10/7/96 / 001169 / 004 / 6171 / 4rf01!.DOC

CAIN, HIBBARD, MYERS & COOK

Data Flute CNC
October 8, 1996
Page 3

It is also our understanding that your proposed end mill tool (1) has an arcuate land segment having a width of about 0.003 to about 0.005", (2) is to be made out of tungsten carbide and (3) has a concave angle at the end thereof of about 170° to about 172° for the purpose of obtaining better cooling through better coolant flow and better chip clearance and removal.

## CONCLUSION

It is our opinion that a court of competent jurisdiction should hold Claims 1-8 of the '009 Patent as invalid on the basis of (1) that the tool of Claims 1 and 2 was at least offered for public sale (Exhibit B) more than one year before the filing date of the '009 Patent (August 21, 1990), and was at least made out of steel, (2) that there was a prior disclosure of the invention encompassed by Claims 1-8 more than one year before the filing date of the patent application as shown in Exhibit B, (3) that Claims 3, 4, 7 and 8 as to tungsten carbide for rotary end mills was disclosed in U.S. Patent 4,810,136 (Exhibit C), namely, carbide cutting tools, and that according to the catalog of Exhibit D, that end mill cutting tools made out of tungsten carbide were offered for sale all more than one year before the filing date of the '009 Patent, (4) that end mill cutting tools had a concave dish at the end thereof as disclosed in Exhibit C and Exhibit E again both published more than one year before the filing date of the '009 Patent, and (5) that there was a failure to bring such information to the attention of the Patent Office since such information was in the possession of Weldon Tool and could constitute lack of candor on the part of the Patentees or, simply, fraud on the Patent Office.

However, our opinion must be modified with respect to the "arcuate land segment being substantially parallel to said cutting path".

DT-09827

CAIN, HIBBARD, MYERS & COOK

Data Flute CNC
October 8, 1996
Page 4

The modification of our opinion is with respect to the "arcuate land segment." It is our understanding that your tool would be manufactured out of round stock and that, as such, the circumference of the stock, upon machining the flutes, would necessarily form an "arcuate land segment" that may or would inherently be parallel to the cutting path. It is our understanding that you do not intentionally machine the "arcuate land segment" to be substantially parallel to the cutting path. In other words, the land segment is inherently arcuate or circular when machining the flutes in a rotary cutting end mill out of round stock. Therefore, the prior art rotary cutting end mill, even though made of steel, would have a circular or arcuate land segment if machined from round stock without intentionally machining an arcuate or circular land segment, whether or not it runs substantially parallel to the cutting path.

Also with respect to this modification, it is also our understanding that a particular machining, called an eccentric cut, provides a cutting edge or "arcuate land segment" that inherently occurs when machining the eccentric cut out of round stock. Thus, if the arcuate land segment achieved by the eccentric cut is essentially parallel to the cutting path, then where is the novelty of this critical feature of the '009 invention. This should be verified.

## DETAILS

Exhibit A is a copy of the '009 Patent wherein the Claims are as stated above. All of the Claims are directed to an improved cutting end mill with the critical features as described under CONCLUSION above and, specifically, to carbide and tungsten carbide, respectively, (Claims 3, 4, 7 and 8).

In a Weldon catalog copyrighted 1988 (Exhibit B) by the Weldon Tool Company,

CAIN, HIBBARD, MYERS & COOK

Data Flute CNC
October 8, 1996
Page 5

there was shown on page 31 a diagram of an SKX Series end mill tool essentially showing the improvements of the '009 Patent, i.e., circular (arcuate) land segment, primary (first relief surface) land, secondary (second relief surface) land, and wherein the circular land segment has a width of 0.003 to 0.005 (we assume inches since no dimensional units are shown). What is not specifically disclosed is the "substantially parallel to cutting path", but please see modification of this feature under CONCLUSION. This publication is clearly more than one year before the filing date of the patent application for the '009 Patent. Therefore, Claims 1 and 2, which have no limitation as to material of the cutting tool, should be held invalid in view of Exhibit A.

With respect to the question of tungsten carbide as the material for end mills, Exhibit C and 5 clearly disclose end mills produced of tungsten carbide more than one year before the filing date of the '009 Patent. Therefore, the basis of tungsten carbide as being a critical feature is without standing. It is also interesting to note whether or not the tool disclosed and offered for sale in the 1988 Weldon catalog (Exhibit B) was indeed made out of tungsten carbide. It certainly is described as having the quality performance characteristics of tungsten carbide as stated in the '009 Patent, Column 1, lines 36-50. However, this is not critical to this opinion, but would certainly be another basis with respect to the invalidity of the '009 Patent.

With respect to the terminal end being dish-shaped or concave per claims 5, 6, 7 and 8, the required angle of "about 177° to about 179.5°" may be a critical limitation which cannot be expanded to include your angle of 170-172°. U.S. Patent 4,810,136 (Exhibit C), issued March 7, 1989, more than one year prior to the filing date of the '009 patent, clearly discloses a dish or concave end of a rotary carbide cutter. Further, McDonnell

DT-09829

WFM / 10/7/96 / 001169 / 004 / 6171 / 4rf01!.DOC

CAIN, HIBBARD, MYERS & COOK

Data Flute CNC
October 8, 1996
Page 6

Douglass Corporation (Exhibit E) shows a concave dish at the end of a fluted cutting tool disclosed in their instruction manual issued January 1, 1971 and revised September 27, 1977 and October 26, 1978, wherein the concave angle is shown as 3°±1° and 1°±0°30' (0.5°). While U.S. Patent 4,810,136 does not disclose the angle of the dish, it nevertheless discloses a dish effect. The 4,810,136 patent was cited by the Patent Office Examiner, but was never addressed or argued by the attorney prosecuting the '009 patent. Also, if tools were made for McDonnell Douglass, per Exhibit E, then such would be a clear disclosure to the public of a cutting tool having a concave end having an angle of 3°±1° (4° or 2°) or 1°±0.5° (1.5° or 0.5°) which falls within the '009 claimed angle of 177-179.5°. Consequently, claims 5, 6, 7 and 8, in our opinion, should, at least, be restricted to the 177-179.5° angle in view of the 4,810,136 patent or should be held invalid in view of the 4,810,136 patent and the McDonnell Douglass instruction manual.

In addition, claims 3, 4, 7 and 8 should, in our opinion, be held invalid in view of the 4,810,136 patent which clearly shows fluted rotary carbide cutter, was cited by the Patent Office Examiner and never addressed or argued by the prosecuting attorney for the '009 patent. Thus, tungsten carbide rotary end mill cutting tools were at least known as far back as 1983 (Exhibit D) and certainly as of March 1989 (Exhibit C).

With regard to the inventors of the '009 Patent, it is our understanding that the inventors were employees of SGS Tool Company, one of the assignees of the '009 Patent. They may well argue, therefore, that they would not have knowledge of the Weldon catalogs. However, Weldon Tool is an assignee of the patent and, apparently, the assignment was made prior to the issuance of the '009 Patent. It can then be argued that the inventors either had constructive notice of the Weldon catalogs, or at least

WFM / 10/7/96 · 091165 · 004 / 6177 / 4rf01l.DOC

DT-09830

CAIN, HIBBARD, MYERS & COOK

Data Flute CNC
October 8, 1996
Page 7

Weldon should have brought the catalogs to the attention of the Patent Office. Therefore, it is our opinion that the '009 Patent should also be held invalid on the basis of lack of candor.

We must emphasize that this is our opinion and that, as such, may not stay an action for infringement by the patent holder. Our opinion does, however, offer substantial basis for invalidity.

If you have any questions, please let me know.

Sincerely,

CAIN, HIBBARD, MYERS & COOK

William F. Mafatti

WFM/kd
enclosures

DT-09831

WFM / 10/7/96 / 001159 / 004 / 6171 / 4rf01!.DOC