# EXHIBIT 1



UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF OHIO

EASTERN DIVISION

| | |
|---|---|
| SGS TOOLS COMPANY<br>55 South Main Street<br>Munroe Falls, Ohio 44262,<br><br>        Plaintiff,<br><br>    v.<br><br>STEP TOOLS UNLIMITED, INC. d/b/a<br>DESTINY TOOL<br>3232 De La Cruz Blvd., #C<br>Santa Clara, CA 95054,<br><br>        Defendant. | **CASE NO. 5:04 CV1315**<br><br>**JUDGE: POLSTER**<br><br>**<u>DEFENDANT STEP TOOLS UNLIMITED,<br>INC. d/b/a DESTINY TOOL'S ANSWER<br>TO PLAINTIFF'S COMPLAINT AND<br>COUNTERCLAIM</u>**<br><br><br>**JURY TRIAL DEMANDED** |
| STEP TOOLS UNLIMITED, INC. d/b/a<br>DESTINY TOOL<br>3232 De La Cruz Blvd., #C<br>Santa Clara, CA 95054,<br><br>        Counterclaimant,<br><br>    v.<br><br>SGS TOOLS COMPANY<br>55 South Main Street<br>Munroe Falls, Ohio 44262,<br><br>        Counterdefendant. | |

<u>**STEP TOOLS UNLIMITED'S ANSWER**</u>

      For its answer to the complaint filed by Plaintiff SGS TOOLS COMPANY ("SGS") on

July 13, 2004 [Docket No. 1], Defendant STEP TOOLS UNLIMITED, INC., also known as

DESTINY TOOL ("DESTINY"), answers as follows, with each paragraph of the answer below

responding to the corresponding numbered paragraph of the complaint:

## PARTIES

1.      In answer to the allegations in paragraph no. 1 of the instant complaint, this answering defendant is without knowledge sufficient to form a belief as to the truth of the allegations of this paragraph, and on that basis denies such allegations.

2.      In answer to the allegations in paragraph no. 2 of the instant complaint, this answering defendant admits that DESTINY is a corporation organized under the laws of the State of California, with its principal place of business located at 3232 De La Cruz Blvd., Santa Clara, California.

## JURISDICTION AND VENUE

3.      In answer to the allegations in paragraph no. 3 of the instant complaint, this answering defendant admits that this Court has subject matter jurisdiction, in that this is an action for patent infringement arising under the United States Patent Laws at Title 35.

4.      In answer to the allegations in paragraph no. 4 of the instant complaint, this answering defendant denies each and every allegation therein contained.

5.      In answer to the allegations in paragraph no. 5 of the instant complaint, this answering defendant denies that personal jurisdiction is properly placed in the Northern District of Ohio, denies that this answering defendant resides in this District, and denies that this answering defendant has and is committing acts of infringement in this district.

## PATENT INFRINGEMENT

6.      This answering defendant repeats and incorporates by reference its answers and responses to paragraphs 1–5, as set forth above.

7.      In answer to the allegations in paragraph no. 6 of the instant complaint, this answering defendant admits only that U.S. Patent 5,049,009 ("the '009 patent") issued on September 17, 1991, is titled "Improved Cutting Tool" and that a copy of the '009 patent is attached to the Complaint as Exhibit A, and that this answering defendant lacks knowledge or sufficient information to form a belief as to the truth of the remaining allegations of paragraph 6

and therefore denies same.

8.      In answer to the allegations in paragraph no. 7 of the instant complaint, this answering defendant denies each and every allegation therein contained.

9.      In answer to the allegations in paragraph no. 8 of the instant complaint, this answering defendant admits only that the Viper end mills are being manufactured, used, and sold without permission or license from SGS and The Weldon Tool Company, and deny that their manufacture, use, and sale infringe on the '009 patent and denies the remaining allegations set forth in paragraph 8.

10.     In answer to the allegations in paragraph no. 9 of the instant complaint, this answering defendant denies each and every allegation therein contained.

11.     In answer to the allegations in paragraph no. 10 of the instant complaint, this answering defendant admits each and every allegation therein contained.

12.     In answer to the allegations in paragraph no. 11 of the instant complaint, this answering defendant denies each and every allegation therein contained.

13.     In answer to the allegations in paragraph no. 12 of the instant complaint, this answering defendant alleges it does not have sufficient knowledge or information to form a belief as to the allegations set forth therein as they relate to this defendant, and on said basis denies each and every allegation therein contained.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

AS A SEPARATE AND AFFIRMATIVE DEFENSE TO THE COMPLAINT ON FILE HEREIN, AND TO EACH ALLEGED CAUSE OF ACTION CONTAINED THEREIN, this answering defendant asserts that plaintiff's complaint fails to state facts sufficient to constitute a cause of action against this answering defendant.

### SECOND AFFIRMATIVE DEFENSE

AS A SECOND SEPARATE AND AFFIRMATIVE DEFENSE TO THE COMPLAINT ON FILE HEREIN, AND TO EACH ALLEGED CAUSE OF ACTION CONTAINED THEREIN, this answering defendant asserts that the Northern District Court of Ohio Lacks

Personal Jurisdiction over this answering defendant.

### THIRD AFFIRMATIVE DEFENSE

AS A THIRD SEPARATE AND AFFIRMATIVE DEFENSE TO THE COMPLAINT ON FILE HEREIN, AND TO EACH ALLEGED CAUSE OF ACTION CONTAINED THEREIN, this answering defendant asserts that upon information and belief, and as will likely be supported by evidence after a reasonable opportunity for further investigation and discovery, that U.S. Patent No. 5,049,009 ("the '009 Patent") is invalid for failure to comply with the conditions and requirements for patentability specified in Title 35 U.S.C., including, but not limited to, 35 U.S.C. §§ 102, 103, and/or 112.

### FOURTH AFFIRMATIVE DEFENSE

AS A FOURTH SEPARATE AND AFFIRMATIVE DEFENSE TO THE COMPLAINT ON FILE HEREIN, AND TO EACH ALLEGED CAUSE OF ACTION CONTAINED THEREIN, this answering defendant asserts that it has not infringed, contributorily infringed, and/or induced infringement of the '009 patent and is not liable for infringement thereof.

### FIFTH AFFIRMATIVE DEFENSE

AS A FIFTH SEPARATE AND AFFIRMATIVE DEFENSE TO THE COMPLAINT ON FILE HEREIN, AND TO EACH ALLEGED CAUSE OF ACTION CONTAINED THEREIN, this answering defendant asserts that upon information and belief, plaintiff knew or should have known that the manufacture, use, or sale of the accused Viper model of answering defendant does not infringe any of the claims of the '009 patent and nevertheless brought the present action against answering defendant for the purpose of wrongfully excluding answering defendant from the market for end mills; by initiating and maintaining the present action, plaintiff has engaged in patent misuse and vexatious litigation barring plaintiff from any relief herein.

### SIXTH AFFIRMATIVE DEFENSE

AS A SIXTH SEPARATE AND AFFIRMATIVE DEFENSE TO THE COMPLAINT ON FILE HEREIN, AND TO EACH ALLEGED CAUSE OF ACTION CONTAINED THEREIN, this answering defendant asserts that the complaint is uncertain as to the dates during which it alleges that the answering defendant engaged in conduct for which it should be

sanctioned in the manner prayed for in the complaint.

## SEVENTH AFFIRMATIVE DEFENSE

AS A SEVENTH SEPARATE AND AFFIRMATIVE DEFENSE TO THE COMPLAINT ON FILE HEREIN, AND TO EACH ALLEGED CAUSE OF ACTION CONTAINED THEREIN, this answering defendant asserts that the complaint is uncertain as to whether plaintiff is alleging that he has suffered any injury as a result of this answering defendant's alleged wrongful or unlawful conduct.

## EIGHTH AFFIRMATIVE DEFENSE

AS AN EIGHTH SEPARATE AND AFFIRMATIVE DEFENSE TO THE COMPLAINT ON FILE HEREIN, AND TO EACH ALLEGED CAUSE OF ACTION CONTAINED THEREIN, this answering defendant asserts that because the complaint fails to state a claim upon which relief can be granted since, if such relief was granted, it would contravene this answering defendant's constitutional right to substantive and procedural due process of law and equal protection under the law as preserved by the Fourteenth Amendment of the United States Constitution and the applicable provisions or the Constitution of the State of California, and would contravene the answering defendant's constitutional rights to protection against the taking of private property for public use without just compensation as preserved by the Fourteenth Amendment of the United States Constitution and the Constitution of the State of Ohio.

## NINTH AFFIRMATIVE DEFENSE

AS A NINTH SEPARATE AND AFFIRMATIVE DEFENSE TO THE COMPLAINT ON FILE HEREIN, AND TO EACH ALLEGED CAUSE OF ACTION CONTAINED THEREIN, this answering defendant asserts that claims alleged in said complaint are barred, in whole or in part, by the Doctrine of Waiver.

## TENTH AFFIRMATIVE DEFENSE

AS A TENTH SEPARATE AND AFFIRMATIVE DEFENSE TO THE COMPLAINT ON FILE HEREIN, AND TO EACH ALLEGED CAUSE OF ACTION CONTAINED THEREIN, this answering defendant asserts that plaintiff has failed to join all indispensable parties.

## ELEVENTH AFFIRMATIVE DEFENSE

AS AN ELEVENTH SEPARATE AND AFFIRMATIVE DEFENSE TO COMPLAINT ON FILE HEREIN, AND TO EACH ALLEGED CAUSE OF ACTION CONTAINED THEREIN, this answering defendant asserts that that there is no basis for attorneys fees, expert witness fees and all other unspecified costs or expenses claimed by plaintiff.

## TWELFTH AFFIRMATIVE DEFENSE

AS A TWELFTH SEPARATE AND AFFIRMATIVE DEFENSE TO FIRST AMENDED ON FILE HEREIN, AND TO EACH ALLEGED CAUSE OF ACTION CONTAINED THEREIN, this answering defendant asserts that it fully complied with all statutes, regulations, rules, orders, directives, guidelines, industry standards, and other laws in effect at the time the conduct which allegedly gives rise to any injury is alleged to have occurred.

## THIRTEENTH AFFIRMATIVE DEFENSE

AS A THIRTEENTH SEPARATE AND AFFIRMATIVE DEFENSE TO THE COMPLAINT ON FILE HEREIN, AND TO EACH ALLEGED CAUSE OF ACTION CONTAINED THEREIN, this answering defendant asserts that at all relevant times it complied with all applicable federal, state or other regulations and standards governing its business practices.

## FOURTEENTH AFFIRMATIVE DEFENSE

AS A FOURTEENTH SEPARATE AND AFFIRMATIVE DEFENSE TO THE COMPLAINT ON FILE HEREIN, AND TO EACH ALLEGED CAUSE OF ACTION CONTAINED THEREIN, this answering defendant asserts that the claims in plaintiff's complaint are uncertain in that it is impossible to determine from the complaint which of the Viper model end mill products allegedly manufactured, distributed or sold by the answering defendant caused the injuries, losses, or damages alleged in said complaint.

## FIFTEENTH AFFIRMATIVE DEFENSE

AS A FIFTEENTH SEPARATE AND AFFIRMATIVE DEFENSE TO THE COMPLAINT ON FILE HEREIN, AND TO EACH ALLEGED CAUSE OF ACTION CONTAINED THEREIN, this answering defendant asserts that the relief plaintiff seeks violates

the responding defendant's right to protection from "excessive fines" as provided in the Eighth Amendment of the United States Constitution and Article I, Section 17, of the Constitution of the State of California, and violates the responding defendant's right to substantive due process as provided in the Fifth and Fourteenth Amendments of the United States Constitution and the Constitution of the State of Ohio.

## SIXTEENTH AFFIRMATIVE DEFENSE

AS A SIXTEENTH SEPARATE AND AFFIRMATIVE DEFENSE TO THE COMPLAINT ON FILE HEREIN, AND TO EACH ALLEGED CAUSE OF ACTION CONTAINED THEREIN, this answering defendant denies that it engaged in any fraudulent business practice as alleged in the complaint.

## SEVENTEENTH AFFIRMATIVE DEFENSE

AS A SEVENTEENTH SEPARATE AND AFFIRMATIVE DEFENSE TO THE COMPLAINT ON FILE HEREIN, AND TO EACH ALLEGED CAUSE OF ACTION CONTAINED THEREIN, this answering defendant asserts that plaintiff has failed to plead with specificity his allegations against the responding defendant, as required by the applicable Rules of Court and the Code of Civil Procedure.

## EIGHTEENTH AFFIRMATIVE DEFENSE

AS AN EIGHTEENTH SEPARATE AND AFFIRMATIVE DEFENSE TO THE COMPLAINT ON FILE HEREIN, AND TO EACH ALLEGED CAUSE OF ACTION CONTAINED THEREIN, this answering defendant denies that it engaged in any unlawful business practice as alleged in the complaint.

## NINETEENTH AFFIRMATIVE DEFENSE

AS A NINETEENTH SEPARATE AND AFFIRMATIVE DEFENSE TO THE COMPLAINT ON FILE HEREIN, AND TO EACH ALLEGED CAUSE OF ACTION CONTAINED THEREIN, this answering defendant alleged that plaintiff's claims are barred by laches.

### TWENTIETH AFFIRMATIVE DEFENSE

AS A TWENTIETH SEPARATE AND AFFIRMATIVE DEFENSE TO THE COMPLAINT ON FILE HEREIN, AND TO EACH ALLEGED CAUSE OF ACTION CONTAINED THEREIN, this answering defendant asserts that plaintiff's claims are barred by the Doctrine of Estoppel.

### TWENTY-FIRST AFFIRMATIVE DEFENSE

AS A TWENTY-FIRST SEPARATE AND AFFIRMATIVE DEFENSE TO THE COMPLAINT ON FILE HEREIN, AND TO EACH ALLEGED CAUSE OF ACTION CONTAINED THEREIN, this answering defendant asserts that the complaint is uncertain as plaintiff failed to allege with reasonable specificity the specific conduct engaged in by this answering defendant that plaintiff believes entitles plaintiff to the relief sought by this complaint.

### TWENTY-SECOND AFFIRMATIVE DEFENSE

AS A TWENTY-SECOND SEPARATE AND AFFIRMATIVE DEFENSE TO THE COMPLAINT ON FILE HEREIN, AND TO EACH ALLEGED CAUSE OF ACTION CONTAINED THEREIN, this answering defendant asserts on information and belief, the claims for damages are barred, in whole or in part, due to SGS's failure to comply with the patent marking provisions.

### TWENTY-THIRD AFFIRMATIVE DEFENSE

AS A TWENTY-THIRD SEPARATE AND AFFIRMATIVE DEFENSE TO THE COMPLAINT ON FILE HEREIN, AND TO EACH ALLEGED CAUSE OF ACTION CONTAINED THEREIN, this answering defendant asserts that plaintiff's complaint and each and every claim therein, fails to state facts sufficient to entitle plaintiff to the relief sought, or to any relief at all, against this answering defendant.

## COUNTERCLAIM FOR DECLARATORY RELIEF

Defendant DESTINY TOOL through its attorneys, hereby alleges as follows:

1.      This counterclaim is for a Declaratory Judgment declaring the '009 patent invalid, unenforceable, and/or not infringed by DESTINY TOOL arising under the patent laws of the United States, 35 U.S.C. § 1, et seq., and the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, et seq., and for monopolization and attempted monopolization arising under Section 2 of the Sherman Act, Title 15, United States Code.

2.      Jurisdiction of this Court over Count I of this Counterclaim is based upon 28 U.S.C. §§ 1331, 1338(a), 2201, and 2202, and upon Rule 13 of the Federal Rules of Civil Procedure.  Jurisdiction of this Court over Count II of this Counterclaim is based upon 15 U.S.C. § 4 (equitable relief), 15 U.S.C. § 15 (treble damage relief), 15 U.S.C. § 26 (equitable relief), and 28 U.S.C. §§ 1331 and 1337, and upon Rule 13 of the Federal Rules of Civil Procedure.

3.      Venue in this Court is proper pursuant to 15 U.S.C. §§ 15, 22, and 26 and 28 U.S.C. § 1391, and plaintiff, by virtue of having brought suit against DESTINY TOOL, has submitted itself to the jurisdiction of this Court.

### COUNT I. OF COUNTERCLAIM
*Declaration of Invalidity, Unenforceability, and Non-Infringement*

4.      The allegations of paragraphs 1-3 are incorporated herein by reference as though fully set forth herein.

5.      Plaintiff claims to be the owner of the '009 patent, the IMPROVED CUTTING TOOL patent, and has brought suit against DESTINY TOOL herein for alleged infringement of said patent.

6.      An actual case or controversy exists between plaintiff and DESTINY TOOL based upon plaintiff having filed the Complaint against STEP TOOLS UNLIMITED, INC. d/b/a DESTINY TOOL.

7.      Upon information and belief, and as will likely be supported by evidence after reasonable opportunity for further investigation and discovery, the '009 patent is invalid, null,

void, and/or unenforceable for failure to comply with the conditions and requirements for patentability specified in Title 35 U.S.C., including, but not limited to, 35 U.S.C. §§ 102, 103, and/or 112.

     8.    DESTINY TOOL has been injured and damaged by plaintiff's filing of the Complaint in the present case asserting a patent that is invalid, unenforceable, and not infringed.

    WHEREFORE, Defendant, DESTINY TOOL prays that:

    1.    Plaintiff's Complaint be dismissed with prejudice and that judgment be entered for DESTINY TOOL.

    2.    With respect to Count I of the Counterclaim,

        A.    United States Patent No. '009 be adjudged and decreed invalid and unenforceable.

        B.    DESTINY TOOL be adjudged and decreed not to have infringed, contributorily infringed, or induced others to infringe the claims of United States Patent No. '009.

        C.    This case be adjudged and decreed exceptional pursuant to 35 U.S.C. § 285 and DESTINY TOOL be awarded its costs and attorneys fees incurred in defending this action.

    3.    With respect to Count II of the Counterclaim,

        A.    For compensatory damages in an amount to be proven at trial for plaintiff's violation of 15 U.S.C. § 2.

        B.    For an order trebling the amount of compensatory damages awarded pursuant to 15 U.S.C. § 15.

        C.    For an order granting permanent injunctive relief requiring plaintiff to refrain from instituting objectively baseless legal actions for the purpose of interfering with the business of DESTINY TOOL or others.

        D.    For an order granting further permanent injunctive relief as may be reasonably necessary or appropriate to eliminate the effects of plaintiff's violations of the antitrust laws and to restore effective competition in the manufacture, sale

and distribution of carbide end mills.

4.    For the award to DESTINY TOOL of its costs and prejudgment interest on all

damages.

5.    For the award to DESTINY TOOL of its attorney's fees.

6.    For such other and further relief as the Court deems meet and in the premises.

Dated: August 26, 2004

Respectfully submitted,

By: _____
ROBERT P. ANDRIS
randris@ropers.com
LAEL D. BELOATE
lbeloate@ropers.com
ROPERS, MAJESKI, KOHN &
BENTLEY
1001 Marshall Street
Redwood City, CA 94063
Telephone:  (650) 364-8200
Facsimile: (650) 780-1701

Attorneys for Defendant
STEP TOOLS UNLIMITED, INC. dba
DESTINY TOOL

## DEMAND FOR JURY

DESTINY TOOLS requests a jury trial of all issues in this action so triable, as provided

for by Rule 38(a) of the Federal Rules of Civil Procedure.


Dated: August 26, 2004                          Respectfully submitted,

                                                By: _____
                                                    ROBERT P. ANDRIS
                                                    randris@ropers.com
                                                    LAEL D. BELOATE
                                                    lbeloate@ropers.com
                                                    ROPERS, MAJESKI, KOHN &
                                                    BENTLEY
                                                    1001 Marshall Street
                                                    Redwood City, CA  94063
                                                    Telephone:  (650) 364-8200
                                                    Facsimile: (650) 780-1701

                                                    Attorneys for Defendant
                                                    STEP TOOLS UNLIMITED, INC. dba
                                                    DESTINY TOOL

**CASE NAME:**     **SGS TOOLS COMPANY v. STEP TOOLS UNLIMITED, INC. d/b/a/ DESTINY TOOL**

**ACTION NO.:**    **5:04 CV 1315**

## PROOF OF SERVICE

I am a citizen of the United States. My business address is 1001 Marshall Street, Redwood City, CA 94063. I am employed in the County of San Mateo where this service occurs. I am over the age of 18 years, and not a party to the within cause. I am readily familiar with my employer's normal business practice for collection and processing of correspondence for mailing with the U.S. Postal Service, and that practice is that correspondence is deposited with the U.S. Postal Service the same day as the day of collection in the ordinary course of business.

On the date set forth below, following ordinary business practice, I served a true copy of the foregoing document(s) described as:

**DEFENDANT STEP TOOLS UNLIMITED, INC. d/b/a DESTINY TOOL'S ANSWER TO PLAINTIFF'S COMPLAINT AND COUNTERCLAIM**

☐    (BY FAX) by transmitting via facsimile the document(s) listed above to the fax number(s) set forth below, or as stated on the attached service list, on this date before 5:00 p.m.

☒    (BY MAIL) I caused such envelope(s) with postage thereon fully prepaid to be placed in the United States mail at Redwood City, California.

☐    (BY PERSONAL SERVICE) I caused such envelope(s) to be delivered by hand this date to the offices of the addressee(s).

☐    (BY OVERNIGHT DELIVERY) I caused such envelope(s) to be delivered to an overnight delivery carrier with delivery fees provided for, addressed to the person(s) on whom it is to be served.

| | |
|---|---|
| R. Eric Gaum | Telephone: 330/864-5550 Voice |
| Mark A. Watkins | Facsimile: 330/864-7986 |
| Ross M. Babbitt | Attorneys for Plaintiff |
| Hahn Loeser & Parks | |
| 1225 West Market Street | |
| Akron, Ohio 44313 | |

☒    *(Federal)* I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on August 26, 2004, at Redwood City, California.

*Roxana Riedell*
ROXANA RIEDELL

RC1/358563.1/LD

PROOF OF SERVICE

EX 1.

FILED

UNITED STATES DISTRICT COURT AUG 30 PM 12: 17

NORTHERN DISTRICT OF OHIO

EASTERN DIVISION

NORTHERN DISTRICT OF OHIO
CLEVELAND

| | |
|---|---|
| SGS TOOLS COMPANY<br>55 South Main Street<br>Munroe Falls, Ohio 44262,<br><br>      Plaintiff,<br><br>    v.<br><br>STEP TOOLS UNLIMITED, INC. d/b/a<br>DESTINY TOOL<br>3232 De La Cruz Blvd., #C<br>Santa Clara, CA 95054,<br><br>      Defendant. | CASE NO.  5:04 CV1315<br><br>JUDGE: POLSTER<br><br>**<u>DEFENDANT STEP TOOLS UNLIMITED,<br>INC. d/b/a DESTINY TOOL'S ANSWER<br>TO PLAINTIFF'S COMPLAINT AND<br>COUNTERCLAIM</u>**<br><br><br>**JURY TRIAL DEMANDED** |
| STEP TOOLS UNLIMITED, INC. d/b/a<br>DESTINY TOOL<br>3232 De La Cruz Blvd., #C<br>Santa Clara, CA 95054,<br><br>      Counterclaimant,<br><br>    v.<br><br>SGS TOOLS COMPANY<br>55 South Main Street<br>Munroe Falls, Ohio 44262,<br><br>      Counterdefendant. | |

### <u>STEP TOOLS UNLIMITED'S ANSWER</u>

For its answer to the complaint filed by Plaintiff SGS TOOLS COMPANY ("SGS") on

July 13, 2004 [Docket No. 1], Defendant STEP TOOLS UNLIMITED, INC., also known as

DESTINY TOOL ("DESTINY"), answers as follows, with each paragraph of the answer below

responding to the corresponding numbered paragraph of the complaint:

RC1/359351.1/LB4

## PARTIES

1.      In answer to the allegations in paragraph no. 1 of the instant complaint, this answering defendant is without knowledge sufficient to form a belief as to the truth of the allegations of this paragraph, and on that basis denies such allegations.

2.      In answer to the allegations in paragraph no. 2 of the instant complaint, this answering defendant admits that DESTINY is a corporation organized under the laws of the State of California, with its principal place of business located at 3232 De La Cruz Blvd., Santa Clara, California.

## JURISDICTION AND VENUE

3.      In answer to the allegations in paragraph no. 3 of the instant complaint, this answering defendant admits that this Court has subject matter jurisdiction, in that this is an action for patent infringement arising under the United States Patent Laws at Title 35.

4.      In answer to the allegations in paragraph no. 4 of the instant complaint, this answering defendant denies each and every allegation therein contained.

5.      In answer to the allegations in paragraph no. 5 of the instant complaint, this answering defendant denies that personal jurisdiction is properly placed in the Northern District of Ohio, denies that this answering defendant resides in this District, and denies that this answering defendant has and is committing acts of infringement in this district.

## PATENT INFRINGEMENT

6.      This answering defendant repeats and incorporates by reference its answers and responses to paragraphs 1–5, as set forth above.

7.      In answer to the allegations in paragraph no. 6 of the instant complaint, this answering defendant admits only that U.S. Patent 5,049,009 ("the '009 patent") issued on September 17, 1991, is titled "Improved Cutting Tool" and that a copy of the '009 patent is attached to the Complaint as Exhibit A, and that this answering defendant lacks knowledge or sufficient information to form a belief as to the truth of the remaining allegations of paragraph 6

and therefore denies same.

8.    In answer to the allegations in paragraph no. 7 of the instant complaint, this answering defendant denies each and every allegation therein contained.

9.    In answer to the allegations in paragraph no. 8 of the instant complaint, this answering defendant admits only that the Viper end mills are being manufactured, used, and sold without permission or license from SGS and The Weldon Tool Company, and deny that their manufacture, use, and sale infringe on the '009 patent and denies the remaining allegations set forth in paragraph 8.

10.    In answer to the allegations in paragraph no. 9 of the instant complaint, this answering defendant denies each and every allegation therein contained.

11.    In answer to the allegations in paragraph no. 10 of the instant complaint, this answering defendant admits each and every allegation therein contained.

12.    In answer to the allegations in paragraph no. 11 of the instant complaint, this answering defendant denies each and every allegation therein contained.

13.    In answer to the allegations in paragraph no. 12 of the instant complaint, this answering defendant alleges it does not have sufficient knowledge or information to form a belief as to the allegations set forth therein as they relate to this defendant, and on said basis denies each and every allegation therein contained.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

AS A SEPARATE AND AFFIRMATIVE DEFENSE TO THE COMPLAINT ON FILE HEREIN, AND TO EACH ALLEGED CAUSE OF ACTION CONTAINED THEREIN, this answering defendant asserts that plaintiff's complaint fails to state facts sufficient to constitute a cause of action against this answering defendant.

### SECOND AFFIRMATIVE DEFENSE

AS A SECOND SEPARATE AND AFFIRMATIVE DEFENSE TO THE COMPLAINT ON FILE HEREIN, AND TO EACH ALLEGED CAUSE OF ACTION CONTAINED THEREIN, this answering defendant asserts that the Northern District Court of Ohio Lacks

Personal Jurisdiction over this answering defendant.

### THIRD AFFIRMATIVE DEFENSE

AS A THIRD SEPARATE AND AFFIRMATIVE DEFENSE TO THE COMPLAINT ON FILE HEREIN, AND TO EACH ALLEGED CAUSE OF ACTION CONTAINED THEREIN, this answering defendant asserts that upon information and belief, and as will likely be supported by evidence after a reasonable opportunity for further investigation and discovery, that U.S. Patent No. 5,049,009 ("the '009 Patent") is invalid for failure to comply with the conditions and requirements for patentability specified in Title 35 U.S.C., including, but not limited to, 35 U.S.C. §§ 102, 103, and/or 112.

### FOURTH AFFIRMATIVE DEFENSE

AS A FOURTH SEPARATE AND AFFIRMATIVE DEFENSE TO THE COMPLAINT ON FILE HEREIN, AND TO EACH ALLEGED CAUSE OF ACTION CONTAINED THEREIN, this answering defendant asserts that it has not infringed, contributorily infringed, and/or induced infringement of the '009 patent and is not liable for infringement thereof.

### FIFTH AFFIRMATIVE DEFENSE

AS A FIFTH SEPARATE AND AFFIRMATIVE DEFENSE TO THE COMPLAINT ON FILE HEREIN, AND TO EACH ALLEGED CAUSE OF ACTION CONTAINED THEREIN, this answering defendant asserts that upon information and belief, plaintiff knew or should have known that the manufacture, use, or sale of the accused Viper model of answering defendant does not infringe any of the claims of the '009 patent and nevertheless brought the present action against answering defendant for the purpose of wrongfully excluding answering defendant from the market for end mills; by initiating and maintaining the present action, plaintiff has engaged in patent misuse and vexatious litigation barring plaintiff from any relief herein.

### SIXTH AFFIRMATIVE DEFENSE

AS A SIXTH SEPARATE AND AFFIRMATIVE DEFENSE TO THE COMPLAINT ON FILE HEREIN, AND TO EACH ALLEGED CAUSE OF ACTION CONTAINED THEREIN, this answering defendant asserts that the complaint is uncertain as to the dates during which it alleges that the answering defendant engaged in conduct for which it should be

sanctioned in the manner prayed for in the complaint.

## SEVENTH AFFIRMATIVE DEFENSE

AS A SEVENTH SEPARATE AND AFFIRMATIVE DEFENSE TO THE COMPLAINT ON FILE HEREIN, AND TO EACH ALLEGED CAUSE OF ACTION CONTAINED THEREIN, this answering defendant asserts that the complaint is uncertain as to whether plaintiff is alleging that he has suffered any injury as a result of this answering defendant's alleged wrongful or unlawful conduct.

## EIGHTH AFFIRMATIVE DEFENSE

AS AN EIGHTH SEPARATE AND AFFIRMATIVE DEFENSE TO THE COMPLAINT ON FILE HEREIN, AND TO EACH ALLEGED CAUSE OF ACTION CONTAINED THEREIN, this answering defendant asserts that because the complaint fails to state a claim upon which relief can be granted since, if such relief was granted, it would contravene this answering defendant's constitutional right to substantive and procedural due process of law and equal protection under the law as preserved by the Fourteenth Amendment of the United States Constitution and the applicable provisions or the Constitution of the State of California, and would contravene the answering defendant's constitutional rights to protection against the taking of private property for public use without just compensation as preserved by the Fourteenth Amendment of the United States Constitution and the Constitution of the State of Ohio.

## NINTH AFFIRMATIVE DEFENSE

AS A NINTH SEPARATE AND AFFIRMATIVE DEFENSE TO THE COMPLAINT ON FILE HEREIN, AND TO EACH ALLEGED CAUSE OF ACTION CONTAINED THEREIN, this answering defendant asserts that claims alleged in said complaint are barred, in whole or in part, by the Doctrine of Waiver.

## TENTH AFFIRMATIVE DEFENSE

AS A TENTH SEPARATE AND AFFIRMATIVE DEFENSE TO THE COMPLAINT ON FILE HEREIN, AND TO EACH ALLEGED CAUSE OF ACTION CONTAINED THEREIN, this answering defendant asserts that plaintiff has failed to join all indispensable parties.

## ELEVENTH AFFIRMATIVE DEFENSE

AS AN ELEVENTH SEPARATE AND AFFIRMATIVE DEFENSE TO COMPLAINT ON FILE HEREIN, AND TO EACH ALLEGED CAUSE OF ACTION CONTAINED THEREIN, this answering defendant asserts that that there is no basis for attorneys fees, expert witness fees and all other unspecified costs or expenses claimed by plaintiff.

## TWELFTH AFFIRMATIVE DEFENSE

AS A TWELFTH SEPARATE AND AFFIRMATIVE DEFENSE TO FIRST AMENDED ON FILE HEREIN, AND TO EACH ALLEGED CAUSE OF ACTION CONTAINED THEREIN, this answering defendant asserts that it fully complied with all statutes, regulations, rules, orders, directives, guidelines, industry standards, and other laws in effect at the time the conduct which allegedly gives rise to any injury is alleged to have occurred.

## THIRTEENTH AFFIRMATIVE DEFENSE

AS A THIRTEENTH SEPARATE AND AFFIRMATIVE DEFENSE TO THE COMPLAINT ON FILE HEREIN, AND TO EACH ALLEGED CAUSE OF ACTION CONTAINED THEREIN, this answering defendant asserts that at all relevant times it complied with all applicable federal, state or other regulations and standards governing its business practices.

## FOURTEENTH AFFIRMATIVE DEFENSE

AS A FOURTEENTH SEPARATE AND AFFIRMATIVE DEFENSE TO THE COMPLAINT ON FILE HEREIN, AND TO EACH ALLEGED CAUSE OF ACTION CONTAINED THEREIN, this answering defendant asserts that the claims in plaintiff's complaint are uncertain in that it is impossible to determine from the complaint which of the Viper model end mill products allegedly manufactured, distributed or sold by the answering defendant caused the injuries, losses, or damages alleged in said complaint.

## FIFTEENTH AFFIRMATIVE DEFENSE

AS A FIFTEENTH SEPARATE AND AFFIRMATIVE DEFENSE TO THE COMPLAINT ON FILE HEREIN, AND TO EACH ALLEGED CAUSE OF ACTION CONTAINED THEREIN, this answering defendant asserts that the relief plaintiff seeks violates

the responding defendant's right to protection from "excessive fines" as provided in the Eighth Amendment of the United States Constitution and Article I, Section 17, of the Constitution of the State of California, and violates the responding defendant's right to substantive due process as provided in the Fifth and Fourteenth Amendments of the United States Constitution and the Constitution of the State of Ohio.

### SIXTEENTH AFFIRMATIVE DEFENSE

AS A SIXTEENTH SEPARATE AND AFFIRMATIVE DEFENSE TO THE COMPLAINT ON FILE HEREIN, AND TO EACH ALLEGED CAUSE OF ACTION CONTAINED THEREIN, this answering defendant denies that it engaged in any fraudulent business practice as alleged in the complaint.

### SEVENTEENTH AFFIRMATIVE DEFENSE

AS A SEVENTEENTH SEPARATE AND AFFIRMATIVE DEFENSE TO THE COMPLAINT ON FILE HEREIN, AND TO EACH ALLEGED CAUSE OF ACTION CONTAINED THEREIN, this answering defendant asserts that plaintiff has failed to plead with specificity his allegations against the responding defendant, as required by the applicable Rules of Court and the Code of Civil Procedure.

### EIGHTEENTH AFFIRMATIVE DEFENSE

AS AN EIGHTEENTH SEPARATE AND AFFIRMATIVE DEFENSE TO THE COMPLAINT ON FILE HEREIN, AND TO EACH ALLEGED CAUSE OF ACTION CONTAINED THEREIN, this answering defendant denies that it engaged in any unlawful business practice as alleged in the complaint.

### NINETEENTH AFFIRMATIVE DEFENSE

AS A NINETEENTH SEPARATE AND AFFIRMATIVE DEFENSE TO THE COMPLAINT ON FILE HEREIN, AND TO EACH ALLEGED CAUSE OF ACTION CONTAINED THEREIN, this answering defendant alleged that plaintiff's claims are barred by laches.

### TWENTIETH AFFIRMATIVE DEFENSE

AS A TWENTIETH SEPARATE AND AFFIRMATIVE DEFENSE TO THE COMPLAINT ON FILE HEREIN, AND TO EACH ALLEGED CAUSE OF ACTION CONTAINED THEREIN, this answering defendant asserts that plaintiff's claims are barred by the Doctrine of Estoppel.

### TWENTY-FIRST AFFIRMATIVE DEFENSE

AS A TWENTY-FIRST SEPARATE AND AFFIRMATIVE DEFENSE TO THE COMPLAINT ON FILE HEREIN, AND TO EACH ALLEGED CAUSE OF ACTION CONTAINED THEREIN, this answering defendant asserts that the complaint is uncertain as plaintiff failed to allege with reasonable specificity the specific conduct engaged in by this answering defendant that plaintiff believes entitles plaintiff to the relief sought by this complaint.

### TWENTY-SECOND AFFIRMATIVE DEFENSE

AS A TWENTY-SECOND SEPARATE AND AFFIRMATIVE DEFENSE TO THE COMPLAINT ON FILE HEREIN, AND TO EACH ALLEGED CAUSE OF ACTION CONTAINED THEREIN, this answering defendant asserts on information and belief, the claims for damages are barred, in whole or in part, due to SGS's failure to comply with the patent marking provisions.

### TWENTY-THIRD AFFIRMATIVE DEFENSE

AS A TWENTY-THIRD SEPARATE AND AFFIRMATIVE DEFENSE TO THE COMPLAINT ON FILE HEREIN, AND TO EACH ALLEGED CAUSE OF ACTION CONTAINED THEREIN, this answering defendant asserts that plaintiff's complaint and each and every claim therein, fails to state facts sufficient to entitle plaintiff to the relief sought, or to any relief at all, against this answering defendant.

## COUNTERCLAIM FOR DECLARATORY RELIEF

Defendant DESTINY TOOL through its attorneys, hereby alleges as follows:

1.     This counterclaim is for a Declaratory Judgment declaring the '009 patent invalid, unenforceable, and/or not infringed by DESTINY TOOL arising under the patent laws of the United States, 35 U.S.C. § 1, et seq., and the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, et seq., and for monopolization and attempted monopolization arising under Section 2 of the Sherman Act, Title 15, United States Code.

2.     Jurisdiction of this Court over Count I of this Counterclaim is based upon 28 U.S.C. §§ 1331, 1338(a), 2201, and 2202, and upon Rule 13 of the Federal Rules of Civil Procedure.  Jurisdiction of this Court over Count II of this Counterclaim is based upon 15 U.S.C. § 4 (equitable relief), 15 U.S.C. § 15 (treble damage relief), 15 U.S.C. § 26 (equitable relief), and 28 U.S.C. §§ 1331 and 1337, and upon Rule 13 of the Federal Rules of Civil Procedure.

3.     Venue in this Court is proper pursuant to 15 U.S.C. §§ 15, 22, and 26 and 28 U.S.C. § 1391, and plaintiff, by virtue of having brought suit against DESTINY TOOL, has submitted itself to the jurisdiction of this Court.

### COUNT I. OF COUNTERCLAIM
*Declaration of Invalidity, Unenforceability, and Non-Infringement*

4.     The allegations of paragraphs 1-3 are incorporated herein by reference as though fully set forth herein.

5.     Plaintiff claims to be the owner of the '009 patent, the IMPROVED CUTTING TOOL patent, and has brought suit against DESTINY TOOL herein for alleged infringement of said patent.

6.     An actual case or controversy exists between plaintiff and DESTINY TOOL based upon plaintiff having filed the Complaint against STEP TOOLS UNLIMITED, INC. d/b/a DESTINY TOOL.

7.     Upon information and belief, and as will likely be supported by evidence after reasonable opportunity for further investigation and discovery, the '009 patent is invalid, null,

void, and/or unenforceable for failure to comply with the conditions and requirements for patentability specified in Title 35 U.S.C., including, but not limited to, 35 U.S.C. §§ 102, 103, and/or 112.

        8.     DESTINY TOOL has been injured and damaged by plaintiff's filing of the Complaint in the present case asserting a patent that is invalid, unenforceable, and not infringed.

        WHEREFORE, Defendant, DESTINY TOOL prays that:

        1.   ·   Plaintiff's Complaint be dismissed with prejudice and that judgment be entered for DESTINY TOOL.

        2.     With respect to Count I of the Counterclaim,

            A.     United States Patent No. '009 be adjudged and decreed invalid and unenforceable.

            B.     DESTINY TOOL be adjudged and decreed not to have infringed, contributorily infringed, or induced others to infringe the claims of United States Patent No. '009.

            C.     This case be adjudged and decreed exceptional pursuant to 35 U.S.C. § 285 and DESTINY TOOL be awarded its costs and attorneys fees incurred in defending this action.

        3.     With respect to Count II of the Counterclaim,

            A.     For compensatory damages in an amount to be proven at trial for plaintiff's violation of 15 U.S.C. § 2.

            B.     For an order trebling the amount of compensatory damages awarded pursuant to 15 U.S.C. § 15.

            C.     For an order granting permanent injunctive relief requiring plaintiff to refrain from instituting objectively baseless legal actions for the purpose of interfering with the business of DESTINY TOOL or others.

            D.     For an order granting further permanent injunctive relief as may be reasonably necessary or appropriate to eliminate the effects of plaintiff's violations of the antitrust laws and to restore effective competition in the manufacture, sale

and distribution of carbide end mills.

4.     For the award to DESTINY TOOL of its costs and prejudgment interest on all damages.

5.     For the award to DESTINY TOOL of its attorney's fees.

6.     For such other and further relief as the Court deems meet and in the premises.

Dated: August 26, 2004                    Respectfully submitted,

By: _____
ROBERT P. ANDRIS
randris@ropers.com
LAEL D. BELOATE
lbeloate@ropers.com
ROPERS, MAJESKI, KOHN &
BENTLEY
1001 Marshall Street
Redwood City, CA  94063
Telephone:  (650) 364-8200
Facsimile: (650) 780-1701

Attorneys for Defendant
STEP TOOLS UNLIMITED, INC. dba
DESTINY TOOL

## DEMAND FOR JURY

DESTINY TOOLS requests a jury trial of all issues in this action so triable, as provided for by Rule 38(a) of the Federal Rules of Civil Procedure.

Dated: August 26, 2004

Respectfully submitted,

By: _____

ROBERT P. ANDRIS
randris@ropers.com
LAEL D. BELOATE
lbeloate@ropers.com
ROPERS, MAJESKI, KOHN &
BENTLEY
1001 Marshall Street
Redwood City, CA 94063
Telephone: (650) 364-8200
Facsimile: (650) 780-1701

Attorneys for Defendant
STEP TOOLS UNLIMITED, INC. dba
DESTINY TOOL

**CASE NAME:**      SGS TOOLS COMPANY v. STEP TOOLS UNLIMITED, INC. d/b/a/
                                DESTINY TOOL

**ACTION NO.:**      **5:04 CV 1315**

### PROOF OF SERVICE

I am a citizen of the United States. My business address is 1001 Marshall Street, Redwood City, CA 94063. I am employed in the County of San Mateo where this service occurs. I am over the age of 18 years, and not a party to the within cause. I am readily familiar with my employer's normal business practice for collection and processing of correspondence for mailing with the U.S. Postal Service, and that practice is that correspondence is deposited with the U.S. Postal Service the same day as the day of collection in the ordinary course of business.

On the date set forth below, following ordinary business practice, I served a true copy of the foregoing document(s) described as:

**DEFENDANT STEP TOOLS UNLIMITED, INC. d/b/a DESTINY TOOL'S ANSWER TO PLAINTIFF'S COMPLAINT AND COUNTERCLAIM**

☐    (BY FAX) by transmitting via facsimile the document(s) listed above to the fax number(s) set forth below, or as stated on the attached service list, on this date before 5:00 p.m.

☒    (BY MAIL) I caused such envelope(s) with postage thereon fully prepaid to be placed in the United States mail at Redwood City, California.

☐    (BY PERSONAL SERVICE) I caused such envelope(s) to be delivered by hand this date to the offices of the addressee(s).

☐    (BY OVERNIGHT DELIVERY) I caused such envelope(s) to be delivered to an overnight delivery carrier with delivery fees provided for, addressed to the person(s) on whom it is to be served.

R. Eric Gaum                    Telephone: 330/864-5550 Voice
Mark A. Watkins              Facsimile: 330/864-7986
Ross M. Babbitt               Attorneys for Plaintiff
Hahn Loeser & Parks
1225 West Market Street
Akron, Ohio 44313

☒    *(Federal)* I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on August 26, 2004, at Redwood City, California.

*Roxana Riedell*
ROXANA RIEDELL

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

RC1/358563.1/LD

PROOF OF SERVICE

# EXHIBIT 2

## Document Retrieval Result                                            Westlaw.

---

Lemieux v. Central Oil Field Supply Co. of Logan
Not Reported in N.E.2d, 1990 WL 128277
Ohio App.,1990.
Sep 07, 1990

**H** Not Reported in N.E.2d, 1990 WL 128277 (Ohio App. 11 Dist.)
Only the Westlaw citation is currently available.

CHECK OHIO SUPREME COURT RULES FOR REPORTING OF OPINIONS AND WEIGHT OF LEGAL AUTHORITY.

Court of Appeals of Ohio, Eleventh District, Ashtabula County.
James M. LEMIEUX, Esq., Plaintiff-Appellant,
v.
CENTRAL OIL FIELD SUPPLY CO. OF LOGAN, Defendant-Appellee.
No. 89-A-1479.
Sept. 7, 1990.

Civil Appeal from Ashtabula County Court, Eastern Division, Case No. 89 CVH 50.
James M. Lemieux, *pro se.*
Richard M. Wallar, Logan, for defendant-appellee.

Before CHRISTLEY, P.J., and MAHONEY and FORD, JJ.

*OPINION*

FORD, Judge.
*1 Appellant, James M. Lemieux, brought suit against Central Oil Field Supply Co. of Logan alleging abuse of process based upon a suit filed by appellee against appellant for professional negligence.
Appellee filed a motion for summary judgment arguing that appellant admitted, in a response to the request for admissions, that none of his property was seized as a result of the prior action. Appellant, in his brief in opposition, did not deny this statement but rather argued that his obligation to pay legal fees to defend the suit constituted a "seizure of property."
The trial court, relying upon the Ohio standard for malicious prosecution announced in *Crawford v. Euclid Natl. Bank* (1985), 19 Ohio St.3d 135, and reaffirmed in *Hawley v. Ritley* (1988), 35 Ohio St.3d 157, granted summary judgment for appellee.
Appellant, objecting in a timely fashion, raised the following three assignments of error:
"1. The trial court erred in granting the defendant-appellee's motion for summary judgment when the court agreed that the fourth element for malicious prosecution under Ohio Law which is based on the English Rule required an arrest and/or seizure of property.
"2. The trial court erred in granting the defendant-appellee's motion for summary judgment when the plaintiff-appellant satisfied the Ohio court's substantial deprivation exception rule.
"3. The trial court erred in granting the defendant-appellee's motion for summary judgment when it failed to consider a public policy approach to effectuate judicial economy and minimize the multiplicity of malicious prosecution suits."
All three assignments challenge the trial court's interpretation and application of the fourth element of *Crawford, supra,* and as such will be addressed together.
In *Crawford,* the court held that in order to establish a malicious prosecution claim, the plaintiff must show " * * * (4) seizure of the plaintiff's person or property during the course of the prior proceedings." *Crawford, supra,* at 139. (The courts have applied the same standards enunciated in *Crawford, supra,* when analyzing both abuse of process claims and malicious prosecution actions.)
Recently, this court in *Eastlake v. Rakauskas* (Jan. 12, 1990), Lake App. No. 88-L-13-208, unreported,

examined the dictates of *Crawford,* specifically in application to the fourth element requiring a seizure. In *Rakauskas,* the court concluded:

" * * * [W]e feel we are still bound by the existing state of the law in Ohio which requires a seizure of person or property. Until such time as the legislature interdicts or the Supreme Court clarifies or revises its position, we are duty bound to affirm." *Id.* at 7.

While the underlying facts in this cause appear to provide a compelling predicate to re-examine the "seizure" requirement announced in *Crawford,* in light of appellant's second and third assignments, this writer, while not enamored with the rule in Ohio on this subject, together with this court, is duty bound to comply with the pronouncement of the superior court of this state.

**\*2** We note the trial court's reference to "a technical failure of evidence" regarding the state of the record in this case at the time of the granting of summary judgment. The response to appellee's request for admission, in which appellant admitted that some of his property was seized, was submitted to appellee on May 4, 1989, but was not filed in the trial court until October 27, 1989, twenty-six days after the notice of appeal was filed in this case.

Civ.R. 56(C) provides that in considering a summary judgment motion, no evidence except the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of facts, if any, *timely filed in the action* may be considered. This court, in *Molden v. Davey Tree Company* (Aug. 3, 1990), Trumbull App. No. 89-T-4201, unreported, analyzed the dictates of Civ.R. 56(C). While stating that "the rule is far more stringent in its dictates relating to the manner in which such evidence should be presented to the trial court," the court noted the exception announced in *Rodger v. McDonald's Restaurants of Ohio, Inc.* (1982), 8 Ohio App.3d 256, in the first paragraph of the syllabus.

"When ruling on a motion for summary judgment, a trial court may consider documents other than those specified in Civ.R. 56(C) in support of the motion *when no objection is raised by the party against whom the motion is directed.*" *Molden, supra,* at 5-6. (Emphasis in original.)

In the underlying cause, no supporting matter in favor of or contra to the motion was filed by either party. However, it is clear that the appellant conceded, in his memorandum contra, that there was no seizure of his property, although he contends that an exception should be engrained in the law for special damages in the nature of attorney's fees consistent with his views of *Shore, Shirley and Co. v. Kelley* (1988), 40 Ohio App.3d 10.

Generally, as noted in *Molden, supra,* matter contained in a party's memorandum or brief is not deemed of a proper character to serve as a basis for summary judgment. Nevertheless, we agree with the trial court's conclusion since the pleadings here demonstrate that there was "no seizure" of appellant's property, and that he is only seeking redress for attorney's fees incurred in defending the original action against him brought by appellee sounding in professional negligence. (Additionally, even though there is independent material to support the trial court's decision, we make note of appellant's concession in his memorandum before the trial court that there was "no seizure" of his property.) Given the state of the pleadings in this cause and the holding enunciated in *Crawford, supra,* it is evident that there is no genuine issue of material fact as a matter of law since such special damages are not recognized as an exception to the seizure requirement by the Ohio Supreme Court.

Parenthetically, we would remind appellant to comply prospectively with our local appellate rules regarding proper brief format.

**\*3** For the foregoing reasons, the judgment of the trial court is affirmed.

CHRISTLEY, P.J., and MAHONEY, J., concur.
Ohio App.,1990.
Lemieux v. Central Oil Field Supply Co. of Logan
Not Reported in N.E.2d, 1990 WL 128277 (Ohio App. 11 Dist.)
END OF DOCUMENT

(C) 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Help © 2007 West

1 of 3 DOCUMENTS



Positive
As of: Aug 09, 2007

**Ralph J. Luciani, individually and as next friend of Mathew and Michael Luciani,
Plaintiff - Appellant, v. F. Joseph Schiavone; F. Joseph Schiavone Company, L.P.A.,
Defendants - Appellees.**

No. 98-4463

**UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT**

**2000 U.S. App. LEXIS 5842**

**March 24, 2000, Filed**

**NOTICE:**     [*1]   NOT RECOMMENDED FOR FULL-TEXT PUBLICATION. SIXTH CIRCUIT RULE 28(g) LIMITS CITATION TO SPECIFIC SITUATIONS. PLEASE SEE RULE 28(g) BEFORE CITING IN A PROCEEDING IN A COURT IN THE SIXTH CIRCUIT. IF CITED, A COPY MUST BE SERVED ON OTHER PARTIES AND THE COURT. THIS NOTICE IS TO BE PROMINENTLY DISPLAYED IF THIS DECISION IS REPRODUCED.

**SUBSEQUENT HISTORY:**    Reported in Table Case Format at: 2000 U.S. App. LEXIS 13074.

**PRIOR HISTORY:**     ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO. 97-00272. Beckwith. 11-3-98.
Luciani v. Schiavone, 210 F.3d 372, 2000 U.S. App. LEXIS 13074 (6th Cir. Ohio, 2000)

**DISPOSITION:**    District court's grant of summary judgment on the malicious prosecution and intentional infliction of emotional distress claims affirmed. Court reversed its grant of summary judgment on the abuse of process claim and remanded.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff sought review of the United States District Court for the Southern District of Ohio's grant of summary judgment to defendant as to plaintiff's claims for abuse of process, malicious prosecution, and intentional infliction of emotional distress.

**OVERVIEW:** Plaintiff sued defendant for abuse of process, malicious prosecution, and intentional infliction of emotional distress in connection with plaintiff's contentious divorce from his wife. Defendant, an attorney, filed a separation action in Ohio on behalf of plaintiff's wife, even though defendant knew wife had previously filed and dismissed a petition for divorce in New Mexico, the wife's domicile state. Ultimately, the Ohio action was dismissed and the parties were divorced in New Mexico. The district court granted defendant summary judgment as to all claims. On appeal, the court agreed, except as to the claim of abuse of process. A genuine issue of fact existed as to whether defendant filed the Ohio separation petition to settle issues not properly before the Ohio court, such as child custody, or to force plaintiff to acquiesce in the Ohio court's jurisdiction. The court affirmed in part and reversed in part.

**OUTCOME:** The court affirmed the district court's grant of summary judgment as to plaintiff's claims of malicious prosecution and intentional infliction of emotional distress, because plaintiff failed to meet the elements of those claims. The court reversed summary judgment on plaintiff's abuse of process claim and remanded for trial.

**LexisNexis(R) Headnotes**

2000 U.S. App. LEXIS 5842, *

*Civil Procedure > Summary Judgment > Appellate Review > Standards of Review*
*Civil Procedure > Summary Judgment > Standards > General Overview*
*Civil Procedure > Appeals > Standards of Review > De Novo Review*
[HN1] An appellate court reviews a grant of summary judgment de novo. Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c).

*Civil Procedure > Summary Judgment > Burdens of Production & Proof > General Overview*
*Civil Procedure > Appeals > Standards of Review > De Novo Review*
[HN2] An appellate court views the facts and the reasonable inferences that can be drawn therefrom in the light most favorable to the movant. If he fails to establish the existence of an essential element of his case on which he has the burden of proof, Fed. R. Civ. P. 56(c) mandates summary judgment.

*Civil Procedure > Remedies > Damages > General Damages*
*Torts > Intentional Torts > Abuse of Process > Elements*
*Torts > Intentional Torts > Malicious Prosecution > General Overview*
[HN3] Under Ohio law, in order to succeed on an abuse of process claim, a plaintiff must show (1) that a legal proceeding has been set in motion in proper form and with probable cause; (2) that the proceeding has been perverted to attempt to accomplish an ulterior purpose for which it was not designed; and (3) that direct damages have resulted from the wrongful use of process.

*Criminal Law & Procedure > Criminal Offenses > Weapons > Use > Simple Use > Elements*
*Torts > Intentional Torts > Malicious Prosecution > General Overview*
[HN4] Typically, process is abused by an attempt to obtain a collateral advantage that is not properly involved in the proceeding at issue by using the proceeding as a weapon. For abuse of process to occur there must be use of the process for an immediate purpose other than that for which it was designed and intended.

*Torts > Intentional Torts > Abuse of Process > General Overview*
*Torts > Intentional Torts > Malicious Prosecution > General Overview*
[HN5] Generally, if a suit is instituted in an attempt to settle a case, there is no abuse of process. This general rule does not apply if the attempt to settle involves issues that are not properly before the court.

*Torts > Intentional Torts > Malicious Prosecution > General Overview*
[HN6] Simply, abuse of process occurs where someone attempts to achieve through use of the court that which the court is itself powerless to order.

*Civil Procedure > Appeals > Reviewability > General Overview*
*Governments > State & Territorial Governments > Claims By & Against*
*Torts > Intentional Torts > Malicious Prosecution > General Overview*
[HN7] Under Ohio law, an attorney is not liable to a third party for his performance as an attorney unless the party is in privity with his client. Even if the third party is not in privity with his client, the attorney is not immune from liability if he acted maliciously.

*Civil Procedure > Dismissals > Voluntary Dismissals > Stipulations*
*Torts > Intentional Torts > Malicious Prosecution > General Overview*
[HN8] Under Ohio law, a voluntary dismissal of a claim does not operate as an adjudication on the merits for purposes of a malicious prosecution action.

*Civil Procedure > Dismissals > Voluntary Dismissals > Notices > Two-Dismissal Rule*
*Torts > Intentional Torts > Malicious Prosecution > General Overview*
[HN9] The two-dismissal rule specifically provides that only a notice of dismissal can operate as an adjudication on the merits, and a number of Ohio courts have held that the rule applies only to unilateral notices of dismissal filed by the plaintiff.

*Torts > Intentional Torts > Intentional Infliction of Emotional Distress > Elements*
[HN10] To establish a claim for intentional infliction of emotional distress, a plaintiff must show that (1) defendant intended to cause him serious emotional distress; (2)

defendant's actions were extreme and outrageous; and (3) these actions were the proximate cause of plaintiff's serious emotional distress.

COUNSEL: For RALPH J. LUCIANI, Plaintiff - Appellant: Donald J. Mooney, Jr., Benesch, Friedlander, Coplan & Aronoff, Cincinnati, OH.

For RALPH J. LUCIANI, Plaintiff - Appellant: Gail E. Sindell, Craig P. Kvale, Larry E. Harkenrider, Kaufman & Cumberland, Cleveland, OH.

For F. JOSEPH SCHIAVONE, F. JOSEPH SCHIAVONE COMPANY, L.P.A., Defendants - Appellees: John W. Hust, Michael E. Maundrell, Schroeder, Maundrell, Barbiere & Powers, Cincinnati, OH.

JUDGES: BEFORE: SUHRHEINRICH, COLE, and GIBSON, * Circuit Judges.

> * The Honorable John R. Gibson, Circuit Judge of the United States Court of Appeals for the Eighth Circuit, sitting by designation.

[*2]

OPINION BY: JOHN R. GIBSON

OPINION

JOHN R. GIBSON, Circuit Judge.

Dr. Ralph Luciani appeals the district court's grant of summary judgment against him and his two children on their claims of abuse of process, malicious prosecution, and intentional infliction of emotional distress. Dr. Luciani bases these claims on F. Joseph Schiavone's actions during a contentious breakup of the Luciani marriage. We reverse in part, affirm in part, and remand for further proceedings.

I.

Dr. Luciani married his wife Karen in 1984 at the Schiavone home in Ohio. Mrs. Luciani and Joan Schiavone are like sisters and are best friends, and the Schiavones stood up for the Lucianis at the wedding. The Lucianis lived in Ohio for a time during their marriage, but finally settled in Albuquerque, New Mexico in 1988. They have two sons: Michael, born in 1986, and Mathew, born in 1987. Because Mrs. Luciani has family and friends living in Ohio, she and the children visited yearly after moving to Albuquerque.

The Lucianis were having serious marital problems at least as early as 1992. During an October 1996 trip to Ohio, Mrs. Luciani sought Mr. Schiavone's advice and assistance in preparing a letter which she [*3] later gave

to Dr. Luciani. Mr. Schiavone is a lawyer who has been practicing for approximately 20 years, and about half his practice is devoted to domestic relations. The letter announced Mrs. Luciani's intention to move to Ohio and seek a divorce and it outlined a proposal for custody, support, and division of the family property. Dr. Luciani promptly rejected the proposal after receiving the letter.

On November 1, 1996, Mrs. Luciani's attorney, Stephen Quintana, filed a Petition for Dissolution of Marriage on her behalf in New Mexico. In this action, Mrs. Luciani alleged that she and her husband were residents of Bernalillo County, New Mexico, giving the court jurisdiction. She sought a divorce on the grounds of incompatibility and asserted claims for custody, child support, and division of property. In accordance with New Mexico law, the court issued a Temporary Domestic Order that, among other things, prevented either parent from taking the children out of state without written consent from the other.

Mrs. Luciani had been seeing a therapist, Audrey Worrell, who encouraged her to return to Ohio to take advantage of her support system of family and friends. According to Mrs. Luciani, [*4] Mr. Quintana had advised her that the order preventing removal of the children would no longer be in effect if the divorce case were no longer pending. Pursuant to her request, Mr. Quintana dismissed the New Mexico action on November 7. That same day, Mrs. Luciani took the boys out of school and took them to Ohio without informing Dr. Luciani. Mrs. Schiavone met them at the airport and drove them to the Schiavone home, where they lived until they later returned to New Mexico. During Mrs. Luciani's first week in Ohio, she enrolled the children in school and joined a church.

Prior to November 7, Mrs. Luciani and Mr. Schiavone had discussed the dismissal of the New Mexico dissolution action. Mr. Schiavone knew that she could not leave New Mexico with the children while the case was pending. The night that she arrived at the Schiavone home, Mr. Schiavone told her that he had done some research and felt comfortable that she would be protected. He knew that she wanted to end the marriage and had no desire to reconcile, but he advised her to file for a legal separation because she could not seek a divorce in Ohio until she had lived there for six months. Mr. Schiavone told her that there [*5] would be some jurisdictional issues involved in the case and that they needed to go to his office in the morning and file the separation action.

The day after Mrs. Luciani and the boys arrived, Mr. Schiavone filed a legal separation action in Ohio on her behalf. In the complaint, Mrs. Luciani gave her mother's address in Middletown, Ohio as her address and gave her

prior address in Albuquerque, New Mexico as Dr. Luciani's address. The complaint alleged that the Lucianis were incompatible and that Dr. Luciani had been guilty of gross neglect of duty and of extreme cruelty. It also alleged that Dr. Luciani, unless restrained by a court order, might strike, abuse, harass, stalk, threaten or injure Mrs. Luciani or might remove the Luciani children from Ohio. Mrs. Luciani sought a decree of legal separation, temporary and permanent sole residential parent status, temporary and permanent child support, temporary and permanent spousal support, an equitable division of the Lucianis' real and personal property, and a temporary restraining order. Mr. Schiavone signed the complaint as Mrs. Luciani's attorney.

Mrs. Luciani's affidavit, which accompanied the complaint, stated that she and Dr. [*6] Luciani were natural parents of the children, that the children were in her physical custody, and that she had always provided at least one-half or more of their daily care. She stated that she had moved out of the marital residence on or about November 7, 1996, and again gave her mother's Middletown, Ohio address as her address. Mrs. Luciani alleged that the children might attempt to remove the children from Ohio and refuse to allow her to see them or communicate with them. She further stated that the interests of the children were best served by allowing them to remain in her physical custody, and requested an order disallowing unsupervised visitation in Ohio and visitation outside of Ohio during the pendency of the action.

In a form affidavit that also accompanied the complaint, Mrs. Luciani averred that she and the children had lived at the Middletown, Ohio address since on or about November 7, 1996. On the reverse side of this affidavit, she circled the words "have not" to complete a statement that read as follows: "I have not participated as a party, witness or in any other capacity in litigation concerning the custody, allocation of parental rights and responsibilities, or designation [*7] of residential parents of the above named child(ren) in this or any other state in the past five years." She also circled "do not" to complete the following statement: "I do not have knowledge of any custody or parenting proceeding concerning the child(ren) in a court of this or any other state."

On November 8, the Ohio court granted temporary residential parent status to Mrs. Luciani and prohibited unsupervised visitation and visitation outside of Ohio between Dr. Luciani and the children. It also granted child support in the sum of $ 588.43 per week, commencing on the first Friday after the completion of service on Dr. Luciani. The court issued an order restraining Dr. Luciani from engaging in the numerous activities of which Mrs. Luciani claimed she was in fear and from removing the children from Ohio.

Also on November 8, Dr. Luciani's attorney filed a divorce action on his behalf in New Mexico. The New Mexico judge determined that New Mexico had jurisdiction over the dispute and issued a positive restraining order directing Mrs. Luciani to return the children to the state. In December, the FBI arrested Mrs. Luciani and returned the children to New Mexico. The Ohio action was [*8] dismissed after Mrs. Luciani acquiesced to the jurisdiction of New Mexico in January 1997. She returned to New Mexico and the Lucianis were eventually divorced.

Dr. Luciani brought this diversity action against Mr. Schiavone on his own behalf and on behalf of the children, alleging abuse of process, malicious prosecution, and negligent and intentional infliction of emotional distress. The district court granted Mr. Schiavone's motion for summary judgment on every claim. Dr. Luciani appeals the grant of summary judgment on all claims except negligent infliction of emotional distress. We reverse the judgment in favor of Mr. Schiavone on the abuse of process claim.

II.

"[HN1] We review a grant of summary judgment de novo." *Jackson v. Leighton*, 168 F.3d 903, 909 (6th Cir. 1999). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). [HN2] We view the facts and the reasonable inferences that can be drawn therefrom in the light [*9] most favorable to Dr. Luciani. *See Jackson*, 168 F.3d at 909. If he fails to establish the existence of an essential element of his case on which he has the burden of proof, Rule 56(c) mandates summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986).

A.

[HN3] Under Ohio law, in order to succeed on his abuse of process claim, Dr. Luciani must show "(1) that a legal proceeding has been set in motion in proper form and with probable cause; (2) that the proceeding has been perverted to attempt to accomplish an ulterior purpose for which it was not designed; and (3) that direct damage has resulted from the wrongful use of process." *Yaklevich v. Kemp, Schaeffer & Rowe Co.*, 68 Ohio St. 3d 294, 626 N.E.2d 115, 118 (Ohio 1994) (footnotes omitted). Dr. Luciani's complaint alleges that Mr. Schiavone had no probable cause to bring the legal separation action, presumably because he believes that the Ohio court had no jurisdiction over the case. If this allegation were

true, it would defeat his claim for abuse of process since probable cause is a required element of the tort. *See* 626 N.E.2d at 118; [*10] *Kremer v. Cox*, 114 Ohio App. 3d 41, 682 N.E.2d 1006, 1013 n.5 (Ohio Ct. App. 1996) ("The underlying action must be brought with probable cause in order to support a subsequent claim for abuse of process.").

The district court concluded that whether Mr. Schiavone had probable cause to bring the Ohio action was not determinative of the abuse of process claim, and declined to discuss the topic. The court held that Dr. Luciani had not demonstrated that Mr. Schiavone perverted the Ohio separation action to accomplish any of three alleged ulterior purposes: to coerce Dr. Luciani to move to Ohio, to force him to acquiesce to the Ohio court's jurisdiction, or to persuade her to agree to favorable settlement terms. The court held that an attempt to reach a favorable settlement was not actionable and that Dr. Luciani had not adduced a scintilla of evidence in support of the other two alleged ulterior purposes. Accordingly, it granted summary judgment to Mr. Schiavone on the abuse of process claim.

[HN4] Typically, process is abused by an attempt to obtain a collateral advantage that is not properly involved in the proceeding at issue by using the proceeding as a weapon. *See Robb v. Chagrin Lagoons Yacht Club, Inc.*, 75 Ohio St. 3d 264, 662 N.E.2d 9, 14 (Ohio 1996) [*11] (quoting W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 121, at 898 (5th ed. 1984)). "For abuse of process to occur there must be use of the process for an immediate purpose other than that for which it was designed and intended." Restatement (Second) of Torts § 682 cmt. b (1977).

There is no evidence that Mr. Schiavone was trying to force Dr. Luciani to move to Ohio. We believe, however, that there is a genuine issue of material fact whether Mr. Schiavone was trying to settle issues that were not properly before the court or to force Dr. Luciani to acquiesce in the Ohio court's jurisdiction. Also, Dr. Luciani may be able to show that Mr. Schiavone was attempting to obtain favorable judgments that he knew the Ohio court had no power to order. *Cf. Yu v. Signet Bank/Virginia*, 69 Cal. App. 4th 1377, 82 Cal. Rptr. 2d 304, 312 (Cal. Ct. App. 1999) (holding that there were triable issues of fact on abuse of process claim where defendants sued California residents in Virginia and should have known that any judgment they might obtain would be void for lack of jurisdiction).

[HN5] Generally, if a suit is instituted in an attempt to settle a case, there is [*12] no abuse of process. *See Whelan v. Abell*, 293 U.S. App. D.C. 267, 953 F.2d 663, 671 (D.C. Cir. 1992). This general rule does not apply if the attempt to settle involves issues that are not properly

before the court. If the Ohio separation action was properly before the court and Mr. Schiavone was attempting to settle only the issue of separation, there would be no abuse of process. If, however, Mr. Schiavone was attempting to settle custody, support, and property issues that were not properly before the court in the separation action, he would be seeking a collateral advantage.

When Mrs. Luciani visited Ohio in October 1996, she drafted a settlement letter with Mr. Schiavone's assistance. Mr. Schiavone stated that he did not consider Mrs. Luciani a client when he helped her with the letter, but that he gave her legal advice as it pertained to her situation if she moved to Ohio. He first considered her to be a client on the morning of the day she left New Mexico.

Mr. Schiavone had, however, been in contact with Mr. Quintana, Mrs. Luciani's lawyer in New Mexico. They had discussed Mrs. Luciani's case and situation, and Mr. Schiavone was aware that the Temporary Domestic [*13] Order prevented Mrs. Luciani from taking the children out of New Mexico. Mrs. Luciani was present in Mr. Quintana's office when he and Mr. Schiavone had a telephone conversation regarding New Mexico and Ohio law.

One or two days before Mrs. Luciani left New Mexico, Mr. Quintana called Mr. Schiavone to ask whether she could file a legal separation action in Ohio. Sometime prior to November 7, Mr. Schiavone instructed Mrs. Luciani not to leave New Mexico until she checked with Mr. Quintana and made sure it was legal for her to leave. Mrs. Luciani called Mr. Schiavone's office on the morning she left New Mexico, but did not speak with him personally.

Mr. Schiavone stated that he advised Mrs. Luciani not to come to Ohio, because if the case were contested, it would be better to litigate in New Mexico to protect the assets and to make it easier on the children. Once she arrived in Ohio, he felt that it was imperative to get her under the jurisdiction of the Ohio courts. He stated that the Ohio court might have jurisdiction over assets located outside the state, particularly if Dr. Luciani agreed to the jurisdiction. Mr. Schiavone also believed that the Ohio court would have jurisdiction [*14] to enter orders regarding custody and child support under the Uniform Child Custody Jurisdiction Act.

Mr. Schiavone stated that his office prepared the documents filed in the legal separation action, but pointed out several times that the affidavit was his client's, and not his. Although the address given on the documents was not where Mrs. Luciani actually resided while in Ohio, it was her original intention to live with her mother, and not with the Schiavones. Mr. Schiavone admitted that the statement that Mrs. Luciani had not been a party to any custody litigation in the past five

years was not true because the New Mexico dissolution proceedings involved custody and allocation of parental rights. He was sure that he reviewed the affidavit before filing it, as is his practice, but it was still filed with a false statement. Mr. Schiavone stated that he did not realize there was a misstatement until several days before his deposition. He believed that Mrs. Luciani did not knowingly lie in the affidavit, and that any inaccuracies were her mistake.

Mrs. Luciani admitted that there had been custodial proceedings prior to November 7. She stated that she circled the items on the affidavit, [*15] but then said she did not remember circling any of it. She read and signed the affidavit, and assumed that Mr. Schiavone had read it as well. Mrs. Luciani admitted that the statement regarding custody proceedings in the past five years was false.

While the case before us was pending in the district court, Judge Conese, the judge before whom the Ohio action was litigated, filed an affidavit. He stated that he was aware of the previous New Mexico filing and dismissal while the Ohio case was pending, including on November 8 when he entered the order granting temporary custody and child support. He was also aware that Mrs. Luciani and the children were staying at the Schiavone home. According to Judge Conese, Mr. Schiavone informed him of these facts.

Viewing the evidence in the light most favorable to Dr. Luciani, we conclude there is a genuine issue of material fact regarding whether Mr. Schiavone perverted the Ohio action in an attempt to accomplish an ulterior purpose. Because of the close personal relationship between his wife and Mrs. Luciani, Mr. Schiavone was aware of the history of difficulties in the Luciani marriage. He knew that Mrs. Luciani had filed and dismissed the New [*16] Mexico action, immediately leaving the state with the children when the Temporary Domestic Order was no longer in effect. He knew that an Ohio court would have jurisdiction over a separation action but not a divorce action. The complaint he filed requested custody, support, and property division, even though he should have been aware that the Ohio court may have lacked jurisdiction over these issues. *See Stanek v. Stanek*, 1994 Ohio App. LEXIS 4261, No. CA94-03-080, 1994 WL 519826 (Ohio Ct. App. Sept. 26, 1994). The Ohio court actually granted child support to Mrs. Luciani. Mr. Schiavone's office prepared, and he reviewed, the documents that contained the false statements. Additionally, Judge Conese's affidavit implies that Mr. Schiavone had improper ex parte contact with the judge.

The evidence is such that a reasonable fact finder could infer that Mr. Schiavone brought the separation action to pressure Dr. Luciani to submit to Ohio's juris-

diction on issues that were not properly before the court. Assuming, without deciding, that Mr. Schiavone had probable cause to bring the separation action but did not have probable cause to request custody, support, or property division, a jury could infer [*17] that he was using the Ohio action as a bargaining chip to obtain a custody arrangement and property settlement that the Ohio court had no power to order. Alternatively, a jury could infer that Mr. Schiavone was attempting to obtain actual judgments from the Ohio court that it had no power to grant. "[HN6] Simply, abuse of process occurs where someone attempts to achieve through use of the court that which the court is itself powerless to order." *Robb*, 662 N.E.2d at 14. Although the custody, support, and property claims were related to the separation proceeding, they must be considered collateral to the proceeding if the Ohio court had no jurisdiction over them. Thus, we reverse the summary judgment in Mr. Schiavone's favor on this claim.

Mr. Schiavone argues that he is immune from liability to Dr. Luciani and the children. [HN7] Under Ohio law, an attorney is not liable to a third party for his performance as an attorney unless the party is in privity with his client. *See Scholler v. Scholler*, 10 Ohio St. 3d 98, 462 N.E.2d 158, 163 (Ohio 1984). Even if the third party is not in privity with his client, the attorney is not immune from liability if he acted maliciously. [*18] *See id.* The district court did not address the immunity argument, and we decline to do so for the first time on appeal.

**B.**

Dr. Luciani's claim for malicious prosecution requires that he establish four elements: (1) Mr. Schiavone maliciously instituted the legal separation proceedings; (2) there was a lack of probable cause for filing the prior suit; (3) the prior proceedings terminated in Dr. Luciani's favor; and (4) there was a seizure of Dr. Luciani's person or property during the course of the prior proceedings. *See Crawford v. Euclid Nat'l Bank*, 19 Ohio St. 3d 135, 483 N.E.2d 1168, 1171 (Ohio 1985). As with the abuse of process claim, whether there was probable cause for the Ohio action is at issue. *See Yaklevich*, 626 N.E.2d at 120 n.6 (stating that claims for abuse of process and malicious prosecution are not interchangeable and that probable cause determines which claim is appropriate).

Again, the district court concluded that probable cause was not determinative because the malicious prosecution claim failed on other grounds: Dr. Luciani could not demonstrate either a termination of the Ohio proceedings in his favor or seizure of [*19] his person or property during the course of the proceedings. We agree that whether Mr. Schiavone had probable cause to institute the Ohio action is not determinative of this claim

because Dr. Luciani cannot establish that the Ohio action terminated in his favor.

Mrs. Luciani's decision to litigate in New Mexico rather than Ohio prompted discussions between John Smith, who became her Ohio attorney after Mr. Schiavone withdrew, and Michael Masana, Dr. Luciani's Ohio attorney, regarding dismissal of the Ohio case. Mr. Masana drafted a dismissal entry that contained signature lines for him. Mr. Smith, and Judge Conese, and faxed it to Mr. Smith on January 24, 1997, requesting telephone approval to sign Mr. Smith's name. The relevant portion of the entry reads as follows:

> It appearing to the court that the plaintiff, Karen Luciani, has acquiesced in the jurisdiction of New Mexico on all matters concerning her divorce and those issues regarding the minor children . . . . IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the Complaint of the plaintiff be dismissed, costs to the plaintiff.

Mr. Smith responded by fax on January 27, confirming he had given Mr. Masana permission [*20] to sign for him. Mr. Smith also asked that Mr. Masana give him a time-stamped copy of the entry after it was filed. The parties have not provided us with a copy of the signed and filed entry, but both agree that the Ohio court dismissed the action using this order.

[HN8] Under Ohio law, a voluntary dismissal of a claim does not operate as an adjudication on the merits for purposes of a malicious prosecution action. *See Starinki v. Pace*, 81 Ohio App. 3d 113, 610 N.E.2d 494, 495 (Ohio Ct. App. 1991). In effect, the entry in the case before us combines two provisions of Ohio's rule on voluntary dismissals: it has aspects of both a stipulation of dismissal and a court-ordered dismissal. *See* Ohio R. Civ. Pro. 41(A). A stipulation of dismissal is made pursuant to agreement, signed by the parties, and filed with the court, obviating any need for the court to take further action. Here, because the stipulation was drafted as an entry that required the signature of the judge, it became an order of the court. Because the court ordered dismissal and did not specify that the dismissal was with prejudice, the dismissal did not act as an adjudication on the merits. *See* Ohio R. [*21] Civ. Pro. 41(A)(2). Even if we construe the dismissal as a stipulated dismissal, it was made without prejudice because it did not specify otherwise. *See* Ohio R. Civ. Pro. 41(A)(1).

Dr. Luciani argues that if the dismissal was voluntary, the two-dismissal rule means that the dismissal acted as an adjudication on the merits since Mrs. Luciani

dismissed the New Mexico action prior to dismissing the Ohio action. [HN9] The two-dismissal rule specifically provides that only a notice of dismissal can operate as an adjudication on the merits, and a number of Ohio courts have held that the rule applies only to unilateral notices of dismissal filed by the plaintiff. *See, e.g., Ham v. Park*, 110 Ohio App. 3d 803, 675 N.E.2d 505, 512 (Ohio Ct. App. 1996); *Hershiser v. BOS Corp.*, 69 Ohio App. 3d 186, 590 N.E.2d 323, 325 (Ohio Ct. App. 1990). Because the Ohio action was not dismissed pursuant to a notice of dismissal and because the attorneys for both parties, as well as the judge, participated in the decision to dismiss the Ohio action, the dismissal did not act as an adjudication on the merits under the two-dismissal rule.

Although the dismissal of the Ohio action [*22] does not fit neatly into a particular category of voluntary dismissal, we are satisfied that it was voluntary and made without prejudice. [1] It is only logical to conclude that the Ohio court did not address the merits of the action since the New Mexico action in which Mrs. Luciani decided to participate adjudicated the same claims. Because the Ohio proceedings did not terminate in Dr. Luciani's favor, the district court properly granted summary judgment to Mr. Schiavone.

> 1    We also note that even if we construed the dismissal to be involuntary and made because the court lacked jurisdiction, the dismissal would not act as a decision on the merits. *See* Ohio R. Civ. Pro. 41(B)(4).

**C.**

Finally, [HN10] to establish a claim for intentional infliction of emotional distress, Dr. Luciani must show that (1) Mr. Schiavone intended to cause him serious emotional distress; (2) Mr. Schiavone's actions were extreme and outrageous; and (3) these actions were the proximate cause of Dr. Luciani's serious emotional distress. [*23] *See Phung v. Waste Mgmt., Inc.*, 71 Ohio St. 3d 408, 644 N.E.2d 286, 289 (Ohio 1994). Dr. Luciani's complaint alleges that Mr. Schiavone inflicted serious emotional distress by causing the children to be removed from their New Mexico home and by prosecuting the Ohio separation action.

Even if Mr. Schiavone had encouraged Mrs. Luciani to dismiss the New Mexico action and bring the children to Ohio to litigate there (and the record does not show that was the case), his actions did not "go beyond all possible bounds of decency," nor would they "be regarded as atrocious, and utterly intolerable in a civilized community." *Yeager v. Local Union 20, Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*, 6 Ohio St. 3d 369, 453 N.E.2d 666, 671 (Ohio 1983) (quoting Restatement (Second) of Torts § 46 cmt. d (1965)). Also, Dr. Luciani

2000 U.S. App. LEXIS 5842, *

has put forth no evidence that any serious emotional distress suffered by him and the children was proximately caused by Mr. Schiavone rather than by the dissolution of the Luciani marriage. The district court properly granted summary judgment against Dr. Luciani on this claim.

* * *

Accordingly, we affirm the district court's grant of summary judgment on the malicious [*24] prosecution and intentional infliction of emotional distress claims. We reverse its grant of summary judgment on the abuse of process claim and remand for further proceedings consistent with this opinion.

## Document Retrieval Result                                    Westlaw.

---

Garnett v. Meckler
Not Reported in N.E.2d, 1990 WL 37424
Ohio App.,1990.
Mar 29, 1990

**H**  Not Reported in N.E.2d, 1990 WL 37424 (Ohio App. 8 Dist.)
Only the Westlaw citation is currently available.

CHECK OHIO SUPREME COURT RULES FOR REPORTING OF OPINIONS AND WEIGHT OF LEGAL AUTHORITY.

Court of Appeals of Ohio, Eighth District, Cuyahoga County.
Robert O. GARNETT, Plaintiff-Appellant,
v.
William G. MECKLER, et al., Defendant-Appellees.
No. 56711.
March 29, 1990.

Civil Appeal from Common Pleas Court, Case No. 140,236.
Robert O. Garnett, pro se.
Theodore E. Meckler, Cleveland, for defendant-appellees.

JOURNAL ENTRY AND OPINION

KRUPANSKY, Presiding Judge.
*1 Plaintiff-Appellant, Robert Garnett, appeals from November 2, 1988 judgment of the Cuyahoga Common Pleas court, case number 140236, which granted defendants-appellees, Henrietta Kidd, Meckler Co., L.P.A., and William Meckler's motion for summary judgment, on November 2, 1988. Appellant's complaint, filed November 24, 1987, charged the appellees with malicious prosecution, abuse of process, intentional infliction of emotional distress and a constitutional tort. Appellant requested compensatory and punitive damages. On September 19, 1988 appellees filed a motion for leave to file summary judgment instanter which motion was thereafter granted. On October 11, 1988 appellant in one document filed motions as follows: (1) reply to appellees' motion for summary judgment, (2) motion for leave to file motion for summary judgment and, (3) appellant's motion for summary judgment. Since the trial court granted appellees' motion for summary judgment, the trial court in effect can be presumed to have overruled appellant's motion for leave to file for summary judgment. Appellant timely appealed. The relevant facts follow:
Appellant Garnett is an attorney. Preceding the action *sub judice,* Garnett sued Henrietta Kidd in the small claims division of the Cleveland Municipal Court, *Garnett v. Kidd,* case no. 86 CVI 13991, for unpaid legal fees arising from prior representation of Ms. Kidd. The referee awarded Garnett $650 plus costs on August 25, 1986. It is undisputed the referee's report granted Kidd the right to make payments of $75 per month. Garnett objected to the amount of judgment and the terms of payment. Thereafter, on September 24, 1986 the Cleveland Municipal court overruled all objections and filed a judgment entry awarding $650 and costs to Garnett. Garnett thereupon attached an employee credit union account of Kidd's and refused two of her $75 payments. Garnett, through the attachment proceedings received only $113; the two $75 payments tendered by Kidd amounted to $150.
Ms. Kidd contacted attorney William Meckler who advised her she had a claim for wrongful attachment against Garnett. Acting on advice of counsel, Ms. Kidd sued Garnett for wrongful attachment in Cleveland Municipal Court (case No. 87 CVE 00716). Garnett's motion to dismiss was granted by Cleveland Municipal court. Subsequently, Garnett initiated the action *sub judice* and appeals from summary judgment for appellees.
Appellant presents one assignment of error:
SUMMARY JUDGMENT WAS IMPROPER AS THERE WERE MATERIAL FACTS IN DISPUTE.
Appellant's only assignment of error lacks merit.

Appellant argues summary judgment is inappropriate since (1) he has alleged certain mental states or feelings, (2) appellees are guilty of malicious prosecution, (3) appellees are guilty of abuse of process, (4) appellees inflicted upon appellant intentional emotional distress, and (5) appellant has a constitutional right, in Ohio, to a remedy.

A party moving for summary judgment has the burden of demonstrating:

*2 " * * * (1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor." *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64.

Once a motion for summary judgment has been made,

" * * * [an] adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him." Ohio Rule of Civil Procedure 56(E).

In reviewing a motion for summary judgment, the court must construe the evidence in a light most favorable to the party opposing the motion. *Morris v. Ohio Cas. Ins. Co.* (1988), 35 Ohio St.3d 45, 47, citations omitted. Further, the Ohio Supreme Court has analyzed Civ.R. 56(E) and established that the burden is upon the moving party to establish the non-existence of material factual issues whether or not the opposing party responds. *Id.* at 47.

*Malicious Prosecution*

Appellant argues appellees instituted suit against him for wrongful attachment out of malice, without probable cause and in defense of the suit *sub judice,* used appellant's valuable time, thus, constituting a seizure of property. Appellant's arguments are unpersuasive.

The Ohio Supreme Court reaffirmed the validity of the four elements necessary to establish a claim for malicious prosecution in *Crawford v. Euclid National Bank* (1985), 19 Ohio St.3d 135, 139; *Kelly v. Whiting* (1985), 17 Ohio St.3d 91, 94, *cert. denied* 474 U.S. 1008.

In order to sustain a cause of action or withstand summary judgment of a malicious prosecution claim in Ohio, four essential elements must be alleged by the plaintiff:

"(1) malicious institution of prior proceedings against the plaintiff by defendant. *Woodruff v. Paschen* (1922), 105 Ohio St. 396; (2) lack of probable cause for the filing of the prior lawsuit, *Melanowski v. Judy* (1921), 102 Ohio St. 153; (3) termination of the prior proceedings in plaintiff's favor, *Levering v. National Bank* (1912), 87 Ohio St. 117; and (4) seizure of plaintiff's person or property during the course of the prior proceedings. "*Cincinnati Daily Tribune v. Bruck* (1900), 6761 Ohio St. 489.

*Crawford, supra,* at 139.

The court stated in *Crawford,* "[W]e find that the requirement of an arrest of a person or seizure of property in malicious prosecution actions is necessary, as a matter of public policy, to dissuade the multiplicity of counter-suits that could occur in the absence of such requirement." *Id.* Applying the standard set forth in *Crawford,* appellant's claim is deficient in at least two respects *viz,* (a) seizure of appellant's person or property during the course of the prior proceedings and, (b) lack of probable cause for the filing of the prior lawsuit. Appellant can sustain no arrest or seizure of property. Appellant's time spent defending a claim will not suffice as a seizure of property claim. See *Perry v. Arsham* (1956), 101 Ohio App. 285, 287.

*3 Appellant argues that appellees were motivated by malice.

The record indicates appellees attached an affidavit and deposition with four exhibits to their motion for summary judgment *viz.,* (1) the affidavit of Ms. Kidd, (2) the deposition of Mr. Meckler, (3) journal entry of judgment of the Cleveland Municipal court in case no. 86CVI 13991, (4) objection to said judgment by Mr. Garnett and (5) correspondence.

Ms. Kidd's affidavit states she relied on advice of counsel. The general rule, followed in Ohio, is an action for malicious prosecution will not lie if the prosecution was initiated in reliance on the good faith advice of counsel. *Woodruff v. Paschen* (1922), 105 Ohio St. 396; *Ashcraft v. Lodge* (1963), 118 Ohio App. 506. Concomitantly, Ms. Kidd had a good faith belief that, based upon the referee's decision, she was entitled to make payments of $75 a month. This substantiates Ms. Kidd's and her counsel's good faith belief that appellant wrongfully attached the employee credit union account.

To establish the elements of malicious prosecution or abuse of process against appellee Kidd's counsel, appellant essentially must demonstrate lack of probable cause for the action brought. *Woyczynski v. Wolf*

(1983), 11 Ohio App.3d 226, 229.

The evidence before the lower court on the appellees' motion for summary judgment discloses an indisputable good faith basis for the action brought by appellees.

Their client, Ms. Kidd, informed attorney Meckler she was wrongfully attached by Garnett. A referee had granted payments of $75 a month and the ambiguity in the journal entry did not exemplify the terms of payment. Even though Ms. Kidd's suit in Cleveland Municipal court, case no. 86CVI 13991 was dismissed in favor of Garnett, Garnett has established no other element of malicious prosecution. Therefore, no genuine dispute of fact for trial remained, nor did it appear appellant in his response to appellees' motion for summary judgment had any means of proving malice by arrest of person, seizure of property or lack of probable cause. This element of appellant's claim is not well taken and overruled.

*Abuse of Process*

Appellant argues appellees used the court for an "ulterior motive" in suing appellant for wrongful attachment and such use of the court constituted the tort of abuse of process. Appellant's argument is unpersuasive.

Initially the tort of abuse of process must be distinguished from malicious prosecution. Abuse of process requires a showing that process, once it has been issued, has been perverted to accomplish an improper purpose. *Clermont Environmental Reclamation Co. v. Hancock* (1984), 16 Ohio App.3d 9, 11. This tort is not for the wrongful or malicious institution of process. *Hauser v. Bartow* (1937), 7 N.E.2d, 268, 269. It is not enough that appellees herein may have had ulterior motives, rather it is incumbent upon appellant to prove that a legitimate process employed for a legitimate purpose was employed in an improper manner. *Clermont, supra,* at 11; *Hauser, supra* at 269. A concrete example may prove helpful. If a person instituted a commitment proceeding maliciously and used it for that purpose, he does not commit abuse of process, no matter what his motive may be. *Hauser, supra,* at 269, 270. However, if the same actor instituted the process not for its proper end, i.e., commitment, but to extort money or coerce action, that is abuse of process. *Id.*

**\*4** Appellees presented testimony and exhibits that they used the court appropriately when filing suit against appellant for relief against what they perceived to be a wrongful attachment. Nowhere in the complaint or depositions is it apparent that appellees' actions were outside the scope of the process of the court as the law intended. Appellant's second allegation of his assignment of error is, therefore, not well taken and overruled.

*Intentional Infliction of Emotional Distress*

Appellant alleges that the suit for wrongful attachment that was dismissed against him was filed without justification or excuse and was, therefore, "outrageous." Garnett contends appellee Meckler knew or should have known the existence of a valid judgment was a complete defense to the wrongful attachment and since Meckler pursued the claim, Meckler was acting with malice.

To sustain a complaint of intentional infliction of emotional distress, four factors must be proved:

1) that the actor either intended to cause emotional distress or knew or should have known that actions taken would result in serious emotional distress to the plaintiff; 2) that the actor's conduct was so extreme and outrageous as to go "beyond all possible bounds of decency" and was such that it can be considered as "utterly intolerable in a civilized community." Restatement of Torts 2d (1965), 73, Section 46, comment d; 3) that the actor's actions were the proximate cause of plaintiff's psychic injury; and 4) that the mental anguish suffered by plaintiff is serious and of a nature that "no reasonable man could be expected to endure it," Restatement of Torts 2 77, Section 46, comment j.

*Pyle v. Pyle* (1983), 11 Ohio App.3d 31, 34.

In the case *sub judice* appellant acknowledges he has no proof that appellee Meckler intended injury. Appellant further testified in deposition he suffered some loss of appetite, inability to concentrate and took the generic equivalent of Tylenol. The following excerpt from the transcript is Garnett's testimony regarding the frequency with which he took generic Tylenol:

A. I can't say I took them three times a day or anything like that. I took them whenever these symptoms manifested themselves.

Q. Did you take them daily?

A. I probably did, but it may not have always been for the headache, I may have taken them for pain that I was having as a result of an injury I had related to jogging.

Appellant did not consult a physician for these problems. Appellant's evidence failed to sustain the necessary tests enumerated in *Pyle supra,* for intentional infliction of emotional distress, thus, the trial court, construing the evidence in a light most favorable to the appellant, correctly granted summary judgment for appellees on this cause of action.

Appellant's third element of error is not well taken and overruled.

*Constitutional Tort*

Lastly, appellant argues that the Ohio Constitution provides all persons have access to the courts and appellant has "continuing rights" under the Ohio Constitution.

**\*5** Article I, § 16 of the Ohio Constitution follows:

All courts shall be open, and every person, for an injury done him in his land, goods, person, or reputation, shall have remedy by due course of law, and shall have justice administered without denial or delay. Pursuant to Civ.R. 56(C) a trial court may enter summary judgment against a party without compromising "due process" rights, when the evidence before the court shows no genuine issue as to any material facts exists. *Houk v. Ross* (1973), 34 Ohio St.2d 77. The federal system promulgates Fed.R.Civ.P. 56 which is the counterpart of Ohio Civ.R. 56. Both are designed to reduce unnecessary litigation.

Safeguards are built into our judicial system. Article IV of the Ohio constitution provides for the establishment of an appellate court system. Ohio has adopted appellate rules that make every litigant entitled to "[a]n appeal as of right \* \* \* within the time allowed \* \* \*." App.R. 3(A). By providing litigants with this right, Ohio has created a property interest which plaintiff may not be deprived of without due process of law. *Atkinson v. Grumman Ohio Corp.* (1988), 37 Ohio St.3d 80, 82-83.

Appellant has availed himself of this right of appeal, is properly under the jurisdiction of the court *sub judice,* thus, no genuine issue of constitutional tort exists for appellant's right to redress is apparent. There is no doubt appellant has taken advantage of his constitutional right through the courts. Appellant initiated his cause of action in the case *sub judice* in the common pleas court and has now completed his appeal in the intermediate court of appeals. Appellant has certainly not been deprived of due process of law.

Appellant's fourth element of his assignment of error is not well taken and overruled.

With respect to each argument appellees have demonstrated through deposition testimony and/or documentary evidence that appellant's claims were factually ill-founded.

In addition, appellees presented cogent authority to indicate they were entitled to summary judgment as a matter of law on each of appellant's claims.

Accordingly, appellant's entire assignment of error is not well taken and overruled.

Judgment affirmed.


JOHN V. CORRIGAN, J., and PAUL H. MITROICH, [FN\*] J., concur.

N.B. This entry is made pursuant to the third sentence of Rule 22(D), Ohio Rules of Appellate Procedure. This is an announcement of decision (see Rule 26). Ten (10) days from the date hereof, this document will be stamped to indicate journalization, at which time it will become the judgment and order of the court and time period for review will begin to run.


     FN\* Judge PAUL H. MITROVICH, Lake County Court of Common Pleas, Sitting by Assignment.


Ohio App.,1990.

Garnett v. Meckler

Not Reported in N.E.2d, 1990 WL 37424 (Ohio App. 8 Dist.)

END OF DOCUMENT

(C) 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Help © 2007 West

LEXSEE

**GREGG J. MCCONNELL, Plaintiff, v. APPLIED PERFORMANCE
TECHNOLOGIES, INC., et al., Defendants.**

Case No. C2-01-1273

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF
OHIO, EASTERN DIVISION

2002 U.S. Dist. LEXIS 27599

December 11, 2002, Decided

**SUBSEQUENT HISTORY:** Affirmed by McConnell v.
Applied Performance Techs., Inc., 98 Fed. Appx. 397,
2004 U.S. App. LEXIS 8112 (2004)

**PRIOR HISTORY:** McConnell v. Applied Performance
Techs., 2002 U.S. Dist. LEXIS 27598 (S.D. Ohio, Mar.
18, 2002)

**DISPOSITION:**        [*1]  Defendants' motion for
summary judgment granted.

**COUNSEL:** For Gregg J McConnell, Plaintiff: John
William Ferron, LEAD ATTORNEY, Ferron &
Associates, Columbus, OH.

For Gregg J McConnell, Plaintiff: Rebekah Stasha
Sinnott Neuherz, LEAD ATTORNEY, Surdyk, Dowd &
Turner Co., LPA, Dayton, OH.

For Applied Performance Technologies Inc, Gregory H
Huddle, Defendants: Susan Porter, LEAD ATTORNEY,
Schottenstein, Zox & Dunn, Columbus, OH.

For Applied Performance Technologies Inc, Gregory H
Huddle, Counter Claimants: Susan Porter, LEAD
ATTORNEY, Schottenstein, Zox & Dunn, Columbus,
OH.

For Gregg J McConnell, Counter Defendant: John
William Ferron, LEAD ATTORNEY, Ferron &
Associates, Columbus, OH.

**JUDGES:** John D. Holschuh, Judge, United States
District Court. Magistrate Judge Kemp.

**OPINION BY:** John D. Holschuh

**OPINION**

**MEMORANDUM & ORDER**

Plaintiff Gregg McConnell brought suit against his
former employer, Applied Performance Technologies,
Inc. ("APT"), and APT's owner and sole shareholder,
Gregory Huddle, alleging violations of the Fair Labor
Standards Act ("FLSA") and Ohio Revised Code §
4111.03 [*2] . Both claims are based on APT's failure to
pay McConnell overtime pay to which he claims to be
entitled. This matter is currently before the Court on
Defendants' motion for summary judgment (Record at
14), and Defendants' motion to stay discovery until the
Court rules on the motion for summary judgment (Record
at 31). In their motion for summary judgment,
Defendants contend that Plaintiff is barred from litigating
his overtime claims because they were compulsory
counterclaims that should have been asserted in the
context of earlier litigation.

1. Background

Gregg McConnell began working at APT in 1993 as
an administrative assistant. He was responsible for
recruiting computer consultants to be placed with APT's
clients. Eventually, he was named Vice President and was
referred to as a principal in the company. As Vice
President, Mr. McConnell was not paid a guaranteed
salary; instead, he participated in a profit-sharing
arrangement through an executive compensation plan. He
received periodic payments throughout the year. Then, at

2002 U.S. Dist. LEXIS 27599, *2

the end of each year, Gregory Huddle, APT's owner and sole shareholder, would make final adjustments to McConnell's pay. These adjustments were based [*3] on the company's yearly profits and McConnell's contributions. At the end of each year, McConnell would either be paid a lump sum bonus or would have to repay the company a portion of the compensation he had already received. (McConnell Aff. P 6, Ex. 1 to Pl.'s Mem. Contra). Throughout his employment at APT, McConnell never received overtime pay, even though he often worked more than forty hours per week. (Id. at PP 3,9).

McConnell's employment relationship with APT gradually soured. At the end of 2000, Mr. Huddle concluded that APT had overpaid McConnell by more than $ 34,000 that year and instructed McConnell to reimburse the company. (Id. at P 8). From November of 2000 until his resignation in January of 2001, Mr. McConnell was paid a flat rate of $ 2,000 per month; his compensation was no longer tied to APT's profits. (Id. P 7).

**II. Procedural History**

On March 1, 2001, shortly after Gregg McConnell resigned from his position, APT filed suit against him in the Franklin County Court of Common Pleas (Case No. 01CVH-03-2103), seeking to recover $ 27,000 that it loaned to McConnell during the course of his employment, and seeking reimbursement for more than [*4] $ 34,000 in overpaid compensation for the year 2000. (Ex. B to Defs.' Mot. Summ. J.). McConnell filed three counterclaims against APT, alleging that he was constructively discharged in violation of public policy, that APT breached express or implied contracts with him, and that APT was liable under a theory of promissory estoppel. The counterclaims made no mention of violations of federal or state laws requiring overtime pay. (Ex. C to Defs.' Mot. Summ. J.). On June 28, 2001, the parties, each represented by counsel, entered into a settlement agreement and agreed to dismiss their claims against each other. (Ex. D to Defs.' Mot. Summ. J.). Mr. McConnell agreed to repay the $ 27,000 in outstanding loans and dismiss his counterclaims; in exchange, APT agreed not to pursue its claim for overcompensation. The relevant portions of the settlement agreement read as follows:

6(a).  **RELEASE OF CLAIMS. In**

consideration of the mutual agreement and covenants set forth herein, the sufficiency of which is hereby acknowledged, McConnell agrees to completely and irrevocably discharge and release the Company from any and all claims, demands, causes of action and/or liability whatsoever [*5] involving any matter arising out of or in any way related, directly or indirectly, to his employment with the Company, his compensation and/or the termination thereof, or with respect to any other transaction, event or occurrence pre-dating the date of the Settlement Agreement, whether known or unknown, including ... any other claim under present or future federal state or local statute or law, including but not limited to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201, *et seq* ...

\*\*\*

10(a).  **COVENANT NOT TO SUE.** McConnell agrees not to file any charges, claims, suits, complaints or grievances against the Company with any federal, state or local governmental agency, or in any court of law, with respect to any aspect of his employment or termination from the Company ... with the exception of any action or claim that the law precludes him from waiving by agreement, and any claim that the Company breached its commitments under this Agreement.

\*\*\*

19(a).    **BREACH    OF AGREEMENT.** In the event that McConnell ... breaches any of his promises made in this Agreement, and the Company defends or pursues any charge, suit, complaint, claim or [*6] grievance as a result thereof, McConnell shall be liable to the Company for all damages, attorneys' fees, expenses and costs (including discovery costs) incurred by it in defending or pursuing the same.

(Ex. D to Defs.' Mot. Summ. J.).

McConnell filed this suit on December 21, 2001, against APT and Gregory Huddle, alleging violations of federal and state overtime laws that require employers to pay overtime wages to all non-exempt employees in the amount of one and one-half times the regular rate of pay for all hours worked in excess of forty hours per week. Defendants then filed their answer and a counterclaim. The counterclaim alleged that McConnell's suit violated the terms of the June 28, 2001 settlement agreement, rendering him liable for all costs incurred by them in defending this lawsuit.

In response, McConnell filed a motion to dismiss the counterclaim for failure to state a claim upon which relief may be granted, and to strike the third, fourth, and fifth defenses from Defendants' answer. The third defense averred that Plaintiff's claims were barred by the doctrine of waiver and/or estoppel because he failed to assert them as compulsory counterclaims in the state [*7] litigation. The fourth defense averred that Plaintiff's claims were barred by the express terms of the June 28, 2001 settlement agreement. The fifth defense averred that because McConnell was the Vice President and financial supervisor with responsibility for reviewing and approving payroll, any injury he suffered was of his own making.

On March 18, 2002, this Court issued a Memorandum & Order granting Plaintiff's motion to dismiss the counterclaim. The Court held that, although the release of claims contained in the settlement agreement was broadly worded and specifically included a waiver of FLSA claims, the release of the overtime claims was contrary to public policy. The Court therefore concluded that the waiver was invalid, and the June 28, 2001 settlement agreement did not bar Plaintiff from pursuing his claims for overtime pay. For this reason, the Court agreed to strike the fourth defense from Defendant's answer.

As noted earlier, Plaintiff had also moved to strike the third defense from Defendants' answer. In the third defense, Defendants averred that Plaintiff's claims were barred by the doctrine of waiver and/or estoppel because he failed to assert them as compulsory counterclaims [*8] in the state litigation. The Court refused to strike this defense, noting:

> In their third defense, Defendants contend that Plaintiff's claims should have

been asserted as compulsory counterclaims in the state litigation and, because they were not, they are now barred by the doctrine of waiver and/or estoppel. In support of his motion to strike this defense, Plaintiff characterizes this defense as an additional claim that his FLSA suit is barred by the June 28, 2001 settlement agreement. Plaintiff notes that the settlement agreement called for the parties to dismiss the case. According to him, since a dismissal does not operate as a disposition on the merits, *res judicata* principles do not apply, and the compulsory counterclaim defense should be stricken from the record.

The Court fails to understand how dismissal of the state court action pursuant to the terms of the settlement agreement renders the compulsory counterclaim defense ineffective. As Defendants note, the settlement agreement can only be construed as a dismissal with prejudice; to construe it otherwise would strip the contract of all consideration. A dismissal with prejudice does subject the parties to the defense [*9] of *res judicata* or claim preclusion, and bars them from relitigating all claims "which were or might have been litigated in a first lawsuit." Grava v. Parkman Township, 73 Ohio St.3d 379, 382, 1995 Ohio 331, 653 N.E.2d 226 (Ohio 1995). If Mr. McConnell's overtime claims existed at the time he served his other counterclaims in the state court litigation -- as he must concede they did -- and if they arose out of the same transaction or occurrence that was the subject matter of APT's claims against him, APT may be able to successfully argue that the overtime claims are now barred. See Fed. R. Civ. P. 13(a). In the Court's view, Mr. McConnell has failed to show that this defense has "no possible relation to the controversy." The Court therefore refuses to strike the third defense from Defendants' answer.

(March 18, 2002 Memorandum & Order at 11-12).

On June 10, 2002, Defendants filed a motion for summary judgment, urging the Court to find that Plaintiff's overtime claims were compulsory counterclaims that should have been brought in the context of the state court litigation. According to Defendants, because Plaintiff failed to assert them there, [*10] they are now barred by *res judicata*. After Plaintiff failed to file a timely response, the Court ordered Plaintiff to show cause why Defendants' motion should not be granted. Plaintiff claimed that he had not responded because he was not properly served with a copy of the motion. He moved the Court for an order striking Defendants' motion for summary judgment or for an order giving him leave to file his memorandum in opposition *instanter*. The Court granted Plaintiff leave to file his response *instanter* and gave Defendants eleven days to file a reply brief. The motion for summary judgment is now ripe for decision.

## III. Discussion

### 1. Standard for Granting Summary Judgment

Federal Rule of Civil Procedure 56(c) provides:

> [Summary judgment] ... shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

"This standard provides that the mere existence of some alleged factual dispute between [*11] the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986) (emphasis in original); Kendall v. Hoover Co., 751 F.2d 171, 174 (6th Cir. 1984).

Summary judgment will not lie if the dispute about a material fact is genuine; "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. The purpose of the procedure is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried. Lashlee v. Sumner, 570 F.2d 107, 111 (6th Cir. 1978). Therefore, summary judgment will be granted

"only where the moving party is entitled to judgment as a matter of law, where it is quite clear what the truth is ... [and where] no genuine issue remains for trial, ... [for] the purpose of the rule is not to cut litigants off from their right of trial by jury if they really have issues to try." Poller v. Columbia Broadcasting Sys., 368 U.S. 464, 467, 7 L. Ed. 2d 458, 82 S. Ct. 486 (1962) [*12] (quoting Sartor v. Arkansas Natural Gas Corp., 321 U.S. 620, 627, 88 L. Ed. 967, 64 S. Ct. 724 (1944)); accord County of Oakland v. City of Berkley, 742 F.2d 289, 297 (6th Cir. 1984).

In making this inquiry, the standard to be applied by the Court mirrors the standard for what was formerly referred to as a directed verdict. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986).

> The primary difference between the two motions is procedural; summary judgment motions are usually made before trial and decided on documentary evidence, while directed verdict motions are made at trial and decided on the evidence that has been admitted." Bill Johnson's Restaurants, Inc. v. NLRB, 461 U.S. 731, 745, n. 11, 76 L. Ed. 2d 277, 103 S. Ct. 2161 (1983). In essence, though, the inquiry under each is the same: whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.

Anderson, 477 U.S. at 251-52. Accordingly, although summary judgment should be cautiously invoked, it is an integral part of the Federal Rules, which [*13] are designed "to secure the just, speedy and inexpensive determination of every action." Celotex, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

In a motion for summary judgment the moving party bears the "burden of showing the absence of a genuine issue as to any material fact, and for these purposes, the [evidence submitted] must be viewed in the light most favorable to the opposing party." Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 26 L. Ed. 2d 142, 90 S. Ct. 1598 (1970) (footnote omitted); accord Adams v. Union Carbide Corp., 737 F.2d 1453, 1455-56 (6th Cir.), cert. denied, 469 U.S. 1062, 83 L. Ed. 2d 432, 105 S. Ct. 545

(1984). Inferences to be drawn from the underlying facts contained in such materials must also be considered in the light most favorable to the party opposing the motion. United States v. Diebold, Inc., 369 U.S. 654, 655, 8 L. Ed. 2d 176, 82 S. Ct. 993 (1962); Watkins v. Northwestern Ohio Tractor Pullers Ass'n, 630 F.2d 1155, 1158 (6th Cir. 1980). Additionally, "unexplained gaps" in materials submitted by the moving party, if pertinent to material issues of fact, [*14] justify denial of a motion for summary judgment. Adickes, 398 U.S. at 157-60.

If the moving party meets its burden and adequate time for discovery has been provided, summary judgment is appropriate if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 322. The existence of a mere scintilla of evidence in support of the opposing party's position is insufficient; there must be evidence on which the jury could reasonably find for the opposing party. Anderson, 477 U.S. at 252.

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e) [*15] .

2. *Res Judicata* Effect of Compulsory Counterclaims

Defendants contend that Plaintiff's claims for overtime pay were compulsory counterclaims that he was required to assert, if at all, in the context of the state court litigation. They argue that because he failed to do so, Ohio Rule of Civil Procedure 13(A) now bars him from bringing those claims in federal court. [1] That rule states, "[a] pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the

opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction." Ohio R. Civ. P. 13(A). In other words, "all existing claims between opposing parties that arise out of the same transaction or occurrence must be litigated in a single lawsuit pursuant to Civ. R. 13(A), no matter which party initiates the action." Rettig Enterprises, Inc. v. Koehler, 68 Ohio St. 3d 274, 1994 Ohio 127, 626 N.E.2d 99, syl. P 1 (Ohio 1994).

> 1    Pursuant to the Full Faith and Credit statute, a federal court must give a state court judgment the same preclusive effect that the judgment would have in state court, and must apply the law of the state where that judgment was rendered to determine its preclusive effect in the federal action. See 28 U.S.C. § 1738; In re Fordu, 201 F.3d 693, 703 (6th Cir. 1999). Because the first action was filed in the Franklin County Court of Common Pleas, this Court must apply the preclusion principles of Ohio law.

[*16] As Rule 13(A) indicates, a counterclaim is compulsory if it: (1) exists at the time of serving the pleading; (2) arises out of the transaction or occurrence that is the subject matter of the opposing claim; and (3) does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction. See id. at 277, 626 N.E.2d at 102. The Court finds that Mr. McConnell's overtime claims satisfy each of these elements. The overtime claims were therefore, compulsory counterclaims which he was required to bring, if at all, in the context of the state court litigation.

As to the first element, it is undisputed that Plaintiff's overtime claims existed at the time he filed his answer and counterclaims in the state court action. The overtime claims arose during the course of his employment relationship with APT, and that relationship was severed before APT filed suit against him. As to the third element, the Court notes that Defendant Gregory Huddle was not a party to the state court action. Nevertheless, even assuming that Huddle's presence was necessary to adjudicate McConnell's overtime claims, McConnell does not contend that the Franklin County Court [*17] of Common Pleas could not acquire jurisdiction over Mr. Huddle. The Court therefore finds that the first and third elements are satisfied.

At issue is the second element -- whether the

overtime claims arose out of the same transaction or occurrence that was the subject matter of APT's claims in state court. Ohio courts have held that counterclaims are compulsory if they are "logically related" to the opposing party's claim, such that separate trials "would involve a substantial duplication of effort and time." Rettig, 68 Ohio St. 3d at 278, 626 N.E.2d at 103; see also Maddox v. Kentucky Finance Co., Inc., 736 F.2d 380, 382-83 (6th Cir. 1984). Counterclaims are deemed to be compulsory if they "involve many of the same factual issues, or the same factual and legal issues, or where they are offshoots of the same basic controversy between the parties." Rettig, 68 Ohio St. 3d at 279, 626 N.E.2d at 103 (quoting Great Lakes Rubber Corp. v. Herbert Cooper Co., 286 F.2d 631, 634 (3d Cir. 1961)).

Plaintiff contends that, applying the "logical relation" test, his overtime claims cannot be considered compulsory counterclaims. [*18] He claims that because the factual and legal issues surrounding his overtime claims differ from those claims asserted by APT in the state litigation, i.e., claims to recover money loaned to Mr. McConnell and to recover alleged overcompensation, the overtime claims must be considered permissive, rather than compulsory, counterclaims. In support, Plaintiff cites to a couple of cases in which courts have found that because newly asserted claims presented different legal, factual and evidentiary questions than the claims previously asserted, the new claims were permissive rather than compulsory, and were not barred by res judicata.

For example, in Cody Zeigler, Inc. v. Zeigler, No. 98-CA-00054, 1998 Ohio App. LEXIS 5767 (Licking Cty. Nov. 3, 1998), a husband's corporation had been joined in an earlier divorce action only so that certain assets could be preserved. When his corporation later filed a breach of contract action against his ex-wife's dance studio, the trial court held that the breach of contract action should have been raised in the context of the divorce proceeding, and that the corporation was therefore barred from pursuing it. The appellate court disagreed, [*19] holding that the breach of contract action arose out of different operative facts than the divorce action, and that the domestic relations court further lacked jurisdiction over the breach of contract claim.

Zeigler is distinguishable from the case at hand. The only reason the husband's corporation had been joined to the divorce action in that case was to preserve the assets so that they could be equitably distributed; the corporation's involvement in the divorce action was tangential at best. In Mr. McConnell's case, however, both he and APT were active litigants in the state court action. Furthermore, all of the claims they brought against each other arose out of their prior employment relationship. Finally, jurisdiction was not at issue; no one disputes that the Franklin County Court of Common Pleas had jurisdiction to consider Mr. McConnell's overtime claims.

Plaintiff also cites to Maddox v. Kentucky Finance Company, Inc., 736 F.2d 380 (6th Cir. 1984). In that case, the court found that a lender's counterclaim for the unpaid balance of an underlying debt presented different legal, factual and evidentiary questions than those at issue in the borrower's Truth-in-Lending Act [*20] ("TILA") claim. Id. at 383. Therefore, although both claims arose out of the same underlying transaction, they were not logically related. Id. For this reason, the court characterized the claim for unpaid debt as a permissive counterclaim rather than a compulsory counterclaim and found that it was not barred by res judicata. In this Court's view, Maddox is also factually distinguishable. In that case, whether the disclosures required by TILA were adequate had nothing to do with whether the debtor still owed money on the outstanding loan.

However, in the instant case, Mr. McConnell's overtime claims are logically related to the claims APT asserted against him in state court. APT filed suit seeking to recover certain money it had loaned to McConnell, and to recover other compensation that it had allegedly "overpaid" him. The Court finds that McConnell's claims for overtime pay are offshoots of the same basic controversy concerning his appropriate rate of compensation. Like APT's claims against him, McConnell's overtime claims arise out of his employment relationship with APT. Like APT's claim to recover for alleged overcompensation, McConnell's overtime [*21] claims specifically involve the question of how much money APT should have paid him for his services. APT claimed that it had overpaid McConnell by more than $ 34,000 during 2000. However, if McConnell was, in fact, entitled to overtime pay, any such award would have been credited against the alleged overcompensation.

More importantly, many of the same factual determinations would be relevant to both claims. In order

to determine whether Plaintiff was exempt from the overtime requirements because he was an executive at APT, the Court would have to look at factors such as the nature of his job duties, his discretionary power, his salary, the manner in which he was paid, and the terms of his executive compensation agreement. See 29 U.S.C. § 213(a)(1); 29 C.F.R. § 541.1. It appears that many of these same inquiries would be relevant to the question of whether, pursuant to the terms of that executive compensation agreement, McConnell was overpaid by more than $ 34,000.

Plaintiff notes that the state court action focused on the compensation McConnell was paid for the first ten months of 2000, while his overtime claims span a period of [*22] three years. While this may be true, it is not significant. Absent any evidence that McConnell's job duties changed significantly over the course of that three-year period, the Court sees no reason why a determination that McConnell was entitled to overtime pay for the first ten months of 2000 would not also apply to the remainder of that three-year period.

For the reasons discussed above, the Court concludes that Plaintiff's overtime claims were compulsory counterclaims that he should have asserted in the state litigation. They existed at the time he filed his answer and the other counterclaims, were logically related to the subject matter of APT's claims against him, and did not require the presence of any third parties over which the state court lacked jurisdiction. Furthermore, the overtime claims were offshoots of the same basic controversy -- how much money Mr. McConnell should be paid for his services. To try them separately would subject the parties and the Court to substantial duplication of time and effort. Because the overtime claims were compulsory counterclaims and Plaintiff failed to raise them in the context of the state litigation, those claims are now barred and Defendants [*23] are entitled to summary judgment.

In response to Defendants' motion for summary judgment, Plaintiff asserts several other arguments, none of which is sufficient to defeat summary judgment. Mr. McConnell argues that the doctrine of res judicata does not bar his overtime claims because: (1) there was no final, valid decision on the merits in the state court; (2) he expressly reserved his right to bring additional claims against APT; and (3) Mr. Huddle is not in privity with APT.

First, Plaintiff contends that because there was no

prior final, valid decision on the merits in the state court action, res judicata cannot operate to bar his overtime claims. Plaintiff's argument is based on the fact that a party seeking to invoke the common law doctrine of res judicata must prove four elements:

> (1) a prior final, valid decision on the merits by a court of competent jurisdiction;

> (2) a second action involving the same parties or their privies, as the first;

> (3) a second action raising claims that were or could have been litigated in the first action; and

> (4) a second action arising out of the transaction or occurrence that was the subject matter of the previous action. [*24]

In re Fordu, 201 F.3d 693, 703-04 (6th Cir. 1999)(construing Ohio law). [2]

> [2] The term "res judicata" has often been broadly used to refer to two related preclusion concepts-claim preclusion and issue preclusion. See Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 77 n.1, 79 L. Ed. 2d 56, 104 S. Ct. 892 (1984). Issue preclusion, otherwise known as collateral estoppel, operates to bar relitigation of factual or legal issues that were actually litigated and decided in a prior action. See Fort Frye Teachers Ass'n v. State Empl. Rels. Bd., 81 Ohio St. 3d 392, 395, 1998 Ohio 435, 692 N.E.2d 140, 144 (Ohio 1998). The doctrine of claim preclusion, confusingly often also called res judicata, is much broader. It prevents parties or their privies from relitigating claims that were actually litigated, or might have been litigated, in a previous action. See Grava v. Parkman Twp., 73 Ohio St. 3d 379, 382, 1995 Ohio 331, 653 N.E.2d 226, 229 (Ohio 1995). It is this broader concept of claim preclusion that is implicated by the compulsory counterclaim rule.

[*25] In Ohio, dismissal of an action with prejudice operates as an adjudication on the merits, making it "vulnerable to the defense of res judicata." Tower City

Properties v. Cuyahoga Cty. Bd. of Revision, 49 Ohio St.3d 67, 69, 551 N.E.2d 122, 123-24 (Ohio 1990). In contrast, if an action is dismissed *without* prejudice, there is no disposition of the case on the merits. Plaintiff notes that although APT dismissed its claims against him with prejudice, he dismissed his counterclaims against APT without prejudice. (Exs. 9 & 10 to Pl.'s Mem. in Opp'n). Plaintiff contends that because he dismissed his counterclaims without prejudice, there has been no adjudication on the merits sufficient to support the *res judicata* defense.

The Court disagrees. In Francis v. Diewald, 1996 Ohio App. LEXIS 1908, No. 95CA006264, 1996 WL 255885 (Ohio Ct. App. May 15, 1996), the court rejected plaintiffs' argument that, because there had been no final judgment on the merits in an earlier case, the compulsory counterclaim rule did not apply. Ms. Diewald had sued Mr. Francis. Mr. Francis did not assert any counterclaims in that original suit, but did file a separate suit against Ms. Diewald [*26] and two other parties. The court dismissed his claims against Ms. Diewald because they were compulsory counterclaims that should have been asserted in the original action. The parties then reached a settlement pursuant to which Ms. Diewald dismissed her claims against Mr. Francis with prejudice, and Francis voluntarily dismissed his complaint in the second action, presumably without prejudice.

Francis later filed another suit, reasserting his claims against Diewald and the two other parties. The trial court granted Ms. Diewald's motion for summary judgment on the basis of *res judicata*. On appeal, Mr. Francis conceded that the claims had been compulsory counterclaims in the original action, but nevertheless argued that they were not barred by *res judicata* because there had been no final judgment on the merits in that case. The parties had reached a settlement and Diewald had dismissed her claims against him with prejudice. The court rejected Francis's argument and found that because a dismissal with prejudice operates as an adjudication on the merits, Francis's claims, which were compulsory counterclaims in the original action, were barred as *res judicata*. 1996 Ohio App. LEXIS 1908, [WL] at *2. [*27]

The same reasoning applies here. After APT and Mr. McConnell reached a settlement in the state court litigation, APT dismissed its claims against Mr. McConnell with prejudice. As the court held in Francis,

compulsory counterclaims not asserted in the original action are forever barred once the original action is dismissed with prejudice. Once APT dismissed its claims with prejudice, it had a right to rely on the operation of Ohio R. Civ. P. 13(A) to bar Mr. McConnell from bringing subsequent claims that qualified as compulsory counterclaims in the original action, including the overtime claims he is attempting to assert now. For this reason, APT's dismissal with prejudice of its claims against Mr. McConnell bars him from litigating his overtime claims in this forum, regardless of whether he dismissed his other counterclaims without prejudice. [3]

> [3] Plaintiff is correct that there was no final, valid decision on the merits of the three counterclaims he asserted in state court - claims for constructive discharge, breach of contract, and promissory estoppel. It is unclear what he was attempting to accomplish by dismissing those counterclaims without prejudice. To the extent he was attempting to reserve his right to re-file those specific counterclaims at a later date, the Court questions whether his attempt was effective. See Stern v. Whitlatch & Co., 91 Ohio App. 3d 32, 36, 631 N.E.2d 680, 682 (Ohio Ct. App. 1993)(holding that compulsory counterclaims voluntarily dismissed without prejudice in first suit could not be re-filed in a second suit because this would circumvent the purpose of the compulsory counterclaim rule -- to promote the resolution of all related claims), cert. denied, 68 Ohio St. 3d 1447, 626 N.E.2d 688 (1994). In any event, even assuming that Plaintiff reserved a right to refile the specific counterclaims he previously asserted and dismissed without prejudice, those claims are not the subjects of the present lawsuit. The only claims Plaintiff is now asserting are claims for overtime compensation; although they were compulsory counterclaims in the earlier action, Plaintiff failed to assert them in that context.

[*28] The operation of Rule 13(A) does not depend on previously asserted counterclaims being fully adjudicated on their merits; it simply requires that all claims existing at the time the pleading is filed, and arising out of the same transaction or occurrence, be included in the first action or be forever barred. In other words, while application of Rule 13(A) has a *res judicata* effect, a party need not necessarily satisfy the four

traditional elements of the common law doctrine of *res judicata* before the compulsory counterclaim rule can be applied to bar litigation of a subsequently asserted claim. 4 See Polymer Indus. Prods. Co. v. Bridgestone/ Firestone, Inc., 211 F.R.D. 312, - F. Supp. 2d --, 2002 WL 31681334 at *7 (N.D. 2002)("The doctrine of *res judicata* is a species different than Rule 13(a), though it also has a claim preclusive effect.").

4    Compulsory counterclaims that are not asserted in the original suit are deemed to be waived and will be barred as *res judicata*. See Osborn Co. v. Ohio Dep't of Admin. Serv., 80 Ohio App. 3d 205, 210, 608 N.E.2d 1149, 1152 (Ohio Ct. App. 1992); City of Westlake v. Rice, 100 Ohio App. 3d 438, 441-42, 654 N.E.2d 181, 183 (Ohio Ct. App. 1995)("[a] compulsory counterclaim characteristically must be asserted in the pending case, for failure to do so will result in its being barred in any subsequent action as *res judicata.*"); Quintus v. McClure, 41 Ohio App. 3d 402, 403-04, 536 N.E.2d 22, 24 (Ohio Ct. App. 1987)("Failure to assert a compulsory counterclaim acts as a bar to litigation of the counterclaim in a subsequent lawsuit. Thus, failure to assert a compulsory counterclaim constitutes *res judicata.*").

[*29] As the Sixth Circuit has noted, the effect of the compulsory counterclaim rule is sometimes described in terms of *res judicata* and other times in terms of waiver or estoppel. See Carnation Co. v. T.U. Parks Constr. Co., 816 F.2d 1099, 1103 (6th Cir. 1987); Kane v. Magna Mixer Co., 71 F.3d 555, 562-63 (6th Cir. 1995). In Dindo v. Whitney, 451 F.2d 1 (1st Cir. 1971), the court held that in cases where the original suit is settled rather than tried, the waiver or estoppel theory is more appropriate. Id. at 3. In that case, the plaintiff argued that the compulsory counterclaim rule did not apply because the first suit had been settled rather than pursued to a final judgment on the merits. The court rejected that argument, finding it immaterial that there was no final judgment on the merits in the original action; the compulsory counterclaim rule still applied to bar the plaintiff's claims. Id. Likewise, in the instant case, even if there were no prior, valid decision on the merits in the state court litigation, this would not prevent application of the compulsory counterclaim rule to bar Mr. McConnell's overtime [*30] claims.

Plaintiff next notes that in the settlement agreement, the parties expressly reserved the right to bring certain actions against each other in the future. He argues that, because the parties specifically contemplated future litigation between them, application of *res judicata* to his overtime claims would result in manifest injustice. 5 Plaintiff contends that, if the terms of settlement agreement are to be given effect, the Court cannot find that his overtime claims are barred. The Court disagrees. Initially, the Court notes that, in the settlement agreement, Mr. McConnell expressly waived his right to bring future overtime claims under the Fair Labor Standards Act ("FLSA"). While this Court subsequently found that waiver to be invalid, the express waiver certainly weakens McConnell's claim of "manifest injustice." More importantly, even though the parties may have reserved the right to *bring* certain claims against each other in the future, this does not mean that either party waived the right to assert appropriate affirmative *defenses* to those claims. Therefore, the reservation of the right to sue does not necessarily prevent Defendants from raising the defense [*31] of *res judicata* in response to Plaintiff's overtime claims.

5    Plaintiff also argues that application of *res judicata* to his overtime claims would defeat the remedial purpose of the Fair Labor Standards Act ("FLSA") and result in manifest injustice. However, Plaintiff has offered no authority to support his contention that FLSA claims are not subject to dismissal on the grounds of *res judicata*. Courts that have addressed this issue have held otherwise. See Molina v. Sea-Land Servs., 2 F. Supp. 2d 180, 185 (D.P.R. 1997)(holding that FLSA claims were barred by the doctrine of *res judicata*); Chrzanowski v. Lichtman, 884 F. Supp. 751, 757 (W.D.N.Y. 1995)(same).

Finally, Plaintiff argues that application of *res judicata* is inappropriate because, while Mr. McConnell and APT were parties to the state court action, Gregory Huddle was not. Plaintiff notes that he owed money only to APT, not to Mr. Huddle. Plaintiff also contends that, "because Huddle had no individual [*32] claims against McConnell in the common pleas court case, he was not in privity with APT when that case was settled." (Pl.'s Mem. in Opp'n at 18). 6

6    Plaintiff notes that, in this case, he has sued

Huddle not because he is a principal of APT or in privity with the company, but as an individual who meets the definition of "employer" for purposes of the FLSA. Plaintiff concludes that "whether or not Huddle was 'in privity' with APT for purposes of the common pleas court case, he is clearly a former 'employer' of Plaintiff pursuant to the FLSA and, therefore, he can be held personally liable for McConnell's unpaid overtime." (Mem. in Opp'n at 19). While this may be true, Plaintiff's reasons for filing suit against Mr. Huddle in this case are completely irrelevant to the question of whether Huddle was in privity with APT in the state court action.

Privity exists when the relationship between two parties is such that they have a mutuality of interest and desire the same outcome. See Brown v. Dayton, 89 Ohio St. 3d 245, 247-48, 2000 Ohio 148, 730 N.E.2d 958, 962, [*33] reconsideration denied, 89 Ohio St. 3d 1491, 734 N.E.2d 377 (Ohio 2000). If the parties are so closely associated that they represent the same legal right, privity exists, and an individual who was not a party to the first action will be bound to the final judgment as if he had been a party.

In this case, Mr. Huddle is the sole owner and sole shareholder of APT. In his complaint, Plaintiff himself alleged that APT "is nothing more than a corporate shell and alter ego" of Mr. Huddle, and that APT's corporate funds and assets are commingled with those of Huddle. (Compl. P 5). As its sole shareholder, Gregory Huddle

shared mutual interests in the state court action and desired the same outcome. Huddle wanted McConnell to repay the money that he had borrowed from APT, and wanted to recoup the overpaid compensation. Under these circumstances, the Court finds, as a matter of law, that Mr. Huddle is in privity with APT. See Grant Fritzsche Enterprises, Inc. v. Fritzsche, 107 Ohio App. 3d 23, 25, 667 N.E.2d 1004, 1006 (Ohio Ct. App. 1995)(finding privity existed between corporation and its sole shareholder for purposes of collateral estoppel).

## IV.  [*34]  Conclusion

For the reasons stated above, the Court concludes, as a matter of law, that Plaintiff's claims for overtime pay, brought pursuant to the Fair Labor Standards Act and Ohio Revised Code § 4111.03, were compulsory counterclaims; because he failed to assert them in the context of the earlier state court litigation, he is now barred from asserting them in this forum. For this reason, Defendants' motion for summary judgment is **GRANTED.** (Record at 14). The Clerk is directed to enter judgment in favor of Defendants. Defendants' motion to stay discovery (Record at 31) is **MOOT.**

**IT IS SO ORDERED.**

Date: 12/11/02

**John D. Holschuh, Judge**

**United States District Court**

## Document Retrieval Result                                      Westlaw.

---

Italian Colors Restaurant v. American Express Co.
Not Reported in F.Supp.2d, 2003 WL 22682482
N.D.Cal.,2003.
Nov 10, 2003

**C**  Not Reported in F.Supp.2d, 2003 WL 22682482 (N.D.Cal.)

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
N.D. California.
ITALIAN COLORS RESTAURANT, on behalf of itself and all similarly situated
persons, Plaintiffs,
v.
AMERICAN EXPRESS COMPANY and American Express Travel Related Services Company,
Inc., Defendants.
No. C 03-3719 SI.
Nov. 10, 2003.

Merchants and small business owners brought action on behalf of nationwide class against credit and charge card issuer alleging violations of Clayton Act and Sherman Act. On issuer's motion to transfer venue, the District Court, Illston, J., held that transfer of action from Northern District of California to Southern District of New York was warranted.

Motion granted.

West Headnotes

[1] KeyCite this headnote

170B Federal Courts
    170BII Venue
        170BII(B) Change of Venue
            170BII(B)1 In General; Venue Laid in Proper Forum
                170Bk106 Determination in Particular Transferable Actions
                    170Bk106.5 k. In General. Most Cited Cases
                    (Formerly 170Bk106)

Transfer of potential nationwide class action from Northern District of California to Southern District of New York was warranted, since plaintiffs' choice of forum was disregarded due to forum shopping, plaintiffs' contacts with forum were of minimal value in context of nationwide class action, neither party had substantial contacts with present forum, litigation costs weighed heavily in favor of transfer to Southern District of New York with regard to both documentary and testamentary evidence, contract at issue had New York choice of law clause, although it did not have forum selection clause, and transfer would not offend California public policy. 28 U.S.C.A. § 1404(a).

[2] KeyCite this headnote

170A Federal Civil Procedure

170AI In General
170AI(A) In General
170Ak8 Consolidation of Actions
170Ak8.1 k. In General. Most Cited Cases

Consolidation is a device constricted in scope to multiple cases pending in the same district. Fed.Rules Civ.Proc.Rule 42(a), 28 U.S.C.A.

Blaine H. Bortnick, Liddle & Robinson, L.L.P., Gary B. Friedman, Friedman & Shube, New York, NY, Christopher William Hellmich, Esq., Read K. McCaffrey, Patton Boggs, LLP, Washington, DC, David S. Markun, Edward Zusman, Kevin K. Eng, Markun, Zusman & Compton LLP, San Francisco, CA, for Plaintiffs.

Bruce Schneider, Heidi Balk, Esq., Stroock & Stroock & Lavan LLP, New York, NY, D. Wayne Jeffries, Stephen J. Newman, Strook & Strook & Lavan LLP, Los Angels, CA, for Defendants.

### ORDER GRANTING DEFENDANTS' MOTION TO TRANSFER VENUE TO THE SOUTHERN DISTRICT OF NEW YORK AND DENYING PLAINTIFFS' MOTION TO CONSOLIDATE AND APPOINT LEAD COUNSEL

ILLSTON, J.

*1 On November 7, 2003, this Court heard oral argument on defendants' motion to transfer venue and plaintiffs' motion to consolidate and appoint lead counsel. Having considered the arguments of counsel and the papers submitted, the Court hereby TRANSFERS venue to the Southern District of New York, and DENIES plaintiffs' motion as premature.

### BACKGROUND

This action was filed in this Court on August 8, 2003. Months earlier, however, in June, 2003, a virtually identical action, based on a nearly verbatim complaint, was filed in the Eastern District of New York, on behalf of New York-based merchants and small business owners representing a proposed nationwide class ("*Phuong* Complaint"). Mot. to Transfer, Ex. A. The *Phuong* complaint was voluntarily dismissed at plaintiffs' behest on July 16, 2003, after defendants filed notice of their intent to file a motion to dismiss. Decl. of Schneider at 2. One day before the dismissal notice in the *Phuong* action, plaintiffs' counsel filed the same complaint in the Central District of California using a different local business as the named plaintiff ("*Il Forno* Complaint"). *Id.* The *Il Forno* complaint was filed but never served on defendants. *Id.* Roughly three weeks later, the instant complaint was filed in the Northern District of California. All three actions, including the complaint currently before this Court, allege violations by defendants American Express Co. and American Express Travel Related Services (hereinafter collectively referred to as "American Express," unless required by context) of Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15, 26, and Section 1 of the Sherman Act, 15 U.S.C. § 1. Compl. ¶ 4. Plaintiffs allege that certain provisions of the standard contract executed by all merchants who agree to accept American Express cards constitute anticompetitive tying arrangements. *Id.* at ¶ 45. The standard contract requires merchants who accept the American Express charge card to accept the American Express credit card. *Id.* Unlike a credit card, a charge card is not a means of financing, but a "method of payment." *Id.* at ¶ 18. Charge card users must pay their balance in full each month, as opposed to credit card users, who use their cards to access revolving credit based on a predetermined interest rate. *Id.* at ¶¶ 18, 28. Merchants are willing to pay higher fees to access the American Express charge card member base, based on perceptions that charge card users are more affluent. *Id.* at ¶ 23. These perceptions are supported by data indicating that the average purchase on an American Express charge card is 17% higher than the average credit card purchase. *Id.* at ¶ 24.

For every purchase made on a credit or charge card, merchants pay a "discount rate" to the credit or charge card company. The discount rate for competitor credit cards such as Visa and MasterCard is usually between 0.85 and 1.8%. *Id.* at ¶¶ 22, 43. According to plaintiffs, American Express unlawfully leverages its charge card member base to force merchants to accept its credit card at a "grossly supracompetitive" discount rate of 3.0%. *Id.* at ¶¶ 2, 21. Similar tying arrangements formerly employed by Visa and MasterCard were discontinued as part of a settlement agreement in a similar antitrust action. *Id.* at ¶ 43, *citing In re Visa Check/Mastermoney Antitrust Litigation*, 2003 WL 1712568 (E.D.N.Y. Apr.1, 2003). Plaintiffs allege that the American Express tying arrangement is an unlawful restraint of trade under federal antitrust laws. Compl. ¶ 3. Now before the Court are defendants' motion to transfer venue to the Southern District of New York, and plaintiffs' motion to consolidate cases and appoint lead counsel.

LEGAL STANDARD

**\*2** "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil matter to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The purpose of § 1404(a) is to " 'prevent the waste of time, energy, and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense." ' *Van Dusen v. Barrack*, 376 U.S. 612, 616, 84 S.Ct. 805, 809, 11 L.Ed.2d 945 (1964), *citing Continental Grain Co. v. The FBL-585,* 364 U.S. 19, 26-27, 80 S.Ct. 1470, 1474-75, 4 L.Ed.2d 1540 (1960). A motion for transfer lies within the broad discretion of the district court, and must be determined on an individualized basis. *See Jones v. GNC Franchising, Inc.,* 211 F.3d 495, 498 (9th Cir.2000), *citing Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 29, 108 S.Ct. 2239, 2244, 101 L.Ed.2d 22 (1988).

To support a motion for transfer, the moving party must establish: (1) that venue is proper in the transferor district; (2) that the transferee district is one where the action might have been brought; and (3) that the transfer will serve the convenience of the parties and witnesses and will promote the interests of justice. *See Goodyear Tire & Rubber Co. v. McDonnell Douglas Corp.,* 820 F.Supp. 503, 506 (C.D.Cal.1992). In determining the convenience of the parties and witnesses and the interests of justice, the Ninth Circuit considers "multiple factors" including:

(1) location where the relevant agreements were negotiated and executed; (2) the state that is most familiar with the governing law; (3) the plaintiff's choice of forum; (4) the respective parties' contacts with the forum; (5) the contacts relating to the plaintiff's cause of action in the chosen forum; (6) the differences in the costs of litigation in the two forums; (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses; and (8) the ease of access to sources of proof.

*Jones,* 211 F.3d at 498-99. The existence of a forum selection clause, along with the forum state's relevant public policy, may also comprise "significant factor[s] in the court's § 1404(a) analysis." *Id.*

DISCUSSION

I. Defendants' motion to transfer venue

[1] On a motion to transfer, the moving party must first demonstrate that venue is proper in both the transferor and transferee courts, as required by the first two components of the *Goodyear* test. Thereafter, the Court uses the multi-factor determination set forth in *Jones* to establish the third element of *Goodyear:* convenience to the parties and witnesses, and the interests of justice. In this case, venue is proper in both the transferor and transferee courts under 15 U.S.C. § 22, which provides for the filing of an antitrust suit against a corporation in any district where it conducts business. Accordingly, the dispute centers on which party is favored by application of the ten *Jones* factors. As explained *infra,* this balance weighs heavily in favor of transferring the action to the Southern District of New York.

A. Location where the relevant agreements were negotiated and executed

**\*3** The parties do not dispute that the individual named plaintiff in this action executed the agreement from its place of business in California. Plaintiffs argue that more of the relevant tying agreements were executed by merchants in California than in any other state. Opp'n. at 5. Plaintiffs support this statement with state-by-state analyses of credit card receivables and overall retail sales. Decl. of Zusman, Ex. A, B. Neither of these statistics, however, is broken down by creditor, making it impossible to tell how much of the share belongs to American Express. Moreover, as the most populous state in the country, California has a disproportionate share of many economic activities. By this logic, as defendants illustrate, "virtually every significant class action case would need to be litigated in California," a logic that has been repeatedly rejected. *See, e.g., Ho v. Ikon Office Solutions, Inc.,* 143 F.Supp.2d 1163, 1167-68 (N.D.Cal.2001).

Many merchants throughout every state in the nation negotiated and executed identical agreements. If the named plaintiff purports to act on behalf of a nationwide class of merchants, there is nothing unique or probative about the location of its place of business. Furthermore, while the agreements with respect to defendant TRS may have been mailed from its offices in Phoenix, Arizona, the New York office, as the principal place of business, is likely to have drafted the original agreement and developed the business policy behind it. Neither party alleges that every agreement was negotiated in person. The very nature of this type of agreement, which is transmitted through the mail and executed by merchants at thousands of individual businesses throughout the country, deprives this factor of any weight in the analysis of proper venue.

B. Forum state most familiar with the governing law

Plaintiffs correctly state that where federal law governs all claims raised, "either forum is equally capable of hearing and deciding those questions." *DealTime.com Ltd. v. McNulty,* 123 F.Supp.2d. 750, 757 (S.D.N.Y.2000). Although the merchant agreements at issue contain a New York choice of law clause, such a

provision alone does not demonstrate that federal courts sitting in New York have a more well-developed body of antitrust law than those in California. Accordingly, this factor, like the last, weighs in favor of neither party.

C. Plaintiffs' choice of forum

Generally, courts afford considerable weight to a plaintiff's choice of forum in determining a motion to transfer, subject to various conditions. *See Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 257, 102 S.Ct. 252, 266, 70 L.Ed.2d 419 (1981). The plaintiff's choice is given less deference where, as here, the action is brought on behalf of a nationwide class. *See Lou v. Belzberg,* 834 F.2d 730, 739 (9th Cir.1987); *Koster v. (American) Lumbermens Mut. Cas. Co.,* 330 U.S. 518, 524, 67 S.Ct. 828, 832, 91 L.Ed. 1067 (1947) ( "where there are hundreds of potential plaintiffs ... the claim of any one plaintiff that a forum is appropriate merely because it is his home is considerably weakened.").

*\*4* The complaint admits that all potential class members "have been damaged in precisely the same fashion, by precisely the same conduct." Compl. ¶ 16. Interchangeable plaintiffs could be and have been found in several districts, including the Eastern District of New York, where the first cause of action was filed. Decl. of Schneider, Ex. A. Notably, in that case, the same counsel representing plaintiffs in the present action asserted that venue was proper in the Eastern District of New York because the defendants "may be found or transac[t] business" there, and "have marketed their charge card services ... to thousands of merchants within [the Eastern District]." Mot. to Transfer, Ex. A, *Phuong* Compl. ¶ 5. Here, the only contact between the proposed plaintiff class and this district is the individual named plaintiff's place of business. This contact is no more forceful than the link between the thousands of potential class members and their respective districts, a roster which surely includes every district court in the nation.

Furthermore, the Ninth Circuit has established that courts should disregard a plaintiff's forum choice where the suit is a result of forum-shopping. *See Alltrade. Inc., v. Uniweld Products, Inc.,* 946 F.2d 622, 628 (9th Cir.1991). One could rationally infer forum shopping here, based on plaintiffs' repeat filing and plaintiffs' admitted perceptions that California provides a more favorable rule of decision, as discussed below. Plaintiffs voluntarily dismissed the *Phuong* action one day before filing the first California case. Decl. of Schneider at 2. The first California case, in the Central District, was filed but never served on defendants. *Id.* Throughout this "odyssey," as defendants put it, the roster of plaintiffs' counsel has remained substantially the same. [FN1]

> FN1. One member of plaintiffs' local counsel was employed at a different firm in New York when the New York case was filed. *Id.* at Ex. A.

At oral argument, plaintiffs stated that they brought suit in California so as to avail themselves of the Ninth Circuit's disfavor of arbitration clauses within adhesion contracts. According to plaintiffs, the relocation became necessary after it came to their attention during the *Phuong* action that not all potential class members had signed identical merchant agreements. Merchants who signed on after a certain year were bound by a compulsory arbitration clause, while others were not bound. Plaintiffs stated that in order to serve their entire proposed class equitably, they sought a venue where the two groups of merchants would be treated identically as a matter of law, assuming a negation of the arbitration clause.

Pursuit of a venue where a class can be maintained without bifurcation is not a disfavored strategy per se, but this does not explain plaintiffs' forum shopping within California. Plaintiffs secured the perceived tactical gain they purportedly seek when they first filed suit in the Central District. If plaintiffs' sole objective in repeat filing was to accrue perceived benefits for their class as a whole, this does not explain why they filed complaints in both the Central and Northern Districts. The Court's forum shopping concerns persist. Accordingly, plaintiffs' choice of forum is disregarded.

D. Respective parties' contacts with the forum

*\*5* Plaintiffs' contacts with the forum, as previously discussed, are of minimal value in a class action, especially in view of plaintiffs' forum shopping. In addition to their demographic analyses of credit card receivables as described in subsection (A) *supra,* which this Court rejects, plaintiffs also urge the Court to consider other lawsuits as contacts between the defendants and this forum. Opp'n. to Mot. to Transfer at 7. According to plaintiffs, one or more of the defendants is a party in 225 civil cases and more than 25,000 bankruptcy proceedings currently pending in California courts. Decl. of Zusman at 2. However, plaintiffs offer no source of law which instructs the Court to count unrelated lawsuits as contacts for the purposes of determining venue. Neither party has substantial contacts with the present forum.

**E. Contacts relating to the plaintiff's cause of action in the chosen forum**

Here, again, plaintiffs argue that this district is the most appropriate forum because Californians have more small businesses and hence have executed more American Express merchant contracts than any other state. Opp'n. to Mot. to Transfer at 7. Plaintiffs offer no evidence to show that per capita, California is significantly more affected by the contracts than other states, including New York. As in subsection (A), this argument finds no place here.

**F. Difference in the cost of litigation**

Litigation costs weigh heavily in favor of transfer to the Southern District of New York, with regard to both documentary and testamentary evidence. Documents pertaining to defendants' business practices are most likely to be found at their principal place of business. Although developments in electronic conveyance have reduced the cost of document transfer somewhat, the cost of litigation will be substantially lessened if the action is venued in the same district where most of the documentary evidence is found. A reduction in document sharing and litigation costs serves both parties as well as the public interest. Plaintiff Italian Colors, on the other hand, can be expected to contribute comparatively little documentary evidence to the action. As explained above, its interests are entirely fungible with those of a potential class member in the Southern District of New York.

Generally, litigation costs are reduced when venue is located near most of the witnesses expected to testify or give depositions. Beyond merely having a principal place of business in New York, defendants specifically name at least two individual American Express officers based in New York whose expertise and expected testimony is directly relevant to the claims. Mot. to Transfer at 9, *citing Maxon v. Jefferson Pilot Securities Corp.,* 2002 WL 523575, *4 (N.D.Cal. Apr 2, 2002) (relevant expertise of potential witnesses dispositive when transferring venue based on relative location of witnesses). Since the claims arise solely out of defendants' business practices, the parties would expect that most of the witnesses will be the defendants' employees. Accordingly, this factor weighs heavily in favor of transfer.

**G. Availability of non-party witnesses**

***6** Plaintiffs predict that the most "important" non-party witnesses are likely to be employees and officers of Visa U.S.A., which plaintiffs characterize as defendants' largest competitor. Opp'n to Mot. to Transfer at 1. Visa maintains offices within this district in San Francisco and Foster City. *Id.* As defendants point out, this approach comprises "an entirely different logic to [plaintiffs'] original choice of venue [New York]," which was premised on defendants' place of business. Reply in Supp. of Mot. to Transfer at 4. Further, plaintiffs appear to understate the value of non-party witnesses from MasterCard, another credit card competitor with its principal place of business in the Southern District of New York. *Id.* at 4; Supp. Schneider Decl. at Ex. 1. Plaintiffs do not attempt to explain how non-party witnesses from Visa would provide more probative information about the relevant market share and competitive business practices than those from MasterCard or any other non-party. This factor does not weigh in plaintiffs' favor.

**H. Ease of access to sources of proof**

This factor derives from the same operative facts as subsection (F) *supra,* and weighs heavily in favor of venue transfer.

**I. Forum selection clause**

As stated in *Jones,* the presence of a forum selection clause functions as a ninth factor weighing in favor of venue transfer. *See* 211 F.3d at 499. In the instant case, the individual plaintiff signed a merchant agreement in 1993 that had a New York choice of law clause, but did not have a forum selection clause. Decl. of Alterman at 1, Ex. E. The most recent merchant agreement, dated May 2003, does contain a New York forum selection clause. *Id.,* Ex. F. It is unclear what year the forum selection clause first appeared on the merchant agreement. Plaintiffs argue that if the clause first appeared in 2003, the percentage of the potential class bound to it is a relatively small fraction, as most potential class members will have signed an earlier agreement. Even in the light most favorable to the plaintiff, assuming that the clause made its debut in 2003, and thereby applies to only a part of the proposed plaintiff class, this factor still leans in favor of venue transfer, since the clause never mentioned California or any other state.

**J. Public policy**

Lastly, plaintiffs urge the Court to consider the forum state's public policy interest in declining to enforce the merchant agreement's collective action waiver and compelled arbitration provisions. Opp'n. to Mot. to Transfer at 2-3. Plaintiffs rely on *Jones,* wherein the Ninth Circuit held that the forum selection clause of a franchise agreement, which would otherwise be honored under federal law, was precluded by California's strong public policy interest against such provisions. *See* 211 F.3d at 499. *Jones,* however, is distinguishable from the instant

action because the public policy at issue there concerned venue itself, rather than the merits of the claim. *Id.*
*7 Plaintiffs cite *Ting v. AT & T,* 319 F.3d 1126 (9th Cir.2003) and *Circuit City Stores. Inc. v. Mantor,* 335 F.3d 1101 (9th Cir.2003) as a source of California's public policy against anti-class action and compelled arbitration clauses. However, this is but one possible interpretation of public policy. As defendants point out, an equally plausible interpretation is that arbitration clauses do not offend the public policy of either New York, California, or federal common law--each of which has its own "well-developed bod[y] of law regarding arbitration." *Id.* More importantly, the question of arbitration is not presently before the court; its invocation as a source of public policy is premature on a motion to transfer. In short, plaintiffs fail to illustrate how transfer will offend the public policy of this Court's forum state.

Plaintiffs' argument concerning California public policy is further weakened by the fact that plaintiffs filed, but did not serve and apparently did not intend to pursue, a claim in the Central District. In sum, all factors not neutral in disposition weigh in favor of venue transfer. Accordingly, defendants' motion to transfer venue is GRANTED and venue is hereby TRANSFERRED to the Southern District of New York.

II. Consolidation and appointment of lead counsel

[2] Even in the absence of venue transfer, consolidation under Federal Rule of Civil Procedure 42(a) is a device constricted in scope to multiple cases pending in the same district. Plaintiffs cite no authority by which this Court could divest other Article III courts of jurisdiction over matters pending before them. Only the presiding court can order transfer of venue. *See* 15 Fed. Prac. & Proc. Juris.2d § 3844. Moreover, appointment of lead counsel is premature before other counsel file cases on behalf of other clients. No competition exists among counsel that requires refereeing by the Court, and no class has yet been certified, or even proposed. If and when this becomes problematic, the Judicial Panel on MultiDistrict Litigation is the appropriate arbiter.

Having granted defendants' motion to transfer venue, however, plaintiffs' motion to consolidate and appoint lead counsel is DENIED as premature. This motion is not proper before the transferor court, and should be reserved for the transferee court.

CONCLUSION

For the foregoing reasons and for good cause shown:
(1) Defendants' motion to transfer venue is GRANTED and this action is TRANSFERRED to the Southern District of New York; and
(2) Plaintiffs' motion to consolidate and appoint lead counsel is denied.
IT IS SO ORDERED.
N.D.Cal.,2003.
Italian Colors Restaurant v. American Express Co.
Not Reported in F.Supp.2d, 2003 WL 22682482 (N.D.Cal.)

**Motions, Pleadings and Filings (Back to top)**

• 2003 WL 23793642 (Trial Motion, Memorandum and Affidavit) Memorandum of Points and Authorities in Opposition to Defendants' Motion to Transfer Venue (Nov. 7, 2003)
• 2003 WL 23793652 (Trial Motion, Memorandum and Affidavit) Reply Memorandum of Points and Authorities in Support of Motion to Transfer; Supplemental Declaration of Bruce H. Schneider in Support Thereof (Nov. 7, 2003)
• 2003 WL 23793656 (Trial Motion, Memorandum and Affidavit) American Express's Memorandum of Points and Authorities in Opposition to Plaintiff's Motion to Consolidate, Appoint Lead Counsel and Grant other Relief (Nov. 7, 2003)
• 2003 WL 23793664 (Trial Motion, Memorandum and Affidavit) Plaintiff's Reply in Further Support of Motion to Consolidate, Appoint Lead Counsel and Grant other Relief (Nov. 7, 2003)
• 2003 WL 23793649 (Trial Motion, Memorandum and Affidavit) Memorandum of Points and Authorities in Support of Motion to Consolidate, Appoint Lead Counsel and Grant other Relief (Oct. 14, 2003)
• 2003 WL 23793636 (Trial Pleading) Demand for Jury Trial (Aug. 8, 2003)
• 3:03cv03719 (Docket) (Aug. 08, 2003)
END OF DOCUMENT

(C) 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Help © 2007 West

9 of 96 DOCUMENTS

**IBM CREDIT CORPORATION, Plaintiff, v. DEFINITIVE COMPUTER SERVICES, Inc., HENRY GARLAND, and MARY ROSALIND GARLAND, Defendants.**

**No. C-95-3927 SI**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**1996 U.S. Dist. LEXIS 2385**

**February 27, 1996, Dated**
**February 28, 1996, FILED; February 29, 1996, ENTERED**

**COUNSEL:** [*1] For IBM CREDIT CORPORATION, a Delaware corporation, Plaintiff: Richard A. Lapping, [COR LD NTC], Thelen Marrin Johnson & Bridges, San Francisco, CA.

**JUDGES:** SUSAN ILLSTON, United States District Judge

**OPINION BY:** SUSAN ILLSTON

**OPINION**

**ORDER TRANSFERRING VENUE**

This Court issued an order to show cause in this matter regarding venue and/or personal jurisdiction. The parties filed responses to the Court's Order, and the matter was deemed submitted on the papers. Having considered the papers submitted by counsel, and in the interests of justice, the Court hereby TRANSFERS this case to the Northern District of Texas pursuant to 28 U.S.C. § 1404(a).

**BACKGROUND**

This action was filed by IBM Credit Corporation (IBMCC) on November 2, 1995, seeking recovery of amounts that are allegedly owed under a financing agreement and guaranties executed by defendants. The present dispute regarding venue centers around the Wholesale Financing Agreement (Financing Agreement)

entered into between the parties to this action in April of 1993, pursuant to which defendant Definitive Computer Services, Inc. ("DCS") requested financing for the purchase of certain inventory from IBM. The Financing Agreement drafted [*2] by IBMCC and signed by DCS provides:

> The laws of the State of *Texas* will govern this Agreement. We [DCS] agree that venue for any lawsuit will be in the State or Federal Court within the county, parish, or district where your [IBMCC's] branch office, who provides the financial accommodations, is located. We [DCS] hereby waive any right to change the venue of any action brought against us by you. [1]

1 The word "Texas" was hand-written on a blank provided in the form. The balance of the paragraph is typed or printed.

IBMCC provided and administered the requested financing through its branch office in San Ramon, California. In addition to the Financing Agreement, individual defendants Henry and Mary Garland signed separate individual guaranties, in which they independently guaranteed the payment of DCS's indebtedness under the Financing Agreement. The guaranties contained a similar venue selection clause.

In late December, 1994, DCS sued IBM Corp. in state court in Texas, *Definitive* [*3] *Computer Services, Inc. v. IBM Corporation,* No. 94-1383-K (District Court, 192nd Judicial District, Dallas County, Texas), alleging various tort, contract and unfair business practices causes of action under Texas state law. In May, 1995, DCS informed IBMCC of the Texas lawsuit, and indicated that DCS would not make any further payments to IBMCC under the Financing Agreement until the Texas action was resolved. In September, 1995, after Mr. Garland's deposition had been taken by IBM, the Texas lawsuit was amended to add Mr. Garland as a plaintiff and IBMCC as a defendant. This lawsuit was filed by IBMCC against DCS and the Garlands in the Northern District of California on November 2, 1995.

## DISCUSSION

### 1. *Legal Standard*

The Court may in its discretion transfer this action to any other district where it might have been brought, for the convenience of the parties or witnesses, or in the interests of justice. 28 U.S.C. § 1404(a). Where the Court or a party transfers the action in "the interests of justice," governing factors include: (1) avoidance of multiple actions, (2) sending the action to the state most familiar with governing law, and (3) feasibility of [*4] consolidation with other actions. 15 C. Wright & A. Miller, *Federal Practice & Procedure,* Civil § 3854 (1973 & Supp. 1992); *A.J. Industries, Inc. v. United States Dist. Ct.,* 503 F.2d 384 (9th Cir. 1974).

The parties may designate a particular forum in which any litigation between them is to take place. Forum selection clauses are presumptively valid. *M/S Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 92 S. Ct. 1907, 1913, 32 L. Ed. 2d 513 (1972). Absent a showing of fundamental unfairness, the fact that the forum selection clause is found in a standard form agreement is not sufficient grounds to find the clause unenforceable. *Carnival Cruise Lines, Inc. v. Shute,* 499 U.S. 585, 111 S. Ct. 1522, 1527. [2], 113 L. Ed. 2d 622

> 2   The parties have devoted a significant amount of their argument to whether federal or Texas state law should be applied to the forum selection clause in this case. DCS contends that under Texas state law, which concededly applies to the Financing Agreement, a venue selection provision which would "usurp venue or jurisdiction from a

Texas court" is invalid. In light of this Court's determination that a transfer of venue is required for the convenience of witnesses and in interests of justice under § 1404(a), it is not necessary to resolve the federal vs. state law argument. However, it is worth noting that in the Ninth Circuit, the validity of forum selection clauses is governed by federal law. *Spradlin v. Lear Siegler Management Services,* 926 F.2d 865, 867 (9th Cir. 1991); *Manetti-Farrow, Inc. v. Gucci America, Inc.,* 858 F.2d 509, 513 (9th Cir. 1988).

[*5]   However, even where a valid forum selection clause exists, the Court may still evaluate the factors set out in 28 U.S.C. § 1404(a), to determine whether "the interests of justice" or the "convenience of witnesses" mandates transfer under § 1404(a). As was noted by the Supreme Court in *Stewart Organization, Inc. v. Ricoh Corp.,* 487 U.S. 22, 108 S. Ct. 2239, 2244, 101 L. Ed. 2d 22 (1988):

> Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an "individualized, case-by-case consideration of convenience and fairness." *Van Dusen v. Barrack,* 376 U.S. 612, 84 S. Ct. 805, 812, 11 L. Ed. 2d 945 (1964). A motion to transfer under § 1404(a) thus calls on the district court to weigh in the balance a number of case-specific factors. The presence of a forum-selection clause such as the parties entered into in this case will be a significant factor that figures centrally in the district court's calculus.

In considering the "interests of justice" the court considers such factors as "ensuring speedy trials, trying related litigation together, and having a judge who is familiar with the applicable law try the case." [*6] *Heller Financial, Inc. v. Midwhey Powder Co.,* 883 F.2d 1286, 1293 (7th Cir. 1989). Ordinarily, where the forum lacks any significant contact with the activities alleged in the complaint, plaintiff's choice of forum is given considerably less weight, even if the plaintiff is a resident of the forum. Schwarzer, Tashima & Wagstaffe, *Federal Civil Procedure Before Trial* (TRG, 1985), § 4:284, citing *Chrysler Capital Corp. v. Woehling,* 663 F. Supp.

1996 U.S. Dist. LEXIS 2385, *6

478 (D.De. 1987) and *Hernandez v. Graebel Van Lines,* 761 F. Supp. 983, 990 (E.D.N.Y. 1991).

2. *Analysis*

Plaintiff IBMCC argues not only that its choice of forum entitled to great weight, but also that this district is the forum in which the parties expressly agreed to litigate all claims arising out of the financing agreements executed between the parties in April of 1993, because the financing to DCS was provided through IBMCC's branch office in San Ramon, California.

For the following reasons, this Court finds that a transfer of venue to Texas under § 1404(a) would best serve the interests of justice and the convenience of witnesses.

The complaint in this action involves a dispute over a series of agreements [*7] executed in Texas with a Texas corporation, DCS, and with two individual residents of Texas. The Financing Agreement and the Guaranties were executed in and were to be performed in Texas, and concerned the extension of credit for goods to be delivered in Texas. IBMCC does not dispute that virtually all of the witnesses are in Texas. [3] Thus, the Court finds that the presence witnesses in Texas -- and IBMCC's failure to demonstrate the presence of any witnesses in California -- favors transfer. *Heller Financial, Inc. v. Midwhey Powder Co.,* 883 F.2d 1286, 1293 (7th Cir. 1989).

> [3] DCS states, and IBMCC does not dispute, that "all the witnesses who would be called by the Garlands or DCS relating to the causes of action brought against IBMCC are citizens of Texas."

Furthermore, IBMCC is a defendant in the state court action, which is currently pending in Texas state court and which had been pending there against IBM Corp. for almost a year before this case was filed. IBMCC has already participated in the Texas [*8] state court action from its Dallas office, e.g., it has filed an answer, a motion to dismiss and has participated in taking the deposition of Henry Garland. Thus, IBMCC, itself a Delaware corporation doing business in Dallas County, Texas, would not be unduly burdened by the additional litigation in that state. [4]

> [4] While it is not essential to this decision, the Court notes that defendants DCS and Mr. and

Mrs. Garland have submitted a declaration stating that they are financially unable to litigate this matter in California; that they have already retained Texas counsel who are substantially involved in the litigation of the Texas lawsuit; and that they could not afford to pay for attorneys' fees in California beyond initial motions.

The forum selection clause is the main argument upon which IBMCC relies in support of its position that California is the only appropriate venue. IBMCC makes no specific arguments regarding the convenience of non-party witnesses and access to sources of proof other than its vague [*9] statement that it is "extremely likely that there will be no witnesses other than the parties themselves." While such venue clauses are "significant factors," in this case virtually nothing else connects this case to this forum.

The Court also notes that the particular clause that is at issue in this case does not actually mention California. It merely states that venue will be in the district where "the branch office who provides the financial accommodations is located." In all of the cases cited by IBMCC, the forum selection clause at issue designated a particular geographic location, lending some support to the proposition that the parties in those cases had actually agreed to the specified forum. Nothing in this form agreement provides such support, particularly since the immediately preceeding sentence stated clearly that Texas law would govern the agreement. However, because the Court finds that transfer is clearly in the interests of justice and will substantially enhance the convenience of witnesses, the Court need not resolve the enforceability of this particular venue provision.

Finally, it is undisputed that Texas law controls at least a portion of this case. The Financing [*10] Agreement provides that "the laws of the state of *Texas* will govern this Agreement." In considering whether a transfer of venue is "in the interests of justice," courts look to the district most familiar with the governing law. Wright & Miller at § 3854. Although not dispositive, this is significant.

CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby finds that under all the circumstances of this case, transfer of this matter from this district to the Northern District of Texas will promote the convenience

1996 U.S. Dist. LEXIS 2385, *10

of witnesses and is in the interests of justice, and therefore hereby TRANSFERS this action to the Northern District of Texas.

IT IS SO ORDERED.

Dated: February 27, 1996.

SUSAN ILLSTON

United States District Judge