ROBERT P. ANDRIS (SBN 130290)
LAEL D. ANDARA (SBN 215416)
AMY K. GRUBER (SBN 239793)
ROPERS, MAJESKI, KOHN & BENTLEY
1001 Marshall Street, Suite 300
Redwood City, CA  94063
Telephone:     (650) 364-8200
Facsimile:     (650) 780-1701
Email: randris@ropers.com
        landara@ropers.com;  agruber@ropers.com

Attorneys for Plaintiff
DESTINY TOOL, a California corporation

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DESTINY TOOL, a California corporation,<br><br>        Plaintiff,<br><br>v.<br><br>SGS TOOLS COMPANY, an Ohio corporation, DAUPHIN PRECISION TOOL, LLC, a Pennsylvania limited liability company, and WELDON TOOL COMPANY, an Ohio corporation,<br><br>        Defendants. | CASE NO. C07-03117 HRL<br><br>**DESTINY TOOL'S OPPOSITION TO DEFENDANTS' JOINT MOTION TO DISMISS PLAINTIFFS' COMPLAINT AND TO TRANSFER VENUE**<br><br>**Date:**     **September 18, 2007**<br>**Time:**    **10:00 a.m.**<br>**Ctrm:**     **2** |

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

1

**TABLE OF CONTENTS**

2
**Page**

3    I.    INTRODUCTION ...................................................................................................1

4    II.   FACTUAL BACKGROUND...............................................................................1

     III.  ARGUMENT........................................................................................................3

5          A.    Because Defendants Raise No Defects In The Antitrust Claim, It May

6                Stand ...........................................................................................................3

7                1.    Defendants Misconstrue The "Act" That Gave Rise To The
                       Antitrust Damage...........................................................................3

8                2.    In The Ninth Circuit, An Antitrust Claim Arising From Bad Faith
                       Patent Enforcement Is A Permissive Counterclaim And Can Be

9                      Brought In A Later Suit .................................................................3

10               3.    Destiny's Antitrust Claim Is Not Barred By Res Judicata Because
                       Its Previous Counterclaim Was Not Decided On Its Merits, Nor Is
                       The Antitrust Claim An Identical Cause Of Action.......................5

11         B.    Because Defendants' Infringement Action Was Instituted In reply To: Bad
                 Faith, Destiny's Abuse Of Process Claim Is Not Preempted By Federal
12               Patent Law ..................................................................................................8

13         C.    Because the Previous Action Was Terminated in Destiny's Favor,
                 Destiny's Malicious Prosecution Action Can Stand...................................9

14         D.    Under The Applicable Government Interest Analysis, California Law
                 Applies To This Action.............................................................................11

15         E.    The Action is Currently in the Proper Forum ...........................................15

16   IV.   CONCLUSION...................................................................................................20
17

18

19

20

21

22

23

24

25

26

27

28

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

OPPOSITION TO DEFENDANTS' JOINT MOT
TO DISMISS AND TO TRANSFER VENUE
NO. C07-03117 HRL

1

# TABLE OF AUTHORITIES

2

Page

3

## FEDERAL CASES

4

Abbot Laboratories v. Brennan,
    952 F.2d 1346 (Fed. Cir. 1991) ....................................................................8

5

Alltrade v. Uniweld Products, Inc.,
    946 F.2d 622 (9th Cir. 1991) ....................................................................18

6

7

Amhil Enterprises v. Wawa, Inc.,
    81 F.3d 1554 (Fed. Cir. 1996) ....................................................................6

8

C.R. Bard, Inc. v. M3 Systems, Inc.,
    157 F.3d 1340 (Fed. Cir. 1998.) ....................................................................7

9

10

California. Paracor Finance, Inc. v. General Electric Capital Corp.,
    96 F.3d 1151 (9th Cir. 1996.) ....................................................................11

11

Commodity Futures Trading Commission v. Savage,
    611 F.2d 270 (9th Cir. 1979.) ....................................................................17

12

13

Dow Chemical Co. v. Exxon Corp.,
    139 F.3d 1470 (Fed. Cir. 1998) ....................................................................8

14

Dunn Computer Corp. v. Loudcloud, Inc.,
    133 F. Supp. 2d 823 (D. Va. 2001) ....................................................................3

15

16

Harris v. Jacobs,
    621 F.2d 341 (9th Cir. 1980) ....................................................................6

17

Hunter Douglas, Inc. v. Harmonic Design, Inc.,
    153 F.3d 1318 (Fed. Cir. 1998) ....................................................................8

18

19

Hydranautics v. FilmTec Corp.,
    70 F.3d 533 (9th Cir. 1995) ....................................................................4

20

Hydranautics v. FilmTec Corp.,
    204 F.3d 880 (9th Cir. 2000) ....................................................................9

21

22

Hydranautics v. FilmTec Corp.,
    204 F.3d 880 (9th Cir. 2000.) ....................................................................9

23

IBM Credit Corp. v. Definitive Computer Services, Inc.,
    1996 U.S. Dist. LEXIS 2385 (N.D. Cal. 1996) ....................................................................17

24

25

Jones v. GNC Franchising, Inc.,
    211 F.3d 495 (9th Cir. 2000.) ....................................................................16, 19

26

Munoz v. UPS Ground Freight, Inc.,
    2007 U.S. Dist. LEXIS 47537 (N.D. Cal. 2007.) ....................................................................17, 19

27

28

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

OPPOSITION TO DEFENDANTS' JOINT MOT
TO DISMISS AND TO TRANSFER VENUE
NO. C07-03117 HRL

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3    Netflix, Inc. v. Blockbuster, Inc.,
          2006 U.S. Dist. LEXIS 63154 (N.D. Cal. 2006.) ........................................................7
4
     Nobelpharma Ab v. Implant Innovations,
5          141 F.3d 1059 (Fed. Cir. 1998.) ..........................................................................7

6    Reed Elsevier, Inc. v. Innovator Corp.,
          105 F. Supp. 2d 816 (SD OH 2000.) ....................................................................17
7
     Robi v. Five Platters Inc.,
8          838 F.2d 318 (9th Cir. 1988.) ................................................................................5

9    Stewart Organization, Inc. v. Ricoh Corp.,
          487 U.S. 22 (1988)..............................................................................................16
10
     Strassberg v. New England Mutual Life Insurance Co,
11         575 F.2d 1262 (9th Cir. 1978.) ............................................................................11

12   Tahoe-Sierra Preservation Council v. Tahoe Reg'l Planning Agency,
          322 F.3d 1064 (9th Cir. 2003) ................................................................................5
13
     U.S. Aluminum Corp. v. Alumax, Inc.,
14         831 F.2d 878 (9th Cir. 1987) ..................................................................................9

15   Verve, L.L.C. v. Hypercom Corp.,
          2006 U.S. Dist. LEXIS 58398 ..........................................................................9, 10
16
                                            **STATE CASES**
17
     Bernhard v. Harrah's Club,
18         16 Cal. 3d 313 (1976.) ....................................................................................11, 12

19   Bertero v. National General Corp.,
          13 Cal. 3d 43 (Cal. 1974)................................................................................13, 19
20
     Hurtado v. Superior Court,
21         11 Cal. 3d 574 (1974) ..........................................................................................11

22   Italian Colors Restaurant v. American Express Co.,
          2003 WL. 22682482 (N.D. Cal. 2003) ..................................................................17
23
     Kearney v. Salomon Smith Barney, Inc.,
24         39 Cal. 4th 95 (2006.) ..........................................................................................19

25   Kremer v. Cox,
          682 N.E.2d 1006 (Ohio App. Ct. 1996)............................................................11, 15
26
     Lackner v. La Croix,
27         25 Cal. 3d 747 (Cal. 1979).....................................................................................10

28

OPPOSITION TO DEFENDANTS' JOINT MOT
TO DISMISS AND TO TRANSFER VENUE
NO. C07-03117 HRL

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

1

**TABLE OF AUTHORITIES**
(continued)

2                                                                          **Page**

3   M.A.J. v. Jackson,
        1987 Ohio App. LEXIS 8596 (Ohio Ct. App. 198.)......................................11, 14
4
    Minasian v. Sapse,
5       80 Cal. App. 3d 823 (Cal. Ct. App. 1978) ..........................................................10

6   Reich v. Purcell,
        67 Cal. 2d 551 (1967) .........................................................................................11
7
    Spellens v. Spellens,
8       49 Cal. 2d 210 (1957) .........................................................................................15

9                                    **FEDERAL STATUTES**

10  18 U.S.C. §1404.............................................................................................15, 16

11  28 U.S.C. § 1404(a) ..............................................................................................16

12  Fed. R. Civ. P. 11 ....................................................................................................5

13  Fed. R. Civ. P. 41(b) ...............................................................................................5

14                                     **STATE STATUTES**

15  41 Pa. Cons. Stat. §8351(b) ..................................................................................14

16                                     **MISCELLANEOUS**

17  Donald S. Chisum, Chisum on Patents §19.06 [2] ...............................................8

18  Patent Litigation: Procedure & Tactics § 3.03 (Matthew Bender 2006) ............4

19  Rest. 2d of Torts § 674.............................................................................................13

20

21

22

23

24

25

26

27

28

OPPOSITION TO DEFENDANTS' JOINT MOT
TO DISMISS AND TO TRANSFER VENUE
NO. C07-03117 HRL

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

1    Plaintiff Destiny Tool ("Destiny") submits the following memorandum of points and

2    authorities in support of its opposition to the motion to dismiss or transfer venue filed by

3    defendants SGS Tools Company and Dauphin Precision Tool, LLC (collectively "defendants").

## I.

## INTRODUCTION

6    Destiny comes to this court seeking redress for purposeful, anticompetitive and tortious

7    damage inflicted by competitors. These defendants filed a baseless patent infringement lawsuit

8    with the goal of damaging the finances and reputation of a competitor who threatened their

9    growing dominance in the carbide end mill market. Defendants' muscle in the market was

10   bolstered by their ownership and enforcement of a patent they obtained through fraud. When

11   confronted with the very real probability their patent would be declared invalid for this fraud,

12   defendants quickly and voluntarily withdrew their infringement claim with prejudice, thereby also

13   divesting the court of the jurisdiction and ability to decide Destiny's pending motion for

14   invalidity.

15   Now, in a desperate attempt to escape liability, defendants accuse Destiny of forum

16   shopping and wanting a second bite at the apple because it was "unhappy" with the results of the

17   underlying litigation. These inflammatory and baseless accusations are distractions to the very

18   real matter at hand: a homegrown California company that has been severely and purposely

19   wronged and damaged by malicious competitors. Defendants' legal arguments regarding

20   Destiny's antitrust claim as barred by the statute of limitations, as a compulsory counterclaim,

21   and by res judicata are without merit. Their attempts to distract the court with Ohio law and to

22   transfer venue are also foundationless and their motion should be denied in its entirety.

## II.

## FACTUAL BACKGROUND

25   Plaintiff Destiny Tool, located in Santa Clara, California, is engaged in the business of

26   manufacturing, marketing and selling metal cutting tool products including carbide end mills for

27   high speed machining. Complaint, ¶ 2. Brothers Guy and Frank Calamia currently serve as the

28   company's President and Vice-President, respectively. Declaration of Guy Calamia, ¶¶ 1-2. The

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

1   business was originally founded by Guy Calamia in 1982. Id., ¶ 2.

2       Defendant SGS is an Ohio corporation and is in the business of selling and manufacturing

3   carbide end mills for high speed machining. Complaint, ¶ 3.  Defendant Dauphin is a parent

4   company and/or manufacturer for several cutting tool entities and brands, namely Weldon Tools,

5   Data Flute CNC, Brubaker Tools, Fastcut Tools and New England Tap, among possible others.

6   Id., ¶ 4.  Defendants are the owners of U.S. Patent No. 5,049,009, (the '009 patent) issued on

7   September 17, 1991. Id., ¶ 6.  The patent was issued to SGS and Weldon, and Dauphin is

8   Weldon's successor in interest. Id., ¶¶ 4, 42.

9       In June 2003, defendants attorneys targeted Destiny, their competitor in the market of

10  manufacturing carbide end mills for high speed machining, and accused Destiny of infringing the

11  '009 patent. Id., ¶ 77.   The attack followed Destiny's successful launch of its new line of Viper

12  end mills, just four months before. Id., ¶ 76.  Destiny tried for over a year to convince defendants

13  and their attorneys that the Viper line did not infringe the '009 patent. Id., ¶¶ 78-80.  Over the

14  course of the previous several years and during 2003 and 2004, defendants were confronted with

15  the evidence that their patent was invalid because it was anticipated by prior art. Id., ¶¶ 66-75.

16  Nevertheless, defendants filed a patent infringement suit in the Northern District of Ohio on July

17  14, 2004. Id., ¶ 81.  The underlying infringement action was entitled "SGS Tools Company and

18  Dauphin Precision Tool, LLC, Plaintiffs, v. Step Tools Unlimited, Inc. d/b/a Destiny Tool,

19  Defendant," Case No.5:04 CV1315. Id., ¶ 81.  Destiny filed a counterclaim for declaratory

20  judgment that the '009 Patent was invalid. Id., ¶ 82.

21      During the lawsuit, defendants publicized the lawsuit and caused damage to Destiny. Id.,

22  ¶¶ 83-87.  Defendants further engaged in abusive discovery practices in an effort to increase

23  Destiny's legal costs. Id., ¶ 88.  For example, defendants served 1,656 requests for admissions on

24  Destiny. Id.

25      After extensive discovery during the first year of the litigation, Destiny discovered that the

26  three features the defendants claimed patentable in the '009 patent have each been well known

27  and practiced for decades. Id., ¶¶ 43-63.  Destiny filed a motion for summary judgment on their

28  counterclaim of invalidity based on the intentional nondisclosure of these facts on September 15,

1   2005. Id., ¶ 89 Confronted with the probability of their patent being declared invalid, defendants

2   immediately moved to voluntarily dismiss their infringement claim with prejudice (accompanied

3   by a covenant to never sue Destiny for infringement of the '009 patent) and to dismiss Destiny's

4   counterclaim for invalidity. Id., ¶ 90.  Destiny opposed defendants' motion to dismiss because it

5   wanted its motion for summary judgment decided on the merits, but because defendant's

6   voluntary dismissal removed the court's subject matter jurisdiction over Destiny's counterclaim,

7   the court was also forced to dismiss Destiny's counterclaim as well, without a decision on its

8   merits. Id., ¶ 91, Exhibit I.

9                                        **III.**

10                                    **ARGUMENT**

11  A.    **Because Defendants Raise No Defects In The Antitrust Claim, It May Stand**

12          1.    **Defendants Misconstrue The "Act" That Gave Rise To The Antitrust Damage**

13          Defendants erroneously claim that their cease and desist dated June 9, 2003, was the "act"

14  under Sherman Act's statute of limitations that gave rise to the antitrust damage complained of.

15  (Exhibit A to Calamia Declaration, ¶ 11.)  To the contrary, it was the institution of patent

16  infringement proceeding in bad faith and the voluntary withdrawal of it that gave rise to and

17  caused antitrust damage to Destiny.  In fact, the June 9, 2003 cease and desist letter, which simply

18  informs Destiny of the '009 patent and requests a sample of one of Destiny's products which was

19  not even the subject of the later infringement suit, does not suffice to even create the "case or

20  controversy" necessary to support a declaratory judgment action of noninfringment. See Dunn

21  Computer Corp. v. Loudcloud, Inc., 133 F. Supp. 2d 823, 826-829 (D. Va. 2001) (finding no case

22  or controversy created by a cease and desist letter that invited negotiation and did not threaten

23  litigation.)

24          2.    **In The Ninth Circuit, An Antitrust Claim Arising From Bad Faith Patent**
25                **Enforcement Is A Permissive Counterclaim And Can Be Brought In A Later**
                  **Suit**

26          Defendants claim that Destiny's antitrust counterclaim was a compulsory counterclaim to

27  the previous litigation, but they fail to cite controlling Ninth Circuit law, which finds such an

28  action to be permissive counterclaims.

OPPOSITION TO DEFENDANTS' JOINT MOT
TO DISMISS AND TO TRANSFER VENUE
NO. C07-03117 HRL

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

1      In <u>Hydranautics v. FilmTec Corp.</u>, 70 F.3d 533 (9th Cir. 1995), FilmTec's judgment of

2    patent infringement had been reversed by the Ninth Circuit because of a defect in inventorship,

3    and therefore FilmTec did not own the patent. The Ninth Circuit made no finding whether

4    FilmTec fraudulently obtained the patent. Subsequently, Hydranautics instituted an antitrust suit

5    against FilmTec after FilmTec's unsuccessful patent infringement lawsuit against Hydranautics.

6    FilmTec moved to dismiss Hydranautics antitrust claim, arguing that it was a compulsory

7    counterclaim that should have been brought during the first litigation. On that basis, the district

8    court dismissed Hydranautic's complaint. The Ninth Circuit reversed, holding "[a] claim that

9    patent infringement litigation violated an antitrust statute is a permissive, not a mandatory,

10    counterclaim in a patent infringement case, and is not barred in a subsequent suit by failure to

11    raise it in the infringement suit. <u>Hydranautics v. FilmTec Corp.</u>, 70 F.3d 533, 536 (9th Cir. 1995)

12      The Ninth Circuit reasoned that the antitrust claim was distinct from the patent claim since

13    "[t]he antitrust claim attacks the patent infringement lawsuit itself as the wrong which furnished

14    the basis for the antitrust damages." <u>Hydranautics</u>, 70 F.3d at 536. Further, antitrust actions

15    asserted as counterclaims are often severed as courts will try the infringement case first. <u>Id.</u>

16    Because there was not "much point in litigating Hydranautics' antitrust claims until FilmTec's

17    infringement case was resolved," and because the facts controlling both claims were significantly

18    different, the antitrust claim could be brought in a separate and subsequent action. <u>Id.</u>

19      Likewise, here, Destiny's antitrust action is proper because it is not a compulsory

20    counterclaim. It was the infringement action itself, and its voluntary dismissal in the face of a

21    declaration of invalidity, that gave rise to the antitrust claim. A counterclaim for antitrust could

22    not have been properly asserted in the previous action. Under clear and controlling Ninth Circuit

23    law, Destiny's antitrust claim can go forward.

24      Defendants further point to Destiny's fifth affirmative defense and counterclaim as

25    somehow showing that Destiny was aware of, yet held back, on an antitrust counterclaim.

26    Counterclaims for declaratory judgment of invalidity and patent misuse are routinely asserted in

27    early and first response to infringement actions. See Horwitz, et. al, <u>Patent Litigation: Procedure</u>

28    <u>& Tactics</u> § 3.03 (Matthew Bender 2006) In fact, at that stage of the litigation, Destiny could not

OPPOSITION TO DEFENDANTS' JOINT MOT
TO DISMISS AND TO TRANSFER VENUE
NO. C07-03117 HRL

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

1   have asserted an antitrust counterclaim in its answer with the good faith basis required by Fed. R.

2   Civ. P. 11. As stated above, Destiny did not discover the grounds for its antitrust claim until after

3   the litigation had progressed. The voluntary dismissal of the infringement action in the face of a

4   declaration of invalidity is a critical piece of evidence in the antitrust action.

5
        **3.**      **Destiny's Antitrust Claim Is Not Barred By Res Judicata Because Its
6
                   Previous Counterclaim Was Not Decided On Its Merits, Nor Is The Antirust
                   Claim An Identical Cause Of Action**

7         Defendants mistakenly argue that antitrust counterclaims are barred by the doctrine of res

8   judicata. In the Ninth Circuit, res judicata, or claim preclusion, "treats a judgment, once rendered,

9   as the full measure of relief to be accorded between the parties on the same 'claim' or 'cause of

10  action.'" <u>Robi v. Five Platters Inc.</u>, 838 F.2d 318, 321 (9th Cir. 1988.) The elements necessary to

11  establish preclusion res judicata are: (1) privity between parties, (2) a final judgment on the

12  merits, and (3) an identity of claims. <u>Tahoe-Sierra Pres. Council v. Tahoe Reg'l Planning Agency</u>,

13  322 F.3d 1064, 1077 (9th Cir. 2003)

14        First, Destiny's counterclaim in the prior litigation was not terminated by a final judgment

15  on the merits. Defendants mistakenly rely on a portion of Fed. R. Civ. P. 41(b) in support of their

16  argument that the dismissal of Destiny's counterclaim for invalidity of the '009 patent operated as

17  a final adjudication on the merits. The Court, however, stated that it could not grant summary

18  judgment "because it has been stripped of subject-matter jurisdiction for lack of an actual

19  controversy...." The dismissal, therefore, was due to a lack of subject matter jurisdiction, not on

20  its merits of the action. (Exhibit I, p. 4) Indeed as defendants' quoted portion of Fed. R. Civ. Pro.

21  41(b) even states "a dismissal under this subdivision or any dismissal not provided for under this

22  rule, <u>other than a dismissal for lack of jurisdiction</u>,... operates as an adjudication upon the

23  merits." Further, the court specifically stated that the dismissal of Destiny's counterclaim was

24  without prejudice. (Exhibit I, p. 5) Thus, since the Court specifically declined to rule on the

25  merits of Destiny's motion for summary judgment, the dismissal cannot operate as decision on

26  the merits, and therefore cannot serve as a bar to Destiny's future claims regarding invalidity of

27  the '009 patent.

28        Second, defendants incorrectly state that there exists an identity of causes of action with

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

OPPOSITION TO DEFENDANTS' JOINT MOT
TO DISMISS AND TO TRANSFER VENUE
NO. C07-03117 HRL

1   the previous litigation. Defendants voluntarily dismissed their suit for patent infringement with

2   prejudice. Destiny's counterclaim was also dismissed without prejudice because the Court no

3   longer had jurisdiction to hear it. Now, defendants state that "the same evidence necessary to

4   support [Destiny's] antitrust claims here would have refuted the Defendants claim for patent

5   infringement." Motion to Dismiss, p. 14. This is not the case. Destiny would have refuted the

6   accusations of infringement of the '009 patent with evidence of noninfringement – namely, that

7   none of the products Destiny manufactures and sells read on any of the claims in the '009 patent.

8   See Amhil Enterprises v. Wawa, Inc., 81 F.3d 1554, 1562 (Fed. Cir. 1996). Destiny's antitrust

9   claim, however, requires proof of a host of other non-infringement related issues such as the SGS

10  and Dauphin's the fraudulent acquisition of a patent, their intent to deceive as and reliance by the

11  patent office, initiation of the patent infringement lawsuit knowing of the patent's invalidity, the

12  objective baselessness of the suit, as well as the elements of an antitrust violation. None of these

13  questions deal are even remotely related to whether Destiny's end mill products read on the

14  claims of the '009 patent.

15      To determine whether the same cause of action is involved in two suits, a Court examines:

16  (1) whether rights or interests established in the prior judgment would be destroyed or impaired

17  by prosecution of the second action; (2) whether substantially the same evidence is presented in

18  the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether

19  the two suits arise out of the same transactional nucleus of facts. Harris v. Jacobs, 621 F.2d 341,

20  343 (9th Cir. 1980).

21      First, this action will not impair or undermine any rights established by the previous

22  litigation in Ohio. As stated above, there were no rights established by the prior judgment.

23  Defendants' infringement claim was dismissed under the threat of a declaration of invalidity, and

24  because this divested the Court of jurisdiction to hear it, Destiny's claim was dismissed too. This

25  is precisely the outcome the defendants desired by voluntarily withdrawing their infringement

26  claim. The sole outcome of the infringement suit is that defendants are barred from asserting

27  their infringement action again. No interests will be impaired if Destiny is permitted to pursue its

28  action based upon defendants' bad faith enforcement of the '009 patent.

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

OPPOSITION TO DEFENDANTS' JOINT MOT
TO DISMISS AND TO TRANSFER VENUE
NO. C07-03117 HRL

1    Second, as stated above, the evidence in the previous infringement suit is far afield from

2    that required in an antitrust action for sham litigation or the bad faith enforcement of a patent.

3    Under the Walker Process theory of liability for the anticompetitive effects of a patent

4    infringement suit, evidence is required that the party enforcing the patent was aware of the patent

5    had been obtained fraudulently when it later brought suit. Nobelpharma Ab v. Implant

6    Innovations, 141 F.3d 1059, 1068-71 (Fed. Cir. 1998.).  On the other hand, under the "sham"

7    litigation theory of liability, evidence is required that the lawsuit was objectively meritless such

8    that no reasonable litigant could expect success on the merits and the lawsuit concealed an

9    attempt to interfere directly with the business relationships of a competitor. C.R. Bard, Inc. v. M3

10   Systems, Inc. 157 F. 3d 1340, 1368 (Fed. Cir. 1998.)  Destiny has made sufficient pleadings

11   under both theories.  Further, these showings will be accompanied by proof of the other required

12   elements of the underlying antitrust action such as the relevant market and predatory or otherwise

13   anticompetitive conduct toward obtaining monopoly power in the market. Netflix, Inc. v.

14   Blockbuster, Inc., 2006 U.S. Dist. LEXIS 63154 at *18 (N.D. Cal. 2006.)  Thus, it is clear that

15   while some of the same evidence of invalidity may be used to prove the antitrust action, there

16   exists a whole new field of evidence that will be presented beyond the narrower question of

17   invalidity. .

18       Third, the two suits do not address the same rights.  The first suit involved the alleged

19   infringement of the '009 patent.  By contrast, this action was filed because of the first and only

20   after the first was dismissed in the face of a declaration of invalidity.  It provides Destiny a

21   remedy for the damage caused by anticompetitive enforcement of that invalid patent.

22       Fourth, the suits do not arise out of the same transactional nucleus of facts.  Many of the

23   facts surrounding this lawsuit arise from defendants' anticompetitive behavior in filing the first

24   lawsuit, its conduct during the litigation, its maintenance of the litigation, its dismissal of the

25   litigation and its conduct since the litigation.  This is in contrast to the facts at issue in the Ohio

26   litigation which were whether Destiny's products read on the claims of the '009 patent, and

27   whether the patent was invalid and unenforceable.  Although many of the same facts regarding

28   the invalidity of the '009 patent will also be used in this litigation, this action seeks remedy for

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

1   the anticompetitive enforcement of the '009 patent, and many of the facts showing this were not

2   known or even in existence at the time the Ohio litigation was filed. These facts will be will be

3   central to Destiny's proof.

**B.     Because Defendants' Infringement Action Was Instituted In reply To: Bad Faith, Destiny's Abuse Of Process Claim Is Not Preempted By Federal Patent Law**

6       Defendants mistakenly claim that Destiny's abuse of process claim is preempted under the

7   federal patent laws. Generally, a patent owner is privileged under federal patent law to assert

8   infringement in good faith. Donald S. Chisum, Chisum on Patents §19.06 [2]. Generally, state

9   legal theories that impose liability for such conduct are preempted by federal patent law. Id.

10  Theories of liability based on the bad faith enforcement of a patent in the marketplace, however,

11  are not preempted by federal patent laws when there is a showing that the patent owner acted in

12  bad faith and outside the scope his permitted conduct under the patent laws. Hunter Douglas, Inc.

13  v. Harmonic Design, Inc., 153 F.3d 1318, 1336-37 (Fed. Cir. 1998)

14      Defendants reliance on Abbot Laboratories v. Brennan, 952 F. 2d 1346 (Fed. Cir. 1991),

15  is misplaced. In Abbot, the Federal Circuit found that a state abuse of process claim could not

16  serve as a remedy for inequitable conduct in obtaining a patent before the USPTO. Abbot, 952

17  F.2d at 1355. As explained by the Federal Circuit in a later case, however, the abuse of process

18  claim in Abbot was only "based entirely upon bad faith misconduct before the PTO," and thus,

19  plaintiff's claim was properly preempted by the Federal patent laws because it would be an

20  "inappropriate collateral intrusion on the regulatory procedures of the PTO." Dow Chem. Co. v.

21  Exxon Corp., 139 F.3d 1470, 1477 (Fed. Cir. 1998) quoting Abbot, 952 F.2d at 1357. In Dow,

22  however, a state law intentional interference claim was based on bad faith local conduct that the

23  state has a right to regulate and proof acts before the USPTO were "merely evidence of a

24  patentee's bad faith." Dow, 139 F.3d at 1477. Thus, the state law tort claim in Dow was not

25  preempted by the federal patent laws because it did not "present an 'obstacle' to the execution

26  and accomplishment of the patent laws." Dow, 139 F.3d at 1475, 1479.

27      Likewise, here, the abuse of process claim is not based solely on SGS and Dauphin's

28  inequitable and fraudulent conduct before the USPTO. Instead, it is based upon their institution

OPPOSITION TO DEFENDANTS' JOINT MOT
TO DISMISS AND TO TRANSFER VENUE
NO. C07-03117 HRL

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

1  of a patent infringement lawsuit in bad faith, for anticompetitive reasons. The defendants filed

2  suit against Destiny, not for the purpose of obtaining a good faith legitimate judgment of

3  infringement against Destiny, but solely to damage Destiny's finances and reputation because

4  Destiny is a competitor. This is the type of conduct properly addressed in state law claims for

5  abuse of process and malicious prosecution.

6      Thus, while abuse of process claims arising out of administrative proceedings will be

7  rejected as within the scope of the patent laws, state malicious prosecution and abuse of process

8  claims arising from bad faith patent infringement actions are not preempted by federal patent law.

9  Verve, L.L.C. v. Hypercom Corp., 2006 U.S. Dist. LEXIS 58398, *5-6; *16 (D. Ariz. 2006)

10  citing U.S. Aluminum Corp. v. Alumax, Inc., 831 F.2d 878, 881 (9th Cir. 1987) and Hydranautics

11  v. FilmTec Corp., 204 F.3d 880, 886 (9th Cir. 2000) (approving a state law malicious prosecution

12  claim arising from patent infringement action).

13      In Verve, the defendant Hypercom asserted counterclaims for abuse of process based on

14  both baseless infringement lawsuits filed in federal court, and on administrative infringement

15  proceedings before the ITC. Because the proceedings before the ITC could not serve as the basis

16  for an abuse of process claim (they are not considered "judicial processes"), the Court denied

17  Hypercom's motion for summary judgment as to the abuse of process claim addressing the ITC

18  proceedings. Hypercom's motion for summary judgment regarding the abuse of process claims

19  based on infringement suits filed in California and Michigan, however, was granted. Verve, 2006

20  U.S. Dist. LEXIS 58398, at *16-17.

21  **C.    Because the Previous Action Was Terminated in Destiny's Favor, Destiny's**
22      **Malicious Prosecution Action Can Stand**

23      To establish a cause of action for the malicious prosecution of a civil action the plaintiff

24  must demonstrate that (1) the prior patent infringement action was initiated without probable

25  cause; (2) the prior action was terminated in its favor; and (3) the prior action was brought with

26  malice. Hydranautics v. FilmTec Corp., 204 F.3d 880,886 (9th Cir. 2000.) Defendants argue that

27  Destiny's malicious prosecution action cannot stand because the previous action was voluntarily

28  dismissed over Destiny's objection, and it was therefore not terminated in Destiny's favor. This

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

OPPOSITION TO DEFENDANTS' JOINT MOT
TO DISMISS AND TO TRANSFER VENUE
NO. C07-03117 HRL

1    argument misconstrues the applicable law.

2         In California, "it is not essential to maintenance of an action for malicious prosecution that

3    the prior proceeding was favorably terminated following trial on the merits. However, termination

4    must reflect on the merits of the underlying action." Lackner v. La Croix, 25 Cal. 3d 747, 750

5    (Cal. 1979.)  Further, to be favorable, the termination must reflect on the accused innocence for

6    the alleged wrongful conduct. Id., at 751.

7         Further, the issue of whether a termination is a favorable termination is a question of fact

8    that should be evaluated based in its circumstances and should be submitted to a jury. See

9    Minasian v. Sapse, 80 Cal. App. 3d 823, 828 (Cal. Ct. App. 1978.)

10        For example, in Verve, L.L.C. v. Hypercom Corp., 2006 U.S. Dist. LEXIS 58398 (D.

11   Ariz. 2006), the plaintiff's voluntary dismissal of its underlying patent infringement after the

12   defendant threatened Rule 11 sanctions was sufficient to grant summary judgment on the

13   defendant's malicious prosecution claim. Verve, L.L.C. v. Hypercom Corp., 2006 U.S. Dist.

14   LEXIS 58398, *4 (D. Ariz. 2006.)

15        In the case at bar, the dismissal in the underlying litigation clearly shows that Destiny was

16   innocent of infringement.  Defendants only moved to dismiss their infringement suit the same day

17   Destiny filed its motion for summary judgment of invalidity.  Destiny's motion for summary

18   judgment presented clear and convincing evidence of defendants' fraud before the patent office

19   toward obtaining the '009 patent.  The same day, in the face of a motion they knew would be

20   successful in declaring the '009 patent invalid and unenforceable, defendants moved to dismiss

21   their suit.  The defendants did not file its motion to dismiss in response to settlement negotiations,

22   for technical or procedural reasons: they did so only under penalty of losing a lucrative piece of

23   intellectual property.  They moved to dismiss also knowing that it would remove the court's

24   jurisdiction to hear Destiny's pending motion. (Exhibit I, p. 4.)  Further, defendants' dismissal

25   was with prejudice which is further evidence that the dismissal reveals Destiny's innocence in

26   terms of infringement.  The termination reflects unambiguously on the merits of the underlying

27   action against Destiny.

28   ///

**D.    Under The Applicable Government Interest Analysis, California Law Applies To This Action**

Throughout their motion to dismiss, defendants cite to Ohio law with no analysis of why except a short statement in between hyphens in a sentence: "—which controls here given that the abuse of process took place in Ohio and involved an Ohio court and Ohio local rules— ." Their assumption is misplaced.

The reason defendants would like Ohio law applied to this case is apparent: plaintiff's California tort causes of action for malicious prosecution and abuse of process do not exist in the same way in Ohio as they do in California.  The elements differ in that malicious prosecution in Ohio requires the additional element of "seizure of person or property." M.A.J. v. Jackson, 1987 Ohio App. LEXIS 8596, *2 (Ohio Ct. App. 1987.)  Further, contrary to California law in which probable cause for bringing the underlying action is irrelevant, abuse of process in Ohio requires the underlying action to be "set in motion in proper form with probable cause." Kremer v. Cox, 682 N.E.2d 1006, 1013 (Ohio App. Ct. 1996.)

Under the proper analysis, California law applies to Destiny's claims.  When a federal court exercises supplemental jurisdiction, "the federal court applies the choice-of-law rules of the forum state," which in this case is California. Paracor Fin., Inc. v. Gen. Elec. Capital Corp., 96 F.3d 1151, 1164 (9th Cir. 1996.)  In California, choice of law questions are resolved by the "government interest analysis." Hurtado v. Superior Court, 11 Cal.3d 574, 579-580 (1974.) Under this approach, the forum court searches "to find the proper law to apply based upon the interests of the litigants in the involved states." Reich v. Purcell, 67 Cal.2d 551, 554 (1967)  The court first determines whether the "interest" or policy underlying the law will be significantly furthered by its application to the case at hand. Strassberg v. New England Mut. Life Ins. Co, 575 F.2d 1262, 1264 (9th Cir. 1978.)  If both California and the foreign state have a strong interest in applying their own law, a true conflict exists. The court then engages in a "comparative impairment" analysis, and applies "the law of the state whose interest would be the more impaired if its law were not applied." Bernhard v. Harrah's Club, 16 Cal.3d 313, 320 (1976.)

For example, in Bernhard, a California resident was injured in California in an automobile

OPPOSITION TO DEFENDANTS' JOINT MOT TO DISMISS AND TO TRANSFER VENUE NO. C07-03117 HRL

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

1    accident caused by another California driver who had become intoxicated after allegedly been

2    provided alcoholic beverages at the defendant's establishment in Nevada after he was obviously

3    intoxicated. Bernhard sued the tavern owner in California under the California Business and

4    Professions Code, which established a duty of care on such establishments. The trial court

5    dismissed the plaintiff's personal injury complaint against the Nevada tavern because it said

6    Nevada law governed the action since the tort was committed in Nevada, and the California law

7    imposing liability did not apply to the tavern. Nevada did not allow a third party to hold a tavern

8    keeper civilly liable.

9         The Supreme Court of California analyzed the two states' laws. It is the duty of the

10    proponent the law of the foreign state to demonstrate that the foreign state's law would further the

11    interest of the foreign state and should be applied. Bernhard, 16 Cal.3d at 317-18. Under the

12    governmental analysis approach, the court should compare any true conflicts between the states'

13    interests and determine which state's interest would be "more impaired if it's law were not

14    applied." Id., at 320. Thus, the Court found that California's imposition of civil liability would be

15    more impaired since, if not applied, California could not reasonably effectuate its policy if it was

16    unable to extend its regulation to out of state tavern keepers in places where persons were likely

17    to return to California in an intoxicated state.

18         Likewise, here, defendants should be held responsible under California law for their torts,

19    which they directed into the state, and which caused damage here. Just as it was foreseeable the

20    intoxicated driver would drive into California and injure a California resident, defendants could

21    certainly see they would cause damage to a California company when they instituted, then later

22    dismissed, their meritless patent infringement lawsuit. In fact, this was precisely their goal, and

23    California' law, permitting Destiny a remedy for this conduct, should not be impaired.

24         While California has a strong interest in protecting its residents from damage from

25    baseless lawsuits, Ohio has no corresponding interest. The underlying Ohio action had nothing to

26    do with Ohio law—it was a patent infringement case dealing with Federal patent laws and not the

27    laws of any one state. Because the plaintiffs in that action sell their products through distributors

28    in just about every state in the United States, the underlying suit could have literally been filed

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

- 12 -    OPPOSITION TO DEFENDANTS' JOINT MOT
TO DISMISS AND TO TRANSFER VENUE
NO. C07-03117 HRL

1    anywhere. Ohio, therefore, had no interest in the application of its own laws in the underlying

2    litigation, nor does it have any now.

3        The only conceivable interest Ohio has is in the limitation of malicious prosecution suits

4    against its residents. But where, as here, one of those citizens files suit against a resident of

5    California, in violation of California's laws, it is fair to conclude that California's interest in

6    protecting its citizens, and in providing redress for damages done within the state, outweighs the

7    interests of a forum that was merely fortuitously chosen.

8        Even if Ohio were to have an interest in applying its law to this case, the California's

9    interest behind its malicious prosecution torts (also known as the wrongful institution of civil

10   proceedings under the Rest. 2d of Torts § 674) would be severely impaired. The California

11   Supreme Court explained why malicious prosecution actions are available to residents of

12   California:

13           The malicious commencement of a civil proceeding is actionable
             because it harms the individual against whom the claim is made,
14           and also because it threatens the efficient administration of justice.
             The individual is harmed because he is compelled to defend against
15           a fabricated claim which not only subjects him to the panoply of
             psychological pressures most civil defendants suffer, but also to the
16           additional stress of attempting to resist a suit commenced out of
             spite or ill will, often magnified by slanderous allegations in the
17           pleadings. In recognition of the wrong done the victim of such a
             tort, settled law permits him to recover the cost of defending the
18           prior action including reasonable attorney's fees ..., compensation
             for injury to his reputation or impairment of his social and business
19           standing in the community....".

20   Bertero v. National General Corp., 13 Cal. 3d 43, 50-51 (Cal. 1974). There is even dissatisfaction

21   with Ohio's antiquated requirement of a seizure of person or property:

22           The problem for the courts today is whether or not the arrest-or-
             attachment is still a good test. It probably was a good test for its
23           time, because 100 years ago ex parte prejudgment attachment was a
             common practice. If a person was maliciously sued, and his
24           property seized, it was quite literally adding injury to insult. If there
             were no pre-judgment seizure, it was simply just another lawsuit.
25
             Today however, pre-judgment attachments are exceptional, and
26           only done after due process has been complied with. R.C. 2715.
             The attachment-or-arrest standard hardly seems to be a workable
27           test anymore for determining who has, and has not, been injured by
             malicious prosecution. As noted in Pope, supra, at p. 371.
28

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

"The reason for the rule having failed, there is much ground for saying that the rule itself fails."

The reasons that made the attachment-or-arrest standard a useful and workable rule for the 19th century no longer exist. If we live in an age of computerized credit ratings and expensive and time consuming litigation, we ought to adopt a rule or test which accurately reflects the economic reality in which we live. The Restatement Rule, relied on by Justice Douglas in his dissent in Crawford would, for example, provide a better standard, and summary judgment would resolve many case with little judicial effort. The problem of a multiplicity of suits was raised by the majority in Crawford, but as always, the danger of the courts being flooded by litigation is overexaggerated and experience never justifies the dire predictions....

The Civil Rules of procedure have changed a defendant's obligation. Under the old code pleading, a simple demurrer was often sufficient response to a spurious or malicious lawsuit. Under the Civil Rules, a defendant must respond even to a malicious or spurious claim. He must answer, or risk default. He must respond to discovery, and submit to deposition, or be subject to sanctions. He must file counter affidavits to a motion for summary judgment. These are not unreasonable requirements for a defendant in a genuine case.

But if a defendant has been forced to respond to a case maliciously instituted without probable cause, he has been injured and ought to have a remedy.

Simply put, if the Civil Rules expand the duty of defendant to respond, there must be an adequate remedy for the person who has been wrongfully required to meet the duties of defendant.

We, however, in obedience to the decision in Crawford supra, can only deny appellant a remedy for malicious prosecution, and must overrule assignment of error number one and three.

M.A.J. v. Jackson, 1987 Ohio App. LEXIS 8596, *2 (Ohio Ct. App. 1987). Even the legislature in defendant Dauphin's home state of Pennsylvania took steps to remedy the ancient rule by specifically amending their Pennsylvania Consolidated Statute § 8351 to read:

"(b) ARREST OR SEIZURE OF PERSON OR PROPERTY NOT REQUIRED. – The arrest or seizure of the person or property of the plaintiff shall not be a necessary element for an action brought pursuant to this subchapter."

41 Pa. Cons. Stat. §8351(b).

As stated above, Ohio had no interest in the application of its own state laws to the underlying federal patent infringement action. California's policy of providing a way to address

RC1/5005467.1/AG2        - 14 -        OPPOSITION TO DEFENDANTS' JOINT MOT TO DISMISS AND TO TRANSFER VENUE NO. C07-03117 HRL

1 | wrongs done to its residents would be severely impaired by the application of Ohio's limits on

2 | malicious prosecution actions.

3 |       This same analysis is true for Destiny's abuse of process action. The application of Ohio

4 | law would severely impair the policy behind California's abuse of process cause of action. The

5 | crux of the tort is the use of the judicial process for a purpose other than for which it was

6 | designed. See Spellens v. Spellens, 49 Cal.2d 210, 230 (1957). The improper purpose usually

7 | takes the form of a collateral advantage not properly involved in the proceeding itself. Id., at 317.

8 | Whether the underlying action was filed with probable cause or was in proper form is irrelevant

9 | under California law. Id., at 232. Ohio, on the other hand, as stated above, requires the

10 | underlying action to be instituted in proper form with probable cause, but then used for an

11 | improper purpose. Kremer v. Cox, 682 N.E.2d 1006, 1013. (Ohio App. Ct. 1996.) Again, the

12 | purpose of Ohio's policy is an antiquated effort to protect law enforcement officers from

13 | frivolous lawsuits. Regardless, defendants abused the underlying litigation process. For

14 | example, in the underlying litigation, defendants served 1,656 requests for admissions on Destiny.

15 | Complaint ¶ 88. Under the analysis of the two states' policies, as above, California law should

16 | apply. Should the court decide, however, that Ohio law is to be applied, Destiny requests leave to

17 | amend to plead the necessary "probable cause and in proper form" element of the tort of abuse of

18 | process and the "seizure of property" element of the tort of malicious prosecution.

19 | **E.**    **The Action is Currently in the Proper Forum**

20 |       Defendants argue that this action should be transferred to the Northern District of Ohio

21 | under 18 U.S.C. §1404. In support, they refer to the Northern District of Ohio's order of

22 | dismissal in a misleading manner in an effort to characterize Destiny's current claims as fully

23 | considered and fully denied by the Ohio court. Complaint, Exhibit I. There, the Court found that

24 | SGS and Dauphin's voluntary dismissal and covenant not to sue Destiny (filed the same day

25 | Destiny moved for summary judgment on its invalidity counterclaim) stripped the Court of its

26 | jurisdiction to hear their infringement action as well as Destiny's counterclaim for invalidity. Id.,

27 | p. 3. The Court took a year to rule on the motions, filed in September 2005. Id.

28 |       First, Defendants' out of context claim that the Court found Destiny was "not entitled to

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

1    recover its fees and costs incurred in defending the Ohio action" is misleading.  Motion to

2    Dismiss, p. 14  Instead, the Court found the awarding of fees and costs "inappropriate at this

3    time" since it had been divested of its jurisdiction to hear the entire case and it therefore had made

4    no "judgment in favor of [Destiny]" who thus "cannot be found to be the prevailing party in this

5    action." Exhibit I, p. 5  Second, the Court did not find that Destiny was "not entitled" to bring

6    further claims against SGS and Dauphin.  It said that although Destiny discovered evidence of

7    other claims in the months just before it filed its motion for summary judgment, for the same

8    reasons as above, "at this time, it would be inappropriate" to allow Destiny to amend its

9    counterclaims. Id.  Thus, a plain reading of the Court's dismissal order shows that the Court's

10   findings have nothing to do with the actual merits of the action and everything do with the

11   Court's procedural inability to act since SGS and Dauphin had divested the Court of jurisdiction

12   to hear the Destiny's requests.

13        Under section 1404(a) a suit's venue may be transferred "[f]or the convenience of parties

14   and witnesses, in the interest of justice . . . ." 28 USC § 1404(a).  According to the Supreme

15   Court, 28 USC § 1404(a) is intended to place discretion in District Court to decide motions for

16   transfer according to individualized, case-by-case consideration of convenience and fairness by

17   weighing number of case-specific factors. Stewart Organization, Inc. v. Ricoh Corp., 487 U.S. 22,

18   29 (1988).

19        The Court may consider: (1) the location where the relevant agreements were negotiated

20   and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice

21   of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the

22   plaintiff's cause of action in the chosen forum, (6) the differences in the  costs of litigation in the

23   two forums, (7) the availability of compulsory process to compel attendance of unwilling non-

24   party witnesses, and (8) the ease of access to sources of proof. Jones v. GNC Franchising, Inc.,

25   211 F.3d 495, 498-499 (9th Cir. 2000.)  Additionally, the presence of a forum selection clause

26   and any relevant public policy are significant factors in the court's § 1404(a) analysis. Jones, 211

27   F.3d at 499.

28        A transfer will not be ordered simply to make it more convenient for defendant: "The

OPPOSITION TO DEFENDANTS' JOINT MOT
TO DISMISS AND TO TRANSFER VENUE
NO. C07-03117 HRL

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

1    venue transfer provisions of Section 1404(a) are not meant to merely shift the inconvenience to

2    the plaintiff." Reed Elsevier, Inc. v. Innovator Corp. 105 F.Supp.2d 816, 821 (SD OH 2000.)  The

3    moving party has the burden of showing that "the convenience of parties and witnesses" and

4    "interests of justice" require transfer to another district. Commodity Futures Trading Comm'n v.

5    Savage, 611 F.2d 270, 279 (9th Cir. 1979.)

6        Defendants argue that, on balance, the factors weigh in their favor, but they rely on

7    inapplicable law or mischaracterization of the facts.  Defendants rely on Italian Colors Restaurant

8    v. American Express Co., 2003 WL 22682482 (N.D. Cal. 2003) and IBM Credit Corp. v.

9    Definitive Computer Services, Inc., 1996 U.S. Dist. LEXIS 2385 (N.D. Cal. 1996)  Both cases,

10   however, are unlike the action here, because, among other reasons, both involve clear and agreed

11   upon choice of law provisions in the contracts between the parties.  No such situation exists here.

12   Further, defendants also admit that factors such as the "differences in costs of litigation,

13   availability of the compulsory process, and the ease of access to proof[] do not weigh particularly

14   in favor of either location." Motion to Dismiss, p. 16.

15       The first Jones factor, the location where the relevant agreements were negotiated and

16   executed, does not directly apply to this case.  Defendants, however, take the opportunity to argue

17   that most of the conduct complained of occurred in Ohio.  While it is true that demand letters,

18   anticompetitive behavior and the lawsuit originated from Pennsylvania and Ohio, this conduct

19   was all directed to Destiny and to California and the effects to the conduct were felt by Destiny in

20   California.  The damage was suffered here by a California business which was dragged into a

21   foreign court by a foreign defendant.  Thus, the first factor weighs in favor of the case remaining

22   in the forum state, where the conduct was directed and the injuries occurred.

23       Second, for the reasons stated above in Section II. D., the governing law on the tort claims

24   is California, and the state most familiar with the appropriate governing law is the forum state.

25   Thus, this factor weighs in favor of the case remaining in the forum.

26       Third, there is a strong presumption in favor of the first factor, the plaintiffs' choice of

27   forum. Munoz v. UPS Ground Freight, Inc., 2007 U.S. Dist. LEXIS 47537 at *8 (N.D. Cal.

28   2007.)  Destiny resides in the Northern District of California and suffered the damage caused by

OPPOSITION TO DEFENDANTS' JOINT MOT
TO DISMISS AND TO TRANSFER VENUE
NO. C07-03117 HRL

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

1   Defendants' actions here.  Further, defendants reliance on <u>Alltrade v. Uniweld Products, Inc.</u> 946

2   F.2d 622 (9th Cir. 1991) in support of their allegations that Destiny has engaged in forum

3   shopping by filing in its home district, is misplaced.  <u>Alltrade</u> dealt not with forum shopping, but

4   the court's dismissal or stay under the first to file rule when the two parties filed their own

5   trademark related actions just one day apart in California and Florida.  Thus, it is unclear how

6   <u>Alltrade</u> offers support for the proposition that "forum-shopping by the plaintiff is accorded little

7   weight" in a decision to transfer venue.  Motion to Dismiss p. 16  Further, as stated above,

8   Defendants mischaracterize the Northern District of Ohio's ruling dismissing the underlying

9   patent infringement action, issued a year after the parties' cross motions were filed.

10      Destiny located itself in California decades ago and is entitled to the protection of

11  California's laws.  When dragged into a foreign court by foreign defendants on a meritless case,

12  Destiny is permitted to redress the damage done to it with the aid of the laws of its home state.

13      Fourth, the court must consider the respective parties' contacts with the forum.  Destiny is

14  a California defendant, located in the district, and obviously has extensive contacts in the forum.

15  Destiny markets, manufactures and sells its products here.  Defendants contacts with California

16  are also extensive.  Defendants also market and sell their products here.  Each defendant has a

17  sales team and number of distributors dedicated to making sales of their products in California.

18  (See Exhibits B and C attached to the Declaration of Amy K. Gruber, ¶¶ 2-3; Declaration of Guy

19  Calamia, ¶¶ 6-7, 9.)  Each defendant regularly attends trade shows in California.  (Declaration of

20  Guy Calamia, ¶¶ 8, 10.)  Thus, defendants have purposely availed themselves of the benefits of

21  doing business in California and of the protection of California's laws, and should therefore be

22  accountable to the laws of California.

23      Fifth, the court evaluates the contacts relating to the plaintiff's cause of action in the

24  chosen forum.  Again, defendants have extensive contacts here and chose to do significant

25  business here.  When they forced one of their competitors, Destiny, into a foreign court on a

26  baseless infringement suit, they needlessly targeted Destiny for no other reason than to do damage

27  to a competitor's finances and reputation.  The torts and antitrust claim were committed in the

28  forum state, and the action should therefore remain here.

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

OPPOSITION TO DEFENDANTS' JOINT MOT
TO DISMISS AND TO TRANSFER VENUE
NO. C07-03117 HRL

1    The sixth factor, the relative costs of litigating in the two forums is included in the

2    analysis of convenience of the parties. Munoz, 2007 U.S. Dist. LEXIS at *10. Defendant admits

3    that the differences in costs of litigation is a neutral consideration.

4    Defendants further admit that the seventh and eighth factors are also neutral. The

5    compulsory process to compel attendance of unwilling non-party witnesses is equally available to

6    both parties. The eighth factor—the ease of access to sources of proof—is admitted by

7    defendants to not weigh in favor of retention or transfer.

8    Finally, the relevant public policy is also a factor to be considered under Jones. Jones,

9    211 F.3d at 499. As stated in the section regarding the choice of law, California provides strong

10    protection to its residents against the wrongful institution of civil proceedings. In Bertero v.

11    National General Corp., 13 Cal. 3d 43 (Cal. 1974), the California Supreme Court stated "[i]n

12    recognition of the wrong done the victim of such a tort, settled law permits him to recover the

13    cost of defending the prior action including reasonable attorney's fees …, compensation for injury

14    to his reputation or impairment of his social and business standing in the community." Bertero, 13

15    Cal. 3d at 50.

16    Further, the California Supreme Court recently acknowledged United States Supreme

17    Court law that in the federal system, companies who conduct business in other states should make

18    itself aware of and comply with the policies of that state because those policies may be applied to

19    those conducting business there. Kearney v. Salomon Smith Barney, Inc., 39 Cal. 4th 95, 105

20    (2006.) Thus, because California has strong and specific policies protecting its residents from the

21    wrongful institution of civil proceedings, Destiny is deserving of such a remedy.

22    On balance, when the full range of facts are considered, the current forum is the proper

23    forum. Defendants have not made the requisite showing that transfer would promote "the

24    convenience of parties and witnesses" or "the interests of justice." Under the court's

25    discretionary role, defendants' request to transfer this action should be denied.

26    ///

27    ///

28    ///

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

OPPOSITION TO DEFENDANTS' JOINT MOT
TO DISMISS AND TO TRANSFER VENUE
NO. C07-03117 HRL

1

## IV.

2

## CONCLUSION

3    For the foregoing reasons, Destiny respectfully requests the court deny defendants'

4    motion in its entirety.

5    Dated: August 28, 2007                    Respectfully submitted,

6                                              ROPERS, MAJESKI, KOHN & BENTLEY

7

8    By: _____

9        ROBERT P. ANDRIS
         LAEL D. ANDARA

10       AMY K. GRUBER
         Attorneys for Plaintiff

11       DESTINY TOOL, a California corporation

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

OPPOSITION TO DEFENDANTS' JOINT MOT
TO DISMISS AND TO TRANSFER VENUE
NO. C07-03117 HRL