H. ALAN ROTHENBUECHER (pro hac vice)
T. EARL LeVERE (pro hac vice)
SCHOTTENSTEIN, ZOX & DUNN CO., LPA
250 West Street, Suite 700
Columbus, Ohio 43215
Phone: (614) 462-2700
Fax: (614) 228-4847
E-Mail: arothenbuecher@szd.com
E-Mail: elevere@szd.com

Attorneys for Defendants
SGS TOOLS COMPANY and
DAUPHIN PRECISION TOOL, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DESTINY TOOL, a California corporation,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>SGS TOOLS COMPANY, an Ohio corporation, DAUPHIN PRECISION TOOL, LLC, a Pennsylvania limited liability company, and WELDON TOOL COMPANY, an Ohio corporation,<br><br>　　　　Defendants. | Case No. C07-03117 JF<br><br>**DEFENDANTS' JOINT REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS OR TRANSFER**<br><br>Date: September 28, 2007<br>Time: 9:00 a.m. |

{H1017261.3}

# TABLE OF CONTENTS

Page

I. INTRODUCTION ..................................................................................................... 1

II. LAW AND ARGUMENT SUPPORTING DISMISSAL ........................................... 2

    A. Federal Law Preempts Plaintiff's Abuse of Process Claim. ............................ 2

    B. Plaintiff's Claims for Malicious Prosecution and Abuse of Process Fail. ....................................................................................................... 2

        1. The Government Interest Analysis Compels Ohio Law. ...................... 2

        2. Plaintiff Concedes That Counts I and II Fail Under Ohio Law. .............................................................................................. 5

        3. The Ohio Action Did Not Terminate in Plaintiff's Favor as Required to State a Claim for Malicious Prosecution (Count I). ......................................................................................................... 5

        4. Plaintiff Fails to State a Claim for Abuse of Process Even Under California Law. ........................................................................ 6

    C. Plaintiff's Antitrust Counts Were Compulsory Counterclaims to the Ohio Action. ................................................................................................. 7

    D. The Doctrine of *Res Judicata* Bars Plaintiff's Antitrust Claims. ......................... 9

        1. There is an identity of claims. ............................................................... 9

        2. The Dismissal with Prejudice of Defendants' Complaint in the Ohio Action Constitutes a Final Judgment on the Merits. ................. 10

    E. The Four–Year Statute of Limitations Bars Plaintiff's Antitrust Claims. ............................................................................................................ 10

III. THIS ACTION SHOULD PROCEED IN THE NORTHERN DISTRICT OF OHIO. ....................................................................................................................... 11

IV. CONCLUSION .......................................................................................................... 13

1  **TABLE OF AUTHORITIES**

2                                                                                                              **Page**

**State Cases**

Baldwin v. Iowa State Traveling Men's Ass'n, 283 U.S. 522, 525 (1931) .................................. 9

Competitive Technologies v. Fujitsu Limited, 286 F. Supp. 2d 1118, 1140 ............................... 4

Crawford v. Euclid Nat'l Bank, 19 Ohio St.3d 135, 139 (1985) .................................................. 3

DEI Headquarters, Inc., 2007 WL 951122 (S.D. Cal. Mar. 6, 2007) ........................................... 7

DEI Headquarters, Inc., 2007 WL 951122, at *2 .......................................................................... 9

Denham v. Farmers Ins. Co., 213 Cal. App. 3d 1061 (Cal. Ct. App. 1989) ................................. 3

Engel v. CBS Incorporated, 981 F.2d 1076 (9th Cir. 1992) .......................................... 2, 3, 4, 13

Engel v. CBS, Inc., 886 F. Supp. 728, 732 (C.D. Cal. 1995) ..................................................... 13

Headwaters, Inc. v. U.S. Forest Serv., 399 F.3d 1047, 1052 (9th Cir. 2005) ............................. 10

Hells Canyon Preserv. Council v. U.S. Forest Serv., 403 F.3d 683 (9th Cir. 2005) .................. 10

Hurtado v. Superior Court, 11 Cal. 3d 574, 579 (1974) ............................................................... 3

Hyrdanautics v. FilmTec Corp., 70 F.3d 533 (9th Cir. 1995) ...................................................... 7

Jones v. GNC Franchising, Inc., 311 F.3d 495 (9th Cir. 2000) ................................................. 12

Kelly v. Whiting, 17 Ohio St.3d 91, 94 (1985) ............................................................................. 3

Klaxon v. Stentor Electric Mfg. Co., 313 U.S. 487, 491 (1941) .................................................. 2

Lee v. American Airlines, 2007 WL 2212907, at *1 (N.D. Cal. July 31, 2007) .......................... 9

Lewis Mfg. Co. v. Chisholm-Ryder Co., 82 F.R.D. 745, 749 (W.D. Pa. 1979) ........................... 8

Midwest Indus., Inc. v. Karavan Trailers, Inc., 175 F.3d 1356, 1358 (Fed. Cir. 1999) ............................................................................................................................ 2

Paulo v. Bepex Corp., 792 F.2d 894, 895 (9th Cir. 1986) ............................................................ 3

Pochiro v. Prudential Ins. Co. of Amer., 827 F.2d 1246, 1249 (9th Cir. 1987) ........................ 4, 7

R.J.R. Services, Inc. v. Aetna Cas. & Surety Co., 895 F.2d 279, 282 n. 4 (7th Cir. 1989) ............................................................................................................................ 4

Reich v. Purcell, 67 Cal. 2d 551, 554 (1967) ................................................................................ 3

Sanders v. First Nat'l Bank & Trust Co., 936 F.2d 273 (6th Cir. 1991) ...................................... 7

Stratosphere Litig. LLC v. Grand Casinos, Inc., 298 F.3d 1137, 1143 (9th Cir. 2002) ............................................................................................................................ 9

DEFENDANTS' JOINT REPLY MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS OR TRANSFER

{H1017261.3 }

Tahoe-Sierra Pres. Council v. Tahoe Reg'l Planning Agency, 322 F.3d 1064, 1077
    (9th Cir. 2003) .................................................................................................. 9, 10

United States ex rel. Barajas v. Northrop Corp., 147 F.3d 905 (9th Cir. 1998)......................... 10

USM Corp. v. SPS Technologies, Inc., 102 F.R.D. 167, 170 (N.D. Ill. 1984) ............................. 8

Yaklevich v. Kemp, Schaeffer & Rowe Co., LPA, 68 Ohio St. 3d 294, 298 (1994) .................... 3

Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 338 (1971) .............................. 11

**Statutes**

15 U.S.C. § 15b ............................................................................................................................ 11

28 U.S.C. § 1406(a) ..................................................................................................................... 12

Fed. R. Civ. P. 13(a) ...................................................................................................................... 7

(iii)
DEFENDANTS' JOINT REPLY MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS OR TRANSFER
{H1017261.3 }

## I. INTRODUCTION

Plaintiff's Opposition to Defendants' Joint Motion to Dismiss Plaintiffs' Complaint and to Transfer Venue (Doc. 25, hereinafter "Memo. in Opp.") shows that Plaintiff is seeking to assert claims and obtain remedies in this Court that it was previously denied in the Ohio Action. Rather than appealing the Ohio Court's dismissal of Plaintiff's claims and the denial of Plaintiff's request for attorneys' fees and leave to amend its Counterclaim, Plaintiff seeks to attack the Ohio Court's ruling collaterally by filing this action, hoping to obtain a more favorable result in its native forum.

Toward this end, as it must, Plaintiff asks this Court to measure the out-of-state litigation conduct of two out-of-state defendants under the substantively less-stringent rubric of California law. Plaintiff entirely disregards the interest that Ohio has in making its courts accessible to Ohio litigants and in regulating the conduct of those who litigate within Ohio's boundaries. Plaintiff also bootstraps its argument against preemption of its abuse of process claim (Count II) by refusing to recognize that all of Defendants' challenged conduct depends up a finding that Defendants committed fraud on the Patent Office. Without such fraud, there would be no basis to criticize Defendants' filing of the Ohio Action. Thus, Plaintiff premises its entire abuse of process claim upon conduct before the Patent Office and, accordingly, federal preemption precludes this claim.

While conceding that there is substantial overlap in the evidence and facts underlying its California claims and the dismissed Ohio claims, Plaintiff somehow denies that its California claims are transactionally related to the Ohio Action, even though Plaintiff actually attempted to assert its antitrust claims in the Ohio Action. Plaintiff also asks this Court to ignore the fact that Plaintiff failed to meet the statute of limitations for its antitrust claims by waiting over four years to assert them, despite affirmatively arguing elsewhere in its brief that the cease and desist letter that triggered the statute of limitations adversely affected the Plaintiff.

Ultimately, Plaintiff has failed to overcome all of Defendants' challenges to Plaintiff's claims. Accordingly, this Court should dismiss Plaintiff's Complaint in its entirety. Alternatively, because the Ohio district court is more familiar with applicable Ohio law, and because the interests of justice and judicial economy favor having the Ohio district court review actions that took place before it, this

Court should transfer this action to the Northern District of Ohio rather than allow Plaintiff's forum shopping efforts to succeed.

## II. LAW AND ARGUMENT SUPPORTING DISMISSAL

### A. Federal Law Preempts Plaintiff's Abuse of Process Claim.

The Federal Circuit has unequivocally held that the federal patent law preempts state law claims for abuse of process arising out of conduct before the Patent and Trademark Office ("PTO"). Abbott Laboratories v. Brennan, 952 F.2d 1346, 1355 (Fed. Cir. 1991); see also Midwest Indus., Inc. v. Karavan Trailers, Inc., 175 F.3d 1356, 1358 (Fed. Cir. 1999) (finding that Federal Circuit law controls preemption issue with respect to patents). Plaintiff's sole response is that its claims are not preempted because its claim "is based upon [Defendants'] institution of a patent infringement lawsuit in bad faith, for anticompetitive reasons" (Memo. in Opp. at 8-9) rather than upon conduct before the PTO.

The allegations in Plaintiff's Complaint belie this argument, however. Plaintiff dedicates nearly six full pages of its Complaint to Defendants' allegedly fraudulent activity in the PTO. See Complaint at ¶¶ 32-63. Moreover, it is precisely this allegedly fraudulent activity in the PTO that makes Defendants' alleged activity in the marketplace, including maintaining the Ohio Action, problematic in Plaintiff's eyes. But for the allegedly wrongful conduct before the PTO, Plaintiff would have no basis to challenge the propriety the Ohio Action. Plaintiff's bases its entire abuse of process claim on the assertion that Defendants defrauded the PTO and knew that the '009 Patent was procured by fraud. This is conduct entirely before the PTO, without which there would be no basis to assert that the Ohio Action was an abuse of process. This Court should reject Plaintiff's attempts to bootstrap conduct before the PTO to the Ohio Action and should find that federal patent law preempts Plaintiff's claim for abuse of process.

### B. Plaintiff's Claims for Malicious Prosecution and Abuse of Process Fail.

#### 1. The Government Interest Analysis Compels Ohio Law.

A federal court considering state law claims must apply the choice of law rules of the state in which it sits. Engel v. CBS Incorporated, 981 F.2d 1076, 1080 (9th Cir. 1992)(citing Klaxon v. Stentor Electric Mfg. Co., 313 U.S. 487, 491 (1941)). California follows the governmental interest

1 approach to choice of law. Hurtado v. Superior Court, 11 Cal. 3d 574, 579 (1974). Under the governmental interest approach, the Court must analyze "the respective interests of the states involved … the objective of which is to 'determine the law that most appropriately applies to the issue involved.'" Id. (quoting Reich v. Purcell, 67 Cal. 2d 551, 554 (1967)).

An examination of the laws of Ohio and California with respect to claims for abuse of process and malicious prosecution reveals there is a "true conflict" between the two states. See, Denham v. Farmers Ins. Co., 213 Cal. App. 3d 1061 (Cal. Ct. App. 1989)(initial inquiry is whether conflict exists between states). Under Ohio law, plaintiffs alleging abuse of process must establish "that a legal proceeding has been set in motion in proper form and with probable cause. Yaklevich v. Kemp, Schaeffer & Rowe Co., LPA, 68 Ohio St. 3d 294, 298 (1994). Plaintiffs alleging malicious prosecution must establish seizure of plaintiff's person or property during the course of the prior proceedings. Crawford v. Euclid Nat'l Bank, 19 Ohio St.3d 135, 139 (1985); Kelly v. Whiting, 17 Ohio St.3d 91, 94 (1985). For purposes of this Motion, Defendants concede that California law does not require such showings.

Because a true conflict exists, the Court must conduct a "comparative impairment" analysis. Paulo v. Bepex Corp., 792 F.2d 894, 895 (9th Cir. 1986). Under this approach, the Court examines "which state's interest would be more impaired if its policy were subordinated to the policy of the other state." Denham, 213 Cal. App. 3d at 1066. Plaintiff argues that "California has a strong interest in protecting its residents from damage from baseless lawsuits." Memo. in Opp. at 12. Then, without any analysis of Ohio's interest, Plaintiff summarily concludes, "Ohio has no corresponding interest." Id. But, Ohio's interest in having its malicious prosecution standards applied to cases being litigated within its boundaries is more compelling than California's general interest in protecting its citizens and in allowing recovery for legal claims under California law. See Engel, 981 F.2d at 1080-1082.

For example, in Engel, the Ninth Circuit addressed the issue of whether California law applied to a malicious prosecution claim where the cause of action upon which the malicious prosecution claim was based was filed and litigated in a different state. The court stated:

> The cause of action upon which the malicious prosecution claim is based was filed and litigated in New York. New York law restricts relief for malicious prosecution by requiring special-injury. If New York litigants can avoid this requirement, and

> successfully sue other New York litigants for malicious prosecution by choosing a different forum then the efficacy of New York's special-injury requirement will be undercut. New York seeks to control the number of malicious prosecution actions filed against New York litigants by imposing a stringent special-injury requirement. If a plaintiff can circumvent this requirement by filing his or her claim in a different forum, New York's policy of limited malicious prosecution actions, based on New York litigation will be seriously impaired.

Engel, 981 F.2d at 1081-1082. The Ninth Circuit concluded that New York's interest in having its malicious prosecution standards applied to cases being litigated within its boundaries was more compelling than California's general interest in protecting its citizens and in allowing recovery for legal claims under California law. Id. 1082. See also, R.J.R. Services, Inc. v. Aetna Cas. & Surety Co., 895 F.2d 279, 282 n. 4 (7th Cir. 1989) (interest of the state where the plaintiff resides is not more significant than the state where the underlying litigation was prosecuted).

Pursuant to the Ninth Circuit's precedent, this Court should apply Ohio law to Plaintiff's abuse of process and malicious prosecution claims. Plaintiff cannot be allowed to circumvent Ohio's seizure of property requirement by filing this action in California. Otherwise, the Court curtails an Ohio litigant's ability to bring suit in Ohio by subsequently subjecting them to suit under a less stringent malicious prosecution standard. Accordingly, Plaintiff's claim for malicious prosecution should be dismissed for failure to allege a cognizable seizure of property.

Similarly, Ohio's interest in having its abuse of process standards applied to cases being litigated within its boundaries is more compelling than California's general interest in protecting its citizens and in allowing recovery for legal claims under California law.[1] This Court should not allow Plaintiff to circumvent Ohio's "proper form and probable cause" requirement simply by filing its action in California rather than in Ohio where the alleged abuse occurred. Therefore, this Court should reject Plaintiff's arguments and apply Ohio law to Plaintiff's claims for abuse of process and malicious prosecution.

---

[1] Even if this Court chooses to apply California law to Plaintiff's abuse of process claim, which it should not, Plaintiff's claim for abuse of process must be dismissed. In the Ninth Circuit, a claim for abuse of process is a compulsory counterclaim in the action alleged to be abusive. See, Pochiro v. The Prudential Ins. Co., 827 F.2d 1246 (9th Cir. 1987); Competitive Technologies v. Fujitsu Limited, 286 F. Supp. 2d 1118, 1140 (recognizing that that abuse of process is a compulsory counterclaim in the same judicial action in which process is alleged to have been abused). Because Plaintiff failed to assert abuse of process as a counterclaim in the Ohio Action, the claim is barred under Rule 13(a).

(4)

### 2. Plaintiff Concedes That Counts I and II Fail Under Ohio Law.

Plaintiff bases its entire opposition to the dismissal of Counts I and II (malicious prosecution and abuse of process) on the hope that California law applies, notwithstanding that the accused conduct occurred in Ohio in the context of litigation in an Ohio federal court under Ohio's rules. Plaintiff, however, admits that Counts I and II fail to state a claim under Ohio law. Specifically, Plaintiff states, "Should the Court decide, however, that Ohio law is to be applied, Destiny requests leave to amend to plead the necessary 'probable cause and in proper form' element of the tort of abuse of process [Count II] and the 'seizure of property' element of the tort of malicious prosecution [Count I]." Memo. in Opp. at 15. Not only is such an admission as to the deficiency of its pleadings fatal to its claims, it also cannot be cured by the requested amendment because Plaintiffs' detailed factual allegations do not even hint at or suggest the requisite "seizure of property" or "probable cause and in proper form." Accordingly, given the applicability of Ohio law to these claims, this Court should dismiss Counts I and II of Plaintiff's Complaint.

### 3. The Ohio Action Did Not Terminate in Plaintiff's Favor as Required to State a Claim for Malicious Prosecution (Count I).

Plaintiff's malicious prosecution claim even fails under California's more generous standard because Plaintiff cannot allege that the Ohio Action terminated in its favor. See <u>Hydranautics v. FilmTec Corp.</u>, 204 F.3d 880, 886 (9th Cir. 2000) (requiring that the prior action be terminated in the claimant's favor). Not only did the Ohio Action terminate with the dismissal of Plaintiff's claims over Plaintiff's opposition, the Ohio court specifically stated that there was no judgment in Plaintiff's favor and specifically found that Plaintiff was not a prevailing party in that action. Order and Entry, dated September 29, 2006, at 5 (copy attached hereto as Exhibit 1). Plaintiff did not appeal this decision and therefore cannot now say that the Ohio Action terminated in its favor.

Even Plaintiff argues that it was not a prevailing party in the Ohio Action. In opposing Defendants' *res judicata* argument, Plaintiff states, "[T]he Court's findings have nothing to do with the actual merits of the action and everything to do with the Court's procedural inability to act since SGS and Dauphin had divested the Court of jurisdiction to hear the[sic] Destiny's requests." Memo. in Opp. at 16. Plaintiff cannot have it both ways. Either there was no decision in Plaintiff's favor and

Plaintiff's malicious prosecution claim fails or there was a decision and *res judicata* bars all of Plaintiff's claims.[2]

### 4. Plaintiff Fails to State a Claim for Abuse of Process Even Under California Law.

Count II of Plaintiff's Complaint even fails to state a claim for abuse of process under California law. The California Supreme Court has noted:

> The essential elements of abuse of process, as the tort has developed, have been stated to be: first, an ulterior purpose, and second, a willful act in the use of the process not proper in the regular conduct of the proceeding. **Some definite act or threat not authorized by the process**, or aimed at an objective not legitimate in the use of the process, is required; and **there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions.** The improper purpose usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property or the payment of money, by the use of the process as a threat or a club. There is, in other words, a form of extortion, and **it is what is done in the course of negotiation, rather than the issuance or any formal use of the process itself**, which constitutes the tort.

Spellens v. Spellens, 49 Cal. 2d 210, 232-233 (Cal. 1957) (emphasis added; citing Prosser on Torts, (2d ed.) p. 667). Plaintiff, however, does not allege any "willful" or "definite act" "not authorized by the process." There is no allegation of "coercion," "surrender of property," "extortion," or even overreaching negotiations. Rather, Plaintiff has simply and repeatedly alleged only that Defendants acted with an "ulterior purpose" in bringing its action and then litigated its suit aggressively. At worst, in the words of the California Supreme Court, such conduct amounts only to "carrying out the process to its authorized conclusion, even though with bad intentions." That alone is not sufficient to state a claim for abuse of process even under California law.[3]

---

[2] Defendants also note that the Ohio court only ruled that it lacked subject-matter jurisdiction to hear Plaintiff's declaratory judgment counterclaim. At the time of its decision, the Ohio court still had jurisdiction to act in that case. Indeed, the court dismissed Defendants' patent infringement claims, denied Plaintiff's request for attorneys' fees, and denied Plaintiff leave to amend.

[3] The closest Plaintiff comes to identifying a specific "act" is its repeated reference to Defendants' "1,656 requests for admissions." See e.g., Memo. in Opp. at 15. While this is a surprising number, Plaintiff says nothing about the substance of the requests nor even alleges that they were somehow beyond the scope of discovery in the Ohio Action. Plaintiff also did not seek a protective order from the Ohio court and instead responded. Certainly that court was in a better position to determine whether the volume or substance of the requests was somehow inappropriate.

**C.   Plaintiff's Antitrust Counts Were Compulsory Counterclaims to the Ohio Action.**

This case had its beginnings in the Northern District of Ohio as a suit against Plaintiff for patent infringement. Complaint at ¶ 81. Plaintiff filed an Answer in the Ohio Action denying Defendants' material allegations and asserted a counterclaim seeking declaratory judgment that the '009 Patent was invalid. Id. at ¶¶ 82, 93, 98. Plaintiff did not assert a counterclaim for antitrust violations.[4]

Approximately ten months after the Ohio Court denied Plaintiff's request for leave to amend its counterclaim, Plaintiff initiated this action alleging, among other things, the very claim that it previously sought to assert in Ohio. Those antitrust claims were compulsory counterclaims in the Ohio Action, which Plaintiff waived by failing to assert in the Ohio Action and by not appealing the Ohio court's denial of Plaintiff's request for leave to amend its Counterclaim.

In determining if a counterclaim is compulsory, both the Sixth and Ninth Circuits apply the "logical relationship test." See, Sanders v. First Nat'l Bank & Trust Co., 936 F.2d 273 (6th Cir. 1991); DEI Headquarters, Inc. v. Omega Research and Development, Inc., 2007 WL 951122 (S.D. Cal. Mar. 6, 2007) (citing Pochiro v. Prudential Ins. Co. of Amer., 827 F.2d 1246, 1249 (9th Cir. 1987)). However, the Ninth Circuit has held that a claim that patent infringement litigation violated an antitrust statute is a permissive counterclaim. See, Hyrdanautics v. FilmTec Corp., 70 F.3d 533 (9th Cir. 1995). Thus, Plaintiff concludes that because the claims for antitrust violations are permissive under Ninth Circuit law, Plaintiff did not waive its antitrust claims by failing to raise those claims in the Ohio Action. Plaintiff is wrong.

The Federal Circuit, which maintains exclusive jurisdiction over appeals of issues of patent law, has found that such claims are compulsory counterclaims. In Genentech, Inc. v. Regents of the University of California, the Federal Circuit affirmed an Indiana District Court's ruling that Sherman Act claims were compulsory counterclaims to the underlying action for patent infringement.

---

[4] Over two years later, Plaintiff did request the Ohio court to allow it to amend its counterclaim. Plaintiff's proposed Amended Counterclaim contained a cause of action for antitrust violations under Section 2 of the Sherman Act. The court in the Ohio Action denied Plaintiff leave to amend stating that the action had been pending for over two years and that Plaintiff had ample opportunity to amend the counterclaim earlier to assert a claim other than one for declaratory judgment, but chose not to do so within the time allotted by the court. Plaintiff did not appeal this decision.

(7)

Genentech, Inc. v. Regents of the University of California, 143 F.3d 1446, 1456 (Fed. Cir. 1998). There, the Federal Circuit noted:

> In the case at bar, the district court observed that the claims and counterclaims all flow from the charge of patent infringement. Although antitrust violations involve a different body of law and different remedies, the underlying event is the validity and infringement of the patent. . . .
>
> The dominant criterion for deciding whether a counterclaim is compulsory is not whether additional evidence would be required to prove the counterclaim; it is whether, in the interest of judicial economy, the causes arose out of the same transaction or occurrence and should reasonably be litigated in the same suit.

Id. (stating also that "[t]he scope of 'transaction or occurrence' is liberally interpreted, as the court determines whether there is a logical relationship between the claim in suit and the counterclaim.").[5]

Under principles of judicial economy and comity, the question of whether the claims for antitrust violations were compulsory counterclaims in the Ohio Action is governed by the law of the Sixth Circuit, where the original action was pending and where they would have been counterclaims had Plaintiff asserted them (as it tried, albeit too late).[6] Defendants did not commence their action in the Ninth Circuit, so the question of whether the claims would have been permissive or compulsory here is not probative. Because this Court should find such claims are compulsory counterclaims under Sixth Circuit law, Plaintiff has waived its right to assert those counterclaims, and the antitrust claims in this Court are now moot. DEI Headquarters, Inc., 2007 WL 951122, at *2. Any other result (i.e., applying the law of the Ninth Circuit) would only encourage litigants to engage in forum shopping for a court that will allow them to litigate claims that they previously failed to bring in a timely manner. Such a result is contrary to public policy which dictates that there be an end to litigation. Baldwin v.

---

[5] While the Sixth Circuit Court of Appeals is silent on the specific issue, several courts in addition to the Federal Circuit have also found, under the "logical relationship" test, that antitrust and fraud claims are "logically related" to patent infringement claims. See, e.g., USM Corp. v. SPS Technologies, Inc., 102 F.R.D. 167, 170 (N.D. Ill. 1984) (holding that the antitrust claims should have been asserted as compulsory counterclaims in the earlier action, and that the failure to do so rendered the claims forever barred); Lewis Mfg. Co. v. Chisholm-Ryder Co., 82 F.R.D. 745, 749 (W.D. Pa. 1979) (holding that "because of its close identity of factual and legal issues with those presented by the [prior] patent infringement action, [plaintiff's] antitrust counterclaim is 'logically related' ... and this must be viewed as a compulsory counterclaim to [defendant's prior] patent infringement action.").

[6] As discussed in FN 4, the Ohio District Court denied Plaintiff's request to amend its Counterclaim in the Ohio Action by Order and Decision dated September 29, 2006. Plaintiff did not exercise its right to appeal that Order.

Iowa State Traveling Men's Ass'n, 283 U.S. 522, 525 (1931). Accordingly, Plaintiff's antitrust claims are barred under Rule 13(a).[7]

### D.    The Doctrine of *Res Judicata* Bars Plaintiff's Antitrust Claims.

Even if Plaintiff's claims under the Sherman Act (Counts III and IV) were only permissive counterclaims in the Ohio Action, the doctrine of *res judicata* precludes Plaintiff from asserting those claims here because Plaintiff <u>could have</u> asserted those claims in the Ohio Action had it made a timely request to do so. In the Ninth Circuit, three elements are required for a successful *res judicata* defense: (1) an identify of claims; (2) a final judgment on the merits; and (3) privity between the parties. Tahoe-Sierra Pres. Council v. Tahoe Reg'l Planning Agency, 322 F.3d 1064, 1077 (9th Cir. 2003) (citing Stratosphere Litig. LLC v. Grand Casinos, Inc., 298 F.3d 1137, 1143 (9th Cir. 2002). Because the parties in the instant action and the Ohio Action are identical, the only issues are whether there is an identity of claims and whether there was a final judgment on the merits.

#### 1.    There is an identity of claims.

A court considers four factors in determining whether there is an identity of claims: (1) whether the rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts. Lee v. American Airlines, 2007 WL 2212907, at *1 (N.D. Cal. July 31, 2007).

The last criteria – whether the two suits arise out of the same transactional nucleus of facts – is the most important. Id. (citing Headwaters, Inc. v. U.S. Forest Serv., 399 F.3d 1047, 1052 (9th Cir. 2005). Defendants concede that the instant action sets forth new claims against Defendants; however, newly articulated claims based on the same nucleus of facts may still be subject to a *res judicata* finding if the claims could have been brought in the earlier action. Tahoe-Sierra, 322 F.3d at 1078. In United States ex rel. Barajas v. Northrop Corp., 147 F.3d 905 (9th Cir. 1998), the court stated:

---

[7] Plaintiff argues in its Memorandum that "[a] counterclaim for antitrust could not have been properly asserted in the previous action." Memo. in Opp. at 4. Plaintiff appears to speak out of both sides of its mouth on this issue, however, given that Plaintiff did in fact seek to assert an antitrust claim in the Ohio Action, which was based in part on Defendants' filing of the Ohio Action. See Plaintiff's Proposed Amended Counterclaim at ¶¶ 54, 56-69.

> Res judicata bars relitigation of all grounds of recovery that were asserted, or could have been asserted, in a previous action between the parties, whether the previous action was resolved on the merits. **It is immaterial whether the claims asserted subsequent to the judgment were actually pursued in the action that led to the judgment; rather, the relevant inquiry is whether they could have been brought.**

Id. at 909 (emphasis added; internal citations omitted).

In this case, the relevant "transactional nucleus of facts" governing the claims that could have been brought include facts that Plaintiff needs to establish for its antitrust claims. Indeed, Plaintiff admitted that it could have asserted its antitrust claims in the Ohio Action when it submitted its proposed Amended Counterclaim as Exhibit W to its Memorandum of Points and Authorities in Support of its Objection and Opposition to [Defendants'] Motion to Dismiss with Prejudice (copy attached hereto as Exhibit 2). In that amended counterclaim, Plaintiff specifically set forth a cause of action for "Violations of Section Two of the Sherman Act (15 U.S.C. §2)." Plaintiff cannot now argue that its antitrust claims are unrelated to the underlying patent infringement claims.

### 2. The Dismissal with Prejudice of Defendants' Complaint in the Ohio Action Constitutes a Final Judgment on the Merits.

Defendants' claims for patent infringement were dismissed *with prejudice* by the Ohio District Court. The dismissal of an action with prejudice is a complete adjudication of the issues presented by the pleadings and is a bar to further action between the parties. Schwartz v. Follodor, 767 F.2d 125, 129 (5th Cir. 1985). Similarly, in Hells Canyon Preserv. Council v. U.S. Forest Serv., 403 F.3d 683 (9th Cir. 2005), the Court stated that "final judgment on the merits is synonymous with dismissal with prejudice." Id. at 686. Thus, all three requirements for application of *res judicata* are satisfied because Plaintiff could have, and should have, brought claims for antitrust violations as counterclaims in the Ohio Action. *Res judicata* now bars these claims. Accordingly, this Court should preclude the Plaintiff from obtaining a "second bite at the apple" and litigating its antitrust claims in this Court.[8]

### E. The Four–Year Statute of Limitations Bars Plaintiff's Antitrust Claims.

Section 15b of Title 15 affords an antitrust plaintiff a four-year statute of limitations. 15 U.S.C. § 15b. Plaintiff failed to satisfy that statute of limitations because Plaintiff failed to assert its

---

[8] The Ohio court also ruled that "doctrines of collateral estoppel and *res judicata*" would apply as a result of its ruling. Order and Entry at 5 (attached hereto as Exhibit 1).

(10)

DEFENDANTS' JOINT REPLY MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS OR TRANSFER

{H1017261.3}

antitrust claims within four years of the June 9, 2003 cease and desist letter by which Defendants first asserted the '009 Patent against Plaintiff. Such failure is fatal to its antritrust claims, notwithstanding Plaintiff's creative effort to argue that it was Defendants' alleged "institution of a patent infringement proceeding in bad faith and the voluntary withdrawal of it that gave rise to and caused antitrust damage to Destiny." Memo. in Opp. at 3. The reality is that a cause of action under the antitrust laws accrues when the defendant "commits an act that injures a plaintiff's business." Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 338 (1971).

Taking Plaintiff's own allegations as true, Defendants' June 9, 2003, cease and desist letter satisfies this requirement. The letter challenged Plaintiff's product, which caused Plaintiff to review the issue internally as well as, presumably, with outside legal counsel, costing time, resources, and expense. It also caused Plaintiff to submit a product sample to Defendants for analysis. Complaint at ¶ 79. Furthermore, Plaintiff alleges that Defendants engaged in similar threatening and damaging activity within the end-mill industry since as early as 1998. Complaint at ¶¶ 68 – 75. Given this alleged "industry-wide" abusive and bad faith anticompetitive activity by Defendants since at least 1998, Plaintiff's statute of limitation began to run on June 9, 2003, when it received Defendants' cease and desist letter.[9] Because Plaintiff failed to assert its antitrust claims within four years of its receipt of the cease and desist letter, the statute of limitations now bars Counts I and II of Plaintiff's Complaint.

### III. THIS ACTION SHOULD PROCEED IN THE NORTHERN DISTRICT OF OHIO.

Notwithstanding the fact that Plaintiff is now suing Defendants on claims that it previously sought to assert in Ohio arising out of two years of litigation that took place in Ohio, Plaintiff argues that its claims are more appropriately venued here. Distilled to its essentials, Plaintiff's entire venue argument is premised on two notions: (1) Plaintiff is a California resident, and (2) Plaintiff chose to file suit here. From these premises, Plaintiff concludes that: (a) Defendants' conduct in the Ohio Action was directed at California; (b) California law controls this action and therefore this Court is

---

[9] When opposing Defendants' arguments to transfer this case to the Northern District of Ohio, Plaintiff alleges that the effects of the "demand letters" "were felt by Destiny in California." Memo. in Opp. at 17. If there were any actionable effects of the demand letters for Plaintiff to feel (as Plaintiff asserts to support its venue argument), those "effects" must have injured Plaintiff's business and, therefore, commenced the running of the statute of limitations no later than June 9, 2003.

(11)

more familiar with the applicable law; (c) Plaintiff is entitled to seek redress for the Ohio Action in California; and (d) public policy favors maintaining the action in California despite the fact that an Ohio Defendant took accused actions in Ohio in the context of the Ohio Action under the supervision of the Ohio court pursuant to Ohio's rules. Plaintiff's arguments are both factually and legally incorrect.

First and foremost, when seeking to amend its Counterclaims in the Ohio Action, Plaintiff affirmatively argued that venue was proper in Ohio. Plaintiff alleged:

> Plaintiffs [Defendants here] have performed acts in furtherance of their illegal and wrongful conduct alleged in this[sic] these amended Counterclaims which have had substantial effects in this district, and a substantial part of the events giving rise to the claims in this action occurred in this district.

Proposed Amended Counterclaim at ¶ 6. Plaintiff is now therefore estopped from asserting that venue is improper in the Northern District of Ohio.

While there were no negotiations or executions of relevant "agreements" – as in <u>Jones v. GNC Franchising, Inc.</u>, 311 F.3d 495 (9th Cir. 2000), which weighed in favor of transferring venue to the place of negotiation – there was substantial allegedly wrongful litigation conduct by the Defendants all of which occurred in Ohio. The offending pleadings were drafted, executed, and filed in Ohio and even the discovery documents that Plaintiff complains of (e.g., the Requests for Admissions, against which Plaintiff never sought a protective order) were drafted and signed in Ohio. Indeed, Plaintiff admits the wrongful conduct arose in Ohio: "While it is true that demand letters, anticompetitive behavior and the lawsuit originated *from Pennsylvania and Ohio*...." Memo. in Opp. at 17 (emphasis added). Thus, there can be no genuine dispute that the facts giving rise to Plaintiff's claims occurred in Ohio, which makes the first <u>Jones</u> factor weigh strongly in favor of transferring this action.

Plaintiff also argues that this action should remain here because Defendants have contacts with California. While true, the parties' contacts do not weigh more in favor of California than Ohio. Defendants' contacts with Ohio are broader, stronger, and deeper than they are with California and Plaintiff has contacts with Ohio just as Defendants have with California (as is evidenced by the fact that Plaintiff was amenable to Ohio jurisdiction in the Ohio Action). And, as is noted above, Defendants' California contacts relating to Plaintiff's cause of action (<u>Jones</u> factor 5) are minimal at

best. Instead, most, if not all, of the actions related to Plaintiff's claims occurred in Ohio where the litigation took place and where Defendants prosecuted their patent application.

Finally, and perhaps most importantly, Plaintiff's argument that Ohio has only a minimal interest in this litigation is disingenuous at best. In addition to protecting its citizens from being haled into distant courts on questionable cases, Ohio has a strong interest in having its own malicious prosecution and abuse of process standards applied to cases brought within its borders. See Engel v. CBS, Inc., 886 F. Supp. 728, 732 (C.D. Cal. 1995) (stating, "The events giving rise to the claim for malicious prosecution involve the filing and handling of the New York lawsuit, a series of events occurring solely in New York. . . . Therefore, the Court may transfer this action to the Southern District of New York pursuant to 28 U.S.C. § 1406(a).").

Ohio also has an interest in ensuring that its legal process remains open to litigants without fear of reprisal for failing to meet the malicious prosecution or abuse of process standards of other jurisdictions. This interest applies equally to all litigants in Ohio regardless of their state of residency and, in this case, applied to protect Plaintiff's counterclaims in the Ohio Action as well as Defendant's infringement claims. It will also apply to and protect the claims that Plaintiff asserts here once the Court transfers them to Ohio. As is noted above, the Ninth Circuit recognized and approved this line of reasoning in Engel v. CBS Inc. This Court should transfer this action to Ohio for resolution by the Court that oversaw the actions giving rise to Plaintiff's claims.

## IV. CONCLUSION

This Court should dismiss Plaintiff's Complaint in its entirety. Federal patent law preempts Plaintiff's claim for abuse of process (Count II) and, moreover, Plaintiff has failed to state a claim for abuse of process under either Ohio or California law. Likewise, Plaintiff's Complaint does not state a claim for malicious prosecution (Count I) because Plaintiff has failed to allege a "seizure of property" as required by Ohio law – which should apply here – and cannot demonstrate that the Ohio Action terminated in its favor as required under either Ohio or California law. Finally, Plaintiff's antitrust claims (Counts III and IV) must fail because Plaintiff did not assert them within the applicable statute of limitations and did not assert them as compulsory counterclaims in the Ohio Action.

1    Alternatively, this Court should transfer this action the Northern District of California pursuant
2    to 28 U.S.C. § 1404(a). The conduct upon which Plaintiff bases its Complaint occurred in Ohio in the
3    context of Ohio litigation, pursuant to Ohio's rules, and subject to the supervision of the Ohio Court.
4    Ohio is better suited to measure the conduct of its litigants and is more familiar with Ohio's laws on
5    malicious prosecution and abuse of Ohio process. Finally, Ohio has a strong interest in ensuring that
6    its courts remain accessible to all Ohio litigants (including the Plaintiff) without fear of being
7    subjected subsequently to pleading and practice standards of unidentified and remote jurisdictions.
8    Thus, to the extent that this Court elects not to dismiss one or more of Plaintiff's claims, this Court
9    should transfer those claims, if any, to the Northern District of Ohio.

10   Dated: September 14, 2007                        SCHOTTENSTIEN, ZOX & DUNN CO., LPA

11                                          By:      /s/ T. Earl LeVere
                                                     T. EARL LeVERE (pro hac vice)
12                                                   Attorneys for Defendants
                                                     SGS TOOLS COMPANY and
13                                                   DAUPHIN PRECISION TOOL, LLC

14   Local Counsel:

15   Todd E. Whitman (Bar No. 173878)
     ALLEN MATKINS LECK GAMPLE
16     MALLORY & NATSIS LLP
     1901 Avenue of the Stars, Suite 1800
17   Los Angeles, California 90067-6019
     Phone: (310) 788-2400
18   Fax: (310) 788-2410
     E-Mail: twhitman@allenmatkins.com