ROBERT P. ANDRIS (SBN 130290)
LAEL D. ANDARA (SBN 215416)
AMY K. GRUBER (SBN 239793)
ROPERS, MAJESKI, KOHN & BENTLEY
1001 Marshall Street, Suite 300
Redwood City, CA 94063
Telephone:    (650) 364-8200
Facsimile:    (650) 780-1701
Email: randris@ropers.com
       landara@ropers.com;  agruber@ropers.com

Attorneys for Plaintiff
DESTINY TOOL, a California corporation

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DESTINY TOOL, a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>SGS TOOLS COMPANY, an Ohio corporation, DAUPHIN PRECISION TOOL, LLC, a Pennsylvania limited liability company, and WELDON TOOL COMPANY, an Ohio corporation,<br><br>Defendants. | CASE NO. C07-03117 JF<br><br>**JOINT INITIAL CASE MANAGEMENT STATEMENT**<br><br>Date:    September 28, 2007<br>Time:    10:30 p.m.<br>Ctrm:    3, 5th Floor |

Pursuant to the March 1, 2007 Standing Order For All Judges Of The Northern District of California, the parties to the above-captioned matter, by and through their attorneys of record, hereby submit the following Joint Initial Case Management Statement.

**1.    Jurisdiction and Service**

Plaintiff has served the complaint and defendants have filed a Motion to Dismiss or, in the Alternative, to Transfer Venue to the District Court of Ohio. Plaintiff dismissed Defendant Weldon Tool Company without prejudice on July 13, 2007 (Doc. 7). Defendants do not dispute personal jurisdiction or service of process.

///

///

**2.   Facts**

In the 1960's the Weldon Tool Company manufactured a line of products known as the "Ski-Kut" line of end mills. Weldon advertised that the Ski-Kut line was protected by U.S. Patent No. 3,003,224 (the '224 or Ribich Patent). The '224 Patent was issued on October 10, 1961, and was assigned to Weldon by its inventor, Thomas Ribich, a Weldon engineer.

SGS Tool Company has manufactured and sold cutting tools made of solid Tungsten Carbide or Carbide tipped since at least 1967.

On September 17, 1991, U.S. Patent No. 5,049,009 (the '009 Patent) issued to the Weldon Tool Company and SGS from an application which was filed on August 21, 1990.

On July 13, 2004, SGS and Dauphin instituted a civil action against Destiny in the United States District Court for the Northern District of Ohio. The complaint alleged Destiny infringed the '009 Patent and claimed damages. Destiny filed a counterclaim for a declaratory judgment that the '009 Patent was invalid. On September 15, 2005, Destiny filed a motion for summary judgment on its counterclaim for invalidity. That same day, SGS and Dauphin moved to voluntarily dismiss their infringement action with prejudice. SGS and Dauphin also moved to dismiss Destiny's counterclaim for a declaratory judgment that the '009 Patent was invalid. At the same time, SGS and Dauphin provided Destiny with a covenant not to sue Destiny or its customers for infringement of the '009 Patent for the length of its term.

On September 29, 2006, the Ohio District Court granted SGS and Dauphin's motion to voluntarily dismiss the infringement claims with prejudice. The Ohio court also dismissed Destiny's counterclaim for declaratory judgment of invalidity without prejudice without ruling on Destiny's motion for summary judgment. The Ohio court also denied Destiny's request to recover the attorneys' fees and costs that it incurred in defending the Ohio action and further denied Destiny's request for leave to amend its counterclaim. Destiny did not appeal this ruling.

Plaintiff contends that the principal factual issues in dispute include whether Weldon's Ski-Kut line of tools, or any of the other references cited in the complaint or in Destiny's motion for summary judgment, embody the claims of the '009 Patent. If the prior art cited by Destiny embodies the claims of the '009 Patent such that they are anticipated or obvious in light of prior

art, then the factual issue of whether SGS, Weldon, Talbot or Dauphin knew that the invention claimed in the '009 Patent was unpatentable or that the '009 Patent should not have been issued, before they instituted the infringement action against Destiny in Ohio will arise.

SGS and Dauphin contend that additional relevant factual issues will include:

- Whether SGS and Dauphin acted with malice when they instituted the Ohio action against Destiny;
- Whether any of Destiny's property was seized in the course of the Ohio action;
- Whether SGS and/or Destiny committed any willful act in the Ohio action that was not proper in the regular course of the Ohio action or used the Ohio action to accomplish an ulterior purpose for which it was not intended;
- Whether SGS or Dauphin possess monopoly power in the relevant market;
- Whether SGS or Dauphin had a specific intent to control prices or to destroy competition;
- Whether SGS or Dauphin engaged in any predatory conduct directed to controlling prices or destroying competition;
- Whether SGS or Dauphin had a dangerous probability of succeeding at controlling prices or destroying competition; and
- Whether one or more of the claims of the '009 Patent reads on one or more of Destiny's products.

**3.    Legal Issues**

a. Whether California and Ninth Circuit law governs the instant action or whether Ohio and Sixth Circuit law governs this dispute.

b. Whether the venue of this matter should be transferred to the District Court of Ohio.

c. Whether federal law preempts one or more of Destiny's claims;

d. Whether SGS and Dauphin initiated the Ohio action in proper form;

e. Whether SGS and Dauphin initiated the Ohio action with probable cause;

f. Whether the Ohio Action terminated in Destiny's favor;

g. Whether the applicable statute of limitations bars Destiny's antitrust claims;

h. Whether Plaintiff waived its antitrust claims by failing to raise them as counterclaims in the Ohio Action or by failing to appeal the Ohio court's denial of Destiny's request for leave to amend its counterclaims;

i. Whether the doctrines of *res judicata* and/or collateral estoppel preclude one or more of Destiny's claims;

j. What the relevant market for the parties' respective goods and services is;

k. Whether the '009 Patent is invalid; and

l. The proper measure for Plaintiff's damages, if any.

### 4. Motions

Defendants filed a motion to dismiss and a motion to transfer venue to the District Court of Ohio. Those motions are scheduled to be heard on the same day as the Case Management Conference in this matter, September 28, 2007, at 9:00 a.m.

### 5. Amendment of Pleadings

Based on the unsettled nature of the pleadings at this point in time, the parties are unable to propose a deadline for the amendment of pleadings.

### 6. Evidence Preservation

During the course of the underlying Ohio litigation and before this lawsuit was filed, the parties were admonished to maintain all of their documents and records (including emails, voicemails and other electronically recorded material) from destruction.

### 7. Disclosures

Due the unsettled nature of the pleadings, and after meeting and conferring on this issue, the parties have decided to forego the exchange of initial disclosures until after the court rules on the instant motion to dismiss. Depending upon the outcome of that ruling, the parties will work together to make a full and timely disclosure under Rule 26.

///

///

///

**8.    Discovery**

No discovery has been taken to date in the above-captioned action. The parties conducted extensive discovery in the context of the Ohio action. The scope of anticipated discovery includes the internal record keeping of Weldon, the Talbot Group and Dauphin, as well as SGS. In addition, Destiny will seek review of all of the cease and desist letters and infringement complaints filed by Weldon or any of its successors in interest regarding the '009 Patent. Destiny will also seek discovery of the SGS and Dauphin's overall financial net worth, as well as the amounts made in the manufacture and sale of the products which embody the '009 Patent claims. SGS and Dauphin, however, believe that many of these subjects are not relevant to this action or otherwise fall outside the scope of discovery permitted by Federal Civil Rule 26 and the rules of this Court.

In addition to some of the categories listed above, SGS and Dauphin will seek discovery on Destiny's business practices, financial performance, record retention, and alleged damages suffered as a result of the conduct referenced in the Complaint.

Further, Destiny contends that the factual discovery period in this case may have to be extended longer than normal in light of its position that this case will require a patent claim construction for the '009 Patent as a precursor to a motion for summary judgment that the '009 Patent was fraudulently procured through inequitable conduct in the Patent Office.

**9.    Class Actions**

Not applicable.

**10.    Related Cases**

Not applicable.

**11.    Relief**

Destiny seeks to recover its attorneys fees expended in the underlying and this litigation. Destiny also seeks the disgorgement of the profits made by SGS and Dauphin as the result of their anti-competitive behavior and the damages inflicted on Destiny's business. Destiny also seeks exemplary damages. If Destiny establishes liability, SGS and Dauphin maintain that Destiny may only recover its lost profits from sales that it proves it was unable to obtain as a result of wrongful

1  conduct by SGS and/or Dauphin. On Destiny's claim for abuse of process, SGS and Dauphin
2  maintain that Destiny may only recover the damages resulting from the willful act(s) by SGS or
3  Dauphin that Destiny proves were not proper in the regular course of the Ohio action.

### 12. Settlement and ADR

The parties have agreed to ADR in the form of a settlement conference. Plaintiff is not aware of any discovery or motions necessary to position the parties to negotiate a resolution.

### 13. Consent to Magistrate Judge For All Purposes

Destiny consents to have a magistrate judge conduct all further proceedings including trial and entry of judgment.

### 14. Other References

Not applicable.

### 15. Narrowing of Issues

As noted above, Destiny believes that the most expeditious way of resolving this matter would be to construe the claims of the '009 Patent and for the court to hear a motion for summary judgment or conduct a limited trial on the issue of patent invalidity. If, after trial, it is determined that the '009 Patent is valid, then it is submitted that Destiny's malicious prosecution and anti-trust claims would be in a precarious situation. Alternatively, a finding that the '009 Patent was procured through inequitable conduct would clarify defendants' liability exposure.

SGS and Dauphin propose moving forward on the issues of Destiny's claims that are not directly related to the validity or infringement of the '009 Patent such as SGS and Dauphin's motivation, good faith, power in the relevant market, and intent to control prices or destroy competition, and probability of succeeding in those efforts. These issues are more discreet, less complicated, and require less involvement by the Court than construing each and every claim of the '009 Patent, determining each claim's validity in light of the voluminous prior art and obviousness jurisprudence, and determining whether there is sufficient evidence to allow a reasonable finder of fact to conclude that one or more of those claims, properly construed, reads upon one or more of Destiny's products. Once Destiny establishes a *prima facie* case on each of the other issues upon which it will bear the burden of proof at trial, the Court can then turn its

resources to the issue of claim construction and claim validity.

### 16. Expedited Schedule

As the patent aspect of this matter has been litigated through the close of fact discovery, much of the deposition and document discovery in this case has been completed. Accordingly, plaintiff is open to discussing streamlining procedures to expedite the resolution of this matter.

### 17. Scheduling

In light of the unsettled nature of the pleadings and based on the dispute over whether claim construction and an invalidity trial should go forward at the front end of this case, the parties do not believe it is possible to suggest a meaningful scheduling calendar at this time.

### 18. Trial

Destiny has demanded a trial by jury and currently estimates this case to take at least two full weeks to try. SGS and Dauphin believe that two weeks would be sufficient to try this action without the issue of the validity of the '009 Patent. Including the issue of the validity of the '009 Patent, SGS and Dauphin estimate that three to four weeks is a more reasonable estimate.

### 19. Disclosure of Non-Party Interested Entities or Persons

Each of the parties herein has filed the "Certification of Interested Entities or Persons" required by Civil Local Rule 3-16. Furthermore, the parties are unaware of any persons, firms, partnerships, corporations (including parent corporations) or other entities known by the party to have either: (i) a financial interest in the subject matter in controversy or in a party to the proceeding; or (ii) any other kind of interest that could be substantially affected by the outcome of the proceeding.

### 20. Other Matters

SGS and Dauphin have not yet filed an answer in response to Destiny's Complaint and expressly reserve the right to assert defenses not set forth in their pending motion to dismiss and also reserve the right to assert counterclaims. SGS and Dauphin respectfully suggests to the Court that the substance of their answer and/or counterclaims may impact their positions as set forth here. Accordingly, if appropriate, SGS and Dauphin pray that the Court will allow them to

///

amend or supplement their positions set forth herein.

Dated: September 21, 2007

ROPERS, MAJESKI, KOHN & BENTLEY

By: /s/ Robert P. Andris
ROBERT P. ANDRIS
LAEL D. ANDARA
AMY K. GRUBER
Attorneys for Plaintiff
DESTINY TOOL, a California corporation

Dated: September 21 2007

SCHOTTENSTEIN ZOX & DUNN, CO., LPA

By: /s/ T. Earl Levere
T. EARL LEVERE
*pro hac vice*
Attorneys for Defendants
SGS TOOLS COMPANY, DAUPHIN PRECISION TOOL, LLC