** E-Filed 10/17/2007 **

NOT FOR CITATION

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| DESTINY TOOL,<br><br>                Plaintiff,<br><br>      v.<br>SGS TOOLS COMPANY; DAUFINE PRECISION TOOL, LLC; and WELDON TOOL COMPANY<br><br>                Defendants. | Case Number C 07-03117 JF<br><br>ORDER[1] GRANTING DEFENDANTS' MOTION TO DISMISS WITHOUT LEAVE TO AMEND<br><br>[re: docket no. 15] |

    Defendants SGS Tools Company and Dauphin Precision Tool, LLC ("SGS and Dauphin") move to dismiss or alternatively to transfer the venue of this action. For the reasons set forth below, the Court will grant the motion to dismiss, rendering the motion to transfer venue moot.

# I. BACKGROUND

    The parties are competitors in the manufacturing, marketing, and selling of metal cutting tools. Complaint at ¶¶2-4. SGS and Dauphin are the owners of U.S. Patent No. 5,049,009 ("the

---

[1] This disposition is not designated for publication and may not be cited.

'009 Patent") for an "Improved Cutting Tool." *Id.* at ¶6.  For a period of time, the parties engaged in discussions regarding the '009 patent. *Id.* at ¶78.  On July 12, 2004, SGS and Dauphin brought an action against Destiny for patent infringement in Ohio. *See SGS Tools Company and Dauphin Precision Tool, LLC v. Step Tools Unlimited Inc d/b/a Destiny Tool*, N.D. Ohio Case No. 5:04 CV 1315 ("the Ohio Action").  Destiny responded to the Ohio complaint by denying infringement and asserting a counterclaim for a declaratory judgment that the '009 patent is invalid as a result of SGS's and Dauphin's alleged fraud on the United States Patent and Trademark Office ("PTO"). *Id.* at ¶82.  Destiny did not assert any other counterclaims.

On September 15, 2005, Destiny moved for summary judgment on its invalidity counterclaim in the Ohio Action, arguing that SGS and Dauphin failed to disclose certain information to the PTO during the prosecution of the '009 Patent. *Id.* at ¶89.  At the same time, SGS and Dauphin moved to dismiss voluntarily the entire action.  On September 29, 2006, the Ohio court granted the motion to dismiss and denied Destiny's motion for summary judgment concluding that in light of the dismissal it lacked jurisdiction. *Id.* at ¶91.  The Ohio court also denied Destiny's request for attorneys' fees and costs.

Destiny subsequently commenced the instant action in this Court.  In this action, Destiny asserts claims for relief for abuse of process, malicious prosecution, antitrust violations, and attorneys' fees arising from the Ohio action.  SGS and Dauphin seek dismissal or, in the alternative, to transfer venue to Ohio.  The Court heard oral argument on September 28, 2007.

## II.  LEGAL STANDARD

For purposes of a motion to dismiss, the plaintiff's allegations are taken as true, and the Court must construe the complaint in the light most favorable to the plaintiff. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969).  Leave to amend must be granted unless it is clear that the complaint's deficiencies cannot be cured by amendment. *Lucas v. Department of Corrections*, 66 F.3d 245, 248 (9th Cir. 1995).  When amendment would be futile, however, dismissal may be ordered with prejudice. *Dumas v. Kipp*, 90 F.3d 386, 393 (9th Cir. 1996).

A motion for transfer pursuant to § 1404(a) lies within the discretion of the Court. *Jones*

*v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000). The decision whether to grant such a motion turns on the facts of the particular case. *Id*. The factors to be weighed in deciding a motion for transfer include: (1) the location where the relevant agreements were negotiated and executed; (2) the state that is most familiar with the governing law; (3) the plaintiff's choice of forum; (4) the respective parties' contacts with the forum; (5) the contacts relating to the plaintiff's cause of action in the chosen forum; (6) the differences in the costs of litigation in the two forums; (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses; (8) the ease of access to sources of proof; (9) the presence of a forum selection clause; and (10) the relevant public policy of the forum state, if any. *Id*. at 498-99.

### III. DISCUSSION

**1.   Whether Federal Patent Law Preempts Destiny's Abuse of Process Claim**

Count II of Destiny's complaint asserts a claim for abuse of process. Destiny alleges that SGS and Dauphin had no reasonable belief in the merits of the Ohio litigation because they allegedly knew that the '009 patent had been procured through fraud and thus was invalid. Complaint at ¶¶111, 112.

SGS and Dauphin contend that Count II fails to state a claim because federal patent law preempts claims for abuse of process arising out of a patentee's conduct before the PTO. Destiny responds that while an abuse of process claim arising out of administrative proceedings may be preempted, state-law malicious prosecution and abuse of process claims arising from bad faith patent infringement actions are not.

In *Abbott Laboratories v. Brennan*, 952 F.2d 1346, 1355 (Fed. Cir. 1991), the Federal Circuit was presented with the question of "whether the state tort action for abuse of process can be invoked as a remedy for inequitable or other unsavory conduct of parties to proceedings in the Patent and Trademark Office." In *Abbott*, during prosecution of certain patent applications, the plaintiff and defendant disputed the priority of inventorship claimed in the applications. *Id.* at 1348. The Board of Appeals and Interferences awarded priority to defendant Brennan as a result of Abbott's conduct before the PTO, which the Board found to be inequitable. *Id.* Abbott subsequently filed suit against Brennan seeking to set aside the Board's award of priority to

1 Brennan. *Id.* Brennan counterclaimed for, inter alia, abuse of process and violations of the
2 Sherman Act. *Id.* The district court dismissed several of Brennan's counterclaims, including its
3 claim under the Sherman Act. *Id.* However, Brennan's counterclaim for abuse of process
4 proceeded to trial. *Id.* The jury awarded a judgment in Brennan's favor, and Abbott appealed.
5 *Id*. at 1349.

6       The Federal Circuit reversed, finding that a "patent grant is within the exclusive purview
7 of federal law. Although certain traditional state concerns may properly be raised when patent
8 rights are litigated, the issue at bar relates directly to administrative proceedings before the PTO
9 Board of Patent Appeals and Interferences." *Id.* at 1356. The Federal Circuit further observed
10 that "the federal administrative process of examining and issuing patents, including proceedings
11 before the PTO's boards, is not subject to collateral review in terms of the common law tort of
12 abuse process . . . .An additional state action would be an inappropriate collateral intrusion of the
13 regulatory procedures of the PTO 'under the guise of a complaint sounding in tort'. . .and is
14 contrary to Congress' preemptive regulation in the area of patent law." *Id.* At 1357.

15       However, in *Dow Chem. Co. v. Exxon Corp*., 139 F.3d 1470, 1477 (Fed. Cir. 1998), the
16 Federal Circuit held that "a state law tort claim is not preempted by the federal patent law, even if
17 it requires the state court to adjudicate a question of federal patent law, provided the state law
18 cause of action includes additional elements not found in the federal patent law cause of action
19 and is not an impermissible attempt to offer patent-like protection to subject matter addressed by
20 federal law." Thus, a state law intentional interference claim based on bad faith which included
21 proof of acts before the PTO was allowed because that conduct was "merely evidence of a
22 patentee's bad faith." *Dow*, 139 F.3d at 1477.

23       Here, Destiny argues that *Abbott* is distinguishable because the state law claim in *Abbott*
24 was based entirely on the patentee's inequitable conduct in obtaining a patent. Destiny contends
25 that this case is more like *Dow*, because while SGS and Dauphin procured a patent by fraud (as
26 in *Abbott),* they then *went on* to bring an infringement action against Destiny in federal court.
27 Put differently, Destiny argues that its claim "is based upon [SGS's and Dauphin's] institution of
28 a patent infringement lawsuit in bad faith, for anticompetitive reasons" rather than upon conduct

4

Case No. C 07-03117 JF
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS WITHOUT LEAVE TO AMEND
(JFLC3)

before the PTO.  Memo. In Opp. at 8-9.

SGS and Dauphin argue that Destiny's abuse of process claim is based explicitly on the assertion that SGS and Dauphin knew that the '009 Patent was procured by fraud, and that the alleged fraud took place entirely before the PTO.  However, while abuse of process claims arising out of administrative proceedings will be rejected as within the scope of the patent law, state abuse of process claims arising from bad faith patent infringement actions are not preempted by federal patent law.  *See U.S. Aluminum Corp. v. Alumax, Inc.*, 831 F.2d 878, 881 (9th Cir. 1987).  The Court concludes that Destiny's Count II is not preempted.

**2.     Whether Ohio Law or California Law Applies to the State Law Claims**

The parties next dispute whether Ohio law or California law applies to Count I (malicious prosecution) and Count II (abuse of process).  Ohio law is more restrictive than California's as to both claims.  Destiny argues that California law should apply because SGS and Dauphin directed their conduct into California causing damage here when they instituted and later dismissed a meritless patent infringement lawsuit against a California company.

SGS and Dauphin contend that because there is a conflict between Ohio and California law, the Court must conduct a "comparative impairment" analysis to determine "which state's interest would be more impaired if its policy were subordinated to the policy of the other state." SGS and Dauphin concede that California has a vested interest in protecting its citizens from baseless lawsuits.  However, they argue that this Court should not allow Destiny to circumvent Ohio's more restrictive laws simply by filing its action in California rather than in Ohio.

 The choice-of-law analysis in this case is a difficult one.  In *Engel v. CBS Incorporated*, 981 F.2d 1076, 1080 (9th Cir. 1992), the Ninth Circuit concluded that New York's interest in having its malicious prosecution standards applied to cases being litigated within its boundaries was more compelling than California's general interest in protecting its citizens and in allowing recovery for legal claims under California law.  The *Engel* court noted that "[t]he state would certainly have an interest in applying California law if the litigation upon which the malicious prosecution claim were based had been filed in California.  Here, however, where another state's litigation process has allegedly been perverted, California's interest is far less than if the

5

litigation process in California were subject to misuse." *Id*. at 1081.

At the same time, as Destiny points out, in *Engel* the plaintiffs also had "availed themselves of the New York forum by agreeing that the CBS record contract would be governed by New York law." *Id*. at 1081. While SGS and Dauphin argue that *Engel* compels the conclusion that the law of the state where an underlying action is litigated is controlling, *Engel* cannot be read so broadly. Rather, *Engel* appears to be in line with other cases in which the law of the foreign state is applied because the plaintiff has availed itself of the benefits of the foreign state. *See Paulo v. Bepex Corp.*, 792 F.2d 894, 896 (9th Cir. 1986) (Ontario law applied to a California worker who worked, lived and injured himself in Ontario); *Offshore Rental Co. v. Continental Oil Co.*, 22 Cal.3d 157, 148 (1978) (Louisiana law applied to a California Corporation whose key employee was injured at a Louisiana site).

The principal case relied on by Destiny, *Bernhard v. Harrah's Club*, 16 Cal.3d 313 (1976) also is distinguishable. In *Bernhard*, a California resident was injured in California in an automobile accident caused by another California driver who had been provided alcoholic beverages at the defendant's establishment in Nevada after he already was obviously intoxicated. Bernhard sued the Nevada tavern owner in California under the California Business and Professions Code, which, unlike Nevada, established a duty of care for such establishments. The California Supreme Court determined that California law should apply because if California were unable to extend its regulation to out-of-state tavern keepers in places where persons were likely to return to California in an intoxicated state, it could not reasonably effectuate its policy interests. The public policy in *Bernhard* clearly was stronger and more specific than that asserted here.

However, even assuming *arguendo* that California law applies, Destiny still fails to state a claim for malicious prosecution or abuse of process. Even under California law, a party bringing a claim for malicious prosecution must allege that the prior action terminated in its favor. In this case, the Ohio court dismissed all of the parties' claims and counterclaims as a matter of law over Destiny's express objection and opposition. Complaint at ¶¶ 91, 100. The Ohio Action did not end in Destiny's favor, and Destiny did not appeal the Ohio Court's

6

decision. Although Destiny argues that "the Court's findings have nothing to do with the actual merits of the action and everything to do with the Court's procedural inability to act since SGS and Dauphin had divested the Court of jurisdiction to hear [Destiny's] requests," Memo. in Op. at 16, the fact remains that Destiny cannot show that the prior action ended in its favor.

As to the abuse of process claim, the Ninth Circuit has held that such a claim is a compulsory counterclaim in the action alleged to be abusive. *See Pochiro v. The Prudential Ins. Co.*, 827 F.2d 1246 (9th Cir. 1987); *Competitive Technologies v. Fujitsu Limited,* 286 F.Supp.2d 1118, 1140 (N.D.Cal. 2003). Because Destiny failed to assert abuse of process as a counterclaim in the Ohio Action, the claim is barred under Fed. R. Civ. Pro. 13(a). Accordingly, Counts I and II must be dismissed.

**4.    Whether Destiny's Monopolization and Attempted Monopolization Claims must be Dismissed**

Counts III and IV of the complaint assert claims for monopolization and attempted monopolization in violation of Section 2 of the Sherman Antitrust Act. SGS and Dauphin filed suit against Destiny for patent infringement on July 13, 2004. Complaint at ¶81. Destiny responded to the complaint in the Ohio Action by denying the material allegations therein. In addition, Destiny asserted a counterclaim in the Ohio Action seeking declaratory judgment that the '009 patent was invalid due to SGS's and Dauphin's alleged fraud on the patent office. *Id.* at ¶¶ 82, 93, 98. As noted previously, Destiny did not assert counterclaims for alleged antitrust violations in the Ohio action.

SGS and Dauphin argue that such counterclaims were compulsory pursuant to Fed. R. Civ. Pro. 13(a) and were logically related to the claims in the Ohio Action. Relying on *Hydranautics v. FilmTec Corp*., 70 F.3d 533 (9th Cir. 1995), Destiny argues that the counterclaims are permissive and thus not subject to dismissal. In *Hydranautics,* a prior judgment of patent infringement had been reversed because of a defect in inventorship. Hydranautics then instituted an antitrust suit against FilmTec based on the prior unsuccessful patent infringement suit. FilmTec moved to dismiss the antitrust claim, arguing that it was a compulsory counterclaim that should have been brought during the first litigation. The district

court granted the motion to dismiss. The Ninth Circuit reversed, holding that "[a] claim for patent infringement litigation violated an antitrust statute is a permissive, not mandatory, counterclaim in a patent infringement case, and is not barred in a subsequent suit by failure to raise it in an infringement suit." *Id.* at 536. Thus, Destiny argues since the instant action has been brought in a court of the Ninth Circuit, Destiny may go forward with the claim.

The Court disagrees. In *Hydranautics*, the underlying patent infringement litigation was filed in California; here, the subject litigation was filed in Ohio. Thus, as SGS and Dauphin argue, Sixth Circuit law applies. Under Sixth Circuit law, antitrust claims arising out of patent litigation are considered logically related and therefore compulsory. *See USM Corp v. SPS Technologies, Inc.* 39 Fed. R. Serv 2d 42 (N.D. Ill. 1984)(district court ruling that an antitrust counterclaim that was predicated on alleged fraudulent conduct of the patent applicant before the PTO was barred because the claim was a compulsory counterclaim to a prior infringement action.) Because the underlying infringement action was filed in a court of the Sixth Circuit and the law of that circuit requires that a claim that a patentee's infringement suit constitutes an antitrust violation be brought as a compulsory counterclaim, Destiny's claims for monopolization and attempted monopolization must be dismissed.

SGS and Dauphin also assert that Destiny's antitrust counterclaims are barred by the statute of limitations and by *res judicata*. Because it finds that Destiny waived its antitrust claims by failing to raise them in the Ohio Action, the Court does not reach these arguments.

## IV.  ORDER

Good cause therefor appearing, Defendants' motion to dismiss is GRANTED. Because Defendants are entitled to dismissal as a matter of law on the basis of undisputed facts, leave to amend is not warranted. The motion to transfer venue is terminated as moot.

IT IS SO ORDERED.

DATED: October 17, 2007

_____
JEREMY FOGEL
United States District Judge

This Order has been served upon the following persons:

Robert P. Andris
randris@ropers.com

H. Alan Rothenbuecher
hrothenbuecher@szd.com